FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 JUL 31 PM 3: 35

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JUDONNA MITCHELL, LASHONDA SAULSBERRY and MARIE ROBAIR<br>Plaintiffs | * * | NUMBER:<br>SECTION: **06-4021** |
| VERSUS | * | JUDGE: **SECT. J MAG 4** |
| CITY OF NEW ORLEANS, Former NOPD Superintendent EDDIE COMPASS, NOPD Officers MELVIN WILLIAMS and DEAN MOORE, NOPD Sgt. J. DOE, NOPD Lt. R. ROE and NOPD Capt. ANTHONY CANNATELLA<br>Defendants | * * * | MAGISTRATE:<br>CIVIL RIGHTS<br>Under 42 USC 1983 and 1988 |

## COMPLAINT

### I. JURISDICTION

1.     This action is brought pursuant to 42 U.S.C. 1983 and 1988. Jurisdiction is founded on 28 U.S.C. Section 1331 and 1343, the First, Fourth, Ninth and Fourteenth Amendments to the Constitution of the United States. Supplemental jurisdiction over claims under state constitutional and statutory law is also invoked.     A jury trial is requested.

1

Fee $350.00
Process
X Dktd
V CtRmDep
Doc. No

## II. PARTY PLAINTIFFS

2.  Plaintiffs Judonna Mitchell and LaShonda Saulsberry are the adult daughters of Raymond Robair, deceased, who was assaulted, beaten and died as a result of injuries from that assault and beating, by defendants NOPD officers Melvin Williams and Dean Moore. Plaintiffs Mitchell and Saulsberry are persons of the full age of majority. Judonna Mitchell is a resident of the Eastern District of Louisiana. LaShonda Saulsberry is domiciled in the Eastern District of Louisiana. She is temporarily displaced as a result of the aftermath of Hurricane Katrina and is currently staying in Texas.

3.  Marie Robair is the mother of Raymond Robair, deceased. She is of the full age of majority and resides in the Eastern District of Louisiana.

## III. PARTY DEFENDANTS

4.  Defendant City of New Orleans, made a defendant herein, is a political subdivision of the State of Louisiana and a municipal corporation, which was at all relevant times the employer of the defendant New Orleans Police Department (NOPD) personnel named as defendants herein. Defendant City is directly liable for the acts complained of herein due to the policies, practices, procedures and customs of its police department and its employees. It is also responsible for the hiring, training, supervision, discipline and control of the defendant NOPD personnel named as defendants herein as well as other

unnamed police employees and supervisors who had responsibility for the acts and omissions described herein. Defendant City is also vicariously liable for the actions of its employees as described herein, under state law.

5. Defendant Eddie Compass was the Superintendent of Police for the City of New Orleans at all pertinent times herein. He was responsible for the policies, practices, customs and procedures of the NOPD, as well as the hiring, training, supervision, discipline and control of police personnel under his command which includes the NOPD defendants named and referenced herein. He is of the full age of majority and is a resident of the Eastern District of Louisiana. He is sued individually and in his official capacity. At all pertinent times herein he was acting under color of law and in the course and scope of his employment. He was a final policymaker for the City of New Orleans relating to police practices, policies, customs and procedures.

6. Defendants Melvin Williams and Dean Moore are persons of the full age of majority who are residents of the Eastern District of Louisiana. At all pertinent times herein, they were each employed as police officers with the NOPD and were acting in the course and scope of their employment and under color of law. They are sued individually and in their official capacity.

7. Sgt. J. Doe is a person of the full age of majority and on information and belief is a resident of the Eastern District of Louisiana. At all pertinent times herein, Sgt. Doe was responsible for supervision, monitoring and oversight of the activities of defendants

Williams and Moore. At all times pertinent herein, Sgt. Doe was acting under color of law and in the course and scope of his or her employment with the City of New Orleans. Sgt. Doe is sued in both his or her individual and official capacity.

8. Lt. R. Roe is a person of the full age of majority and on information and belief is a resident of the Eastern District of Louisiana. At all pertinent times herein, Lt. Roe was responsible for supervision, monitoring and oversight of the activities of defendants Williams, Moore and Sgt. J. Doe. At all times pertinent herein, Lt. Roe was acting under color of law. Lt. Roe is sued in both his or her individual and official capacity.

9. Capt. Anthony Cannatella is a person of the full age of majority and on information and belief is a resident of the Eastern District of Louisiana. At all pertinent times herein, defendant Cannatella was responsible for supervision, monitoring and oversight of defendants Williams, Moore, Sgt. Doe and Lt. Roe. At all times pertinent herein defendant Cannatella was acting under color of law and in the course and scope of his employment with the City of New Orleans. Capt. Cannatella is sued in his individual and official capacity.

## IV. STATEMENT OF FACTS

10. On July 30, 2005, shortly before 9:00 a.m. on a Saturday morning in the Treme neighborhood of the City of New Orleans, Raymond Robair, a 48 year old African American man, born and raised in the City of New Orleans, arrived at the home of a local resident to assist her with some repair work on her home. While he was waiting, Mr.

Robair was approached by two NOPD officers, defendants Melvin Williams and Dean Moore, who, without provocation or any just cause whatsoever, began to curse, physically assault, seize and beat Mr. Robair. This attack was sudden, vicious and severe, resulting in terrible pain and serious injuries to Mr. Robair. At some point during this beating Mr. Robair collapsed. It was apparent that he was in agony and was in very serious condition.

11. The defendant officers placed Mr. Robair in their NOPD car and transported him to Charity Hospital (Medical Center of Louisiana at New Orleans). Upon arrival at Charity Hospital emergency room, the defendant officers gave false information to the emergency room personnel, reporting that Mr. Robair had been "found down" on the street and then left him at the hospital. Mr. Robair died shortly thereafter, on the operating table at Charity Hospital. He had severe internal bleeding, a lacerated spleen, a broken rib and other internal injuries which caused his death. These injuries and Mr. Robair's death were caused by the actions of the defendants as described herein.

12. At the time of this unprovoked and completely unjustified attack by defendant police officers, Raymond Robair, the deceased, was engaged in his constitutional right to be out and about on the public streets of the City of New Orleans and his right to be left alone. He had permission by the lawful owner of the premises to be in the place where he was. There was no just cause for the defendant officers' actions, there was no justification to stop, interfere with or seize Mr. Robair and the force used by these

defendants against Mr. Robair, which force ultimately resulted in his demise, was unjustified, unlawful and excessive.

13. Upon realizing the seriousness of the injuries which they had inflicted upon Raymond Robair, the defendant officers, acting together and in concert, concocted a false story to attempt to cover-up their misconduct. They threatened and sought to intimidate witnesses and bystanders who had observed their actions and lied to medical personnel at the hospital about Mr. Robair's condition and the circumstances thereof. They failed to properly or accurately report this incident to police authorities and sought to deflect attention, scrutiny and review of their misconduct by lying about what happened and their involvement in Mr. Robair's injuries and death. They were also responsible, directly or indirectly, for communicating false information to the Orleans Parish Coroner's office regarding the circumstances of Mr. Robair's injuries and death.

14. While both defendant officers participated in the use of unauthorized and excessive force towards the deceased, the defendant Melvin Williams was particularly vicious and extreme in his actions. Defendant Moore had the knowledge and ability to intervene and prevent defendant Williams from engaging in this fierce attack upon Mr. Robair, yet failed to do so.

15. Defendant Melvin Williams had a long history of prior incidents involving misuse of force and mistreatment and violation of citizens' rights and had been the subject of prior complaints for abusive and improper behavior during his tenure with the New

Orleans Police Department. He was well known inside and outside the department for treating civilians in a brutal and abusive fashion, a reputation and propensity which was known to his fellow officers, his supervisors, his commanders, the Public Integrity Bureau (PIB) of the New Orleans Police Department, the Superintendents of Police under whom he was employed and the City of New Orleans.

16. Defendant Williams was unfit to be hired as a police officer and even after being hired, should have been removed due to his obvious unfitness for the position. As a police officer, he compiled an extensive record of incidents and civilian complaints for abuse of citizens rights, yet little or no disciplinary or other action was taken against him. His supervisors, including defendants Sgt. J. Doe, Lt. R. Roe, Capt. Cannatella and former Chief Compass, were aware of these incidents and complaints, as well as his reputation and propensities, yet failed to take appropriate, reasonable or necessary steps to intervene or to prevent or curtail his misconduct and inappropriate behavior or to provide adequate supervision, monitoring or discipline. Appropriate non-disciplinary measures, including but not limited to psychiatric evaluation and treatment, re-assignment, re-training, or close supervision, were also not pursued, so that defendant Williams was able to act with virtual impunity in his mistreatment of citizens and residents of the City.

17. Despite this history and his known propensity and reputation for violating and abusing citizens' rights, defendant Williams was permitted to remain on patrol duties, with little or no supervision of his activities, and remained in positions where he had virtually

unrestrained and unsupervised access to citizens and witnesses. He was assigned to special Task Forces and was allowed to roam about the City, crossing district boundaries, with inadequate supervision and accountability for his whereabouts and his activities. He was also placed in a position of authority relative to less experienced and junior officers, such as defendant Moore, with the result that those younger officers were corrupted and indoctrinated into a culture of violence and mistreatment of citizens.

18. Defendant Sgt. J. Doe was the immediate supervisor of defendants Williams and Moore during the time of the incident described herein. Defendants Lt. Roe and Capt. Cannatella were also in the chain of command over defendants Williams and Moore. All of these supervisory defendants were aware of the background and actions of defendants Williams and Moore as described herein and failed to intervene or take other appropriate actions to prevent or remedy this situation. Instead, the supervisory defendants approved of, ratified and condoned the actions of the defendant officers complained of herein and participated with those defendants in covering up their actions and responsibility for the injuries and death of Mr. Robair

19. In addition to the named supervisory defendants, there were numerous other NOPD supervisors and commanders, including defendant Compass, who knew, must or should have known of the numerous incidents and complaints against defendant Williams and his history and reputation for abusive conduct towards civilians, yet failed to properly supervise, discipline, investigate or intervene in the actions of defendant Williams. These

supervisory and command officials, including defendant Compass, ratified, condoned and approved of the behavior and actions of defendant Williams and placed him in a position to influence and corrupt younger officers in the mistreatment of citizens, residents and visitors to the City.

20. Defendant Moore knew of defendant Williams' abuse of citizens' rights yet he condoned, approved of and assisted in the actions of defendant Williams and helped to cover up for defendant Williams by failing to report or testify truthfully about Williams' actions.

21. On information and belief, defendant Moore had also been involved in other incidents relating to the violation of the rights of persons in the City, with no appropriate investigation, discipline, accountability, or consequence thereto, which was also known, must have or should have been known to the other defendants herein and those defendants likewise approved of, ratified and condoned his actions.

22. Defendant Compass was well aware of the history of the New Orleans Police Department, and its severe deficiencies and dysfunctions in hiring, supervision, discipline and investigation and handling of incidents involving mistreatment and abuse of citizens, yet failed to take reasonable or meaningful steps to control these abuses or take corrective action.

23. Defendant Compass, as Superintendent of Police, failed to insist upon accountability and discipline of officers under his command and communicated, directly or

indirectly, to NOPD commanders, supervisors and police officers, particularly those in task force or "jump out" or street units, that complaints by citizens of mistreatment by officers would not be seriously investigated and that officers would be largely free of consequence and accountability for violation of citizens' rights and could conduct themselves accordingly.

24. On information and belief, NOPD officers, supervisors and commanders, including the defendants named herein, were acting pursuant to an unlawful policy, practice, custom and procedure of the NOPD, under the direction and supervision of defendant former Superintendent Compass, to interfere, stop, intimidate and harass civilians, in particular African Americans or those associated with African Americans or in predominantly African American neighborhoods, who were engaging in lawful and protected activities such as walking, standing, driving and/or gathering in public places and streets of the City of New Orleans, sitting on front porches or stoops where they were lawfully permitted to be, and participating and engaging in other acts of protected speech, association, locomotion and travel such as second lines, Mardi Gras Indians' gatherings, mourning traditions, family gatherings and other such activities.

25. On information and belief, defendant Compass set the tone and direction for these incidents of police harassment and interference with these protected rights by approving, ratifying and condoning these actions by NOPD officers and by communicating, directly and indirectly, to police officers, supervisors and commanders that he would see to it that they would be protected from discipline or accountability if they were charged or

accused of misconduct towards residents of the community while carrying out this unlawful harassment and interference. Many of the essential reforms of the historically troubled NOPD, which had been instituted under the administration of former Superintendent of Police Richard Pennington to insure police accountability and to protect citizens against violation of their rights by police misconduct, were eliminated or significantly curtailed or seriously deteriorated under the administration and leadership of defendant Compass, the effect of which was to discourage citizens from filing complaints or seeking redress for the violation of their rights and also to embolden officers engaged in inappropriate conduct.

26. Defendant Compass knew, must or should have known that the ultimate responsibility to provide proper leadership and to insist upon discipline, accountability, respect and protection for the rights of citizens, was the duty of the Superintendent of Police and that the failure to insist upon upholding professional standards and protection for the constitutional and civil rights of civilians by police officers could and would have enormous detrimental consequences for the citizens of New Orleans, as well as the police department and the City as a whole. Instead of insisting upon upholding and enforcing these principles and standards, defendant Compass took actions, directly and indirectly, to excuse and condone misconduct by his subordinates, and failed to exercise control or discipline over police officers, their supervisors or his command staff. As a result, those NOPD personnel inclined to do so were able to abuse residents and visitors to the City of New Orleans, with virtually no disciplinary action or accountability for acts in violation of

law, regulations and professional police standards and practices. Under the leadership of defendant Compass, abuse and deliberate disregard of citizens' rights by NOPD personnel was widespread, with little or no accountability and a resurgence and re-emergence of a culture of violence and disregard towards citizens' rights was allowed to flourish.

27. On information and belief, subsequent to Mr. Robair's death, defendants City of New Orleans and Compass and various command and supervisory staff responsible for doing so failed to adequately or reasonably investigate the circumstances of Mr. Robair's injuries and death and failed to take appropriate disciplinary or remedial action or to refer this matter to the District Attorney's office of Orleans Parish for criminal investigation.

28. As a result of the actions of the defendants described herein, plaintiff Marie Robair incurred funeral and burial costs of $3,865.00 for the burial of her son Raymond Robair.

29 All of the actions by the defendants and other NOPD supervisory and command officers as described herein took place under color of law and within the course and scope of their employment with the City of New Orleans.

## V. CAUSES OF ACTION

30. Plaintiffs re-allege paragraphs 1-29

31. The actions of the defendants Melvin Williams and Dean Moore in stopping, threatening, seizing, physically assaulting and beating Raymond Robair, resulting in serious

injuries and death to Mr. Robair, and in failing to act to prevent said abuse, despite having the opportunity and duty to do so, violated the rights of Raymond Robair as guaranteed under the First, Fourth, Ninth and Fourteenth Amendments to the United States Constitution to privacy, to liberty, to be left alone, to locomotion, to travel, to be free from unreasonable search and seizure, to be free from the unjustifiable and excessive use of force and his rights to free speech and association, due process of law, equal protection and privileges and immunities, all in violation of 42 U.S.C. 1983.

32 The defendants, acting together and under the color of law, reached an understanding, engaged in a course of conduct and otherwise conspired among themselves to commit those acts described herein and to deprive Raymond Robair and the plaintiffs of their constitutional rights as set forth herein.

33. The defendants former Superintendent Compass, Sgt. Doe, Lt. Roe and Capt. Cannatella, had knowledge of the wrongs done and conspired to be done as described herein, had the power to prevent or aid in the prevention of same, yet failed or refused to do so in violation of 42 USC 1983.

34. The City of New Orleans had the power to prevent or aid in the prevention of the wrongs done and conspired to be done as described herein, yet failed or refused to do so, in violation of 42 USC 1983.

35. The City of New Orleans has developed and maintained policies, customs and practices exhibiting deliberate indifference to the constitutional rights of individuals in the

City of New Orleans, which caused the violation of plaintiffs' rights and those of Raymond Robair, deceased, as described herein and the resultant damages suffered. These policies, customs and practices include the following:

1. Failing to properly screen before hiring and failing to properly supervise, discipline, train or control police officers and supervisors under its jurisdiction and control, including the defendant officers, supervisors and commanders.

2. Failing to provide adequate or reasonable supervision, discipline, monitoring or control of officers assigned to street patrol units such as Task Force or "jump out" units, including the defendants herein, so that officers' conduct while in these units is not adequately monitored or supervised, there is no meaningful evaluation or scrutiny regarding the treatment of citizens by officers in these units and supervisors are not held accountable for their actions.

3. Failing to adequately or properly investigate allegations of misconduct and/or violations of law by police officers, supervisors or commanders or to properly initiate or conduct investigations of officers, supervisors or commanders suspected of misconduct and/or violations of law and instead tolerating the misconduct and mistreatment of citizens, including the actions of defendant officers, supervisors and commanders.

4. Failing to take reasonable and necessary steps to properly investigate, charge, maintain and defend disciplinary action for misconduct against officers, supervisors or commanders, so that disciplinary investigations and actions, when taken, are frequently sabotaged and undermined, with the result that they are frequently abandoned, reduced or lost on appeal with a corresponding decay and decline in professionalism, accountability and discipline in the police department, to the detriment of the civil rights of residents and visitors to the City.

5. Failing to keep accurate and reasonable records of incidents involving allegations of police misconduct and the investigation, handling and resolution

of those incidents, in order to avoid public scrutiny and accountability as to the extent of the misconduct and the inability of the department to police itself.

6. Failing to conduct appropriate in-service training, re-training or enhanced supervision of officers who were known or believed or suspected to have engaged in misconduct but for whom disciplinary action was not available for whatever reason.

7. Failing to reasonably or appropriately monitor civil litigation or police misconduct revealed through criminal proceedings so as to take corrective and/or disciplinary action when necessary, including the actions of the defendant officers, supervisors and commanders.

8. Failing to keep accurate or easily accessible records of the amount of money spent by the City in defending, settling and paying judgments in litigation involving misconduct by police personnel, so as to avoid accountability and scrutiny of the extent of the problem of police misconduct.

9. Failing to properly operate, maintain and staff an adequate "early warning system" to flag police personnel for whom there is concern regarding improper behavior or violation of citizens' rights or emotional or psychological conditions which could lead to violation of citizens' rights and to institute appropriate monitoring, supervision, training or intervention regarding said officers.

10. Failing to properly operate, maintain and staff an adequate internal investigative agency to identify, investigate and take appropriate action against police personnel when there is available information indicating the officer has violated a citizen's rights or otherwise engaged in misconduct, including but not limited to failing to keep adequate or reasonable records of citizen calls and complaints, failing to conduct meaningful investigation or analysis of patterns of misconduct, failing to conduct pro-active investigations or other appropriate or reasonable measures to protect citizens from abuse of their rights by police officers.

11. Authorizing, permitting, ratifying and condoning policies, practices, customs and procedures whereby constitutionally protected activities and gatherings involving the rights to speech, expression, association, locomotion and travel, particularly of African Americans and those who associate or frequent African

American neighborhoods, and particularly those activities which have deep roots in the social, cultural, political and religious traditions of the African American community of New Orleans, have been the subject of disruption, interference, harassment and intimidation, in an effort to deter, frustrate, intimidate and have a chilling effect upon the rights of African American citizens to walk, stand, drive or gather in public places and areas where they have permission to be, and also to freely and lawfully associate with others without fear of police interference, harassment, intimidation or abuse.

12. Condoning, approving and authorizing a culture and environment within the NOPD in which NOPD personnel, including the defendants herein, had the reasonable belief or expectation that their actions would not be properly monitored by supervisory or command officers and that their misconduct and/or unlawful actions would not be thoroughly investigated or sanctioned, but would be approved and tolerated.

13. Failing to adequately hold supervisory or command officers responsible for misconduct of their subordinates.

36. The actions and omissions of the defendants as described herein were done with deliberate indifference to the constitutional rights of the plaintiffs and Mr. Robair. The defendants have acted maliciously, willfully, wantonly, and in reckless disregard of plaintiffs' rights and those of Mr. Robair.

37. The acts and omissions of the defendants as described herein were also done with negligence, gross negligence and/or intent, in violation of Louisiana statutory and constitutional law and constituted wrongful death, assault, battery, false arrest, false imprisonment, intentional infliction of emotional distress, and violation of the rights to privacy, to liberty, to be left alone, to locomotion, to travel, to be free from unreasonable

search and seizure, to be free from the unjustifiable and excessive use of force and rights to free speech and association, due process of law, and equal protection under state law.

38. The defendant City of New Orleans negligently hired, retained, supervised, failed to discipline and entrusted the defendants in violation of Louisiana law.

39. The acts and omissions of the defendants as described herein were within the course and scope of their employment and the City of New Orleans is vicariously liable for their acts and omissions in accordance with Louisiana law.

40. The defendants are jointly and severally liable for the wrongs complained of herein, either by virtue of direct participation or by virtue of encouraging, aiding, abetting, committing, and/or ratifying or condoning the commission of the above described acts and/or omissions.

41. The actions of the defendants as described herein, were the proximate cause of the damages suffered by plaintiffs and Raymond Robair.

## VI. DAMAGES

42. As a result of the actions of the defendants as described above, damages have been incurred, as follows:

   1. Raymond Robair suffered severe physical, mental and emotional injury and pain and suffering, pre-death terror and death.

   2. Raymond Robair's daughters, the plaintiffs, have suffered the loss of love, companionship and affection of their father.

   3. Punitive damages against the individual defendants are sought.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray that after due proceedings, there be judgment in their behalf and against all defendants, jointly, severally and in solido, as follows:

1. Compensatory and punitive damages on behalf of plaintiffs.

2. Funeral costs in the amount of $3,865.00.

3. That plaintiffs be awarded reasonable attorneys fees and all costs of these proceedings.

4. That interest be awarded from the date of judicial demand.

5. That this matter be tried by a jury.

6. All other relief that this Court deems just and proper.

Respectfully submitted,

_____
MARY E. HOWELL, #7030
Attorney at Law
P.O. Box 19043
New Orleans, LA 70179
(504) 822-4455
Attorney for Plaintiffs

Robair. Complaint.31Jul06