## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JUDONA MITCHELL** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 06-04021** |
| | * | |
| **THE CITY OF NEW ORLEANS, ET AL** | * | **SECTION: "J"** |
| | * | |
| *    *    *    *    *    *    *    * | * | **MAG. "4"** |

### DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

Defendants, the City of New Orleans, former New Orleans Police Department ("NOPD") Superintendent Edwin Compass, ("Compass") and deceased NOPD Captain Anthony Cannatella ("Cannatella"), through undersigned counsel, submits this Joint Motion to Dismiss pursuant to Fed. Rule Civ. Proc. 12 (c ) or in the alternative a Motion for Summary Judgment pursuant to Fed. Rule Civ. Pro. 56 for the following reasons: 1) Plaintiffs have failed to state a claim upon which relief can be granted or prove liability against the City under *Monell*;  2) Plaintiffs have failed to state a claim upon which relief can be granted or prove liability against Edwin Compass and Anthony Cannatella; and 3) Edwin Compass and Anthony Cannatella are entitled to qualified immunity.

### I.       FACTS

On April 13, 2011, former NOPD Officers, Melvin Williams ("Williams") and Matthew Moore ("Moore") were convicted after a jury trial in the death of Raymond Robair ("Robair")

which occurred on July 30, 2005.[1] The facts presented before the jury revealed that on July 30, 2005, Williams and Moore were on an overtime patrol in the 1500 block of Dumaine Street in New Orleans when they encountered Raymond Robair, ("Robair").[i] Williams was the driver of the NOPD patrol car and Moore was his passenger.[2] Moore was a recruit in training and was under the supervision of Williams, his field training officer.[3] Moore testified that when Robair saw him and Williams he attempted to run, but he fell to the ground at which time Moore got on top of him.[4] Williams' testimony was consistent with Moore's and both denied beating or kicking Robair.[5] However, four neighborhood witnesses gave inconsistent testimony at trial that Williams kicked and beat Robair across the legs and torso with his metal police baton while Moore held Robair down on the ground.[6]

The officers drove Robair to Charity Hospital and advised the doctors that Robair may have ingested cocaine because they found a bag of crack in the backseat of the police car.[7] Therefore, the doctors treated him for a drug overdose. Although test results confirmed that Robair had cocaine in his system, it was not the cause of death.[8] Robair later succumbed to his injuries from internal bleeding to a ruptured spleen.[9] Two autopsies were conducted, one by the Orleans Parish Coroner Dr. McGarry and one by the government's expert, Dr. Sperry.[10] Both gave consistent causes of death, however, Dr. Sperry further concluded evidence existed to indicate that Robair was the victim of a beating, and the injuries to his ribs and spleen were

---

[1] See *U.S. v. Moore*, 708 F.3d 639 (5th Cir. 2013).
[2] Id.
[3] Id.
[4] See transcript of Moore's testimony in U.S. v. Moore, Case No. 2:10-cr-00213 (Rec. Doc. 169, pgs. 54-56 of 183).
[5] Id. at 57, 156-157, 165.
[6] *U.S. v. Moore*, 708 F.3d 639, 643 (5th Cir. 2013).
[7] Id.
[8] Id. at 644.
[9] Id. at 644.
[10] Id.

consistent with a kick. [11] Therefore, Dr. Sperry declared Robair's death a homicide.[12] Williams was subsequently found guilty of causing Robair's death while depriving him of his civil rights in violation of 18 U.S.C. Sect. 242 and both Williams and Moore was convicted of aiding and abetting obstruction of justice by filing a false police report. [13]

The NOPD Homicide Unit immediately began an investigation into the death of Mr. Robair on July 30, 2005 and issued a report documenting its finding. Additionally, the NOPD Public Integrity Bureau ("PIB") initiated an investigation into potential police misconduct of Williams and Moore following a complaint received on July 31, 2005.[14] After an investigation of the allegations of police misconduct, PIB Sgt. Daniel Wharton determined that the complaint against Williams and Moore was " unfounded" for  the following reasons: 1) inconsistent testimony of neighborhood witnesses; 2) the autopsy report of Orleans Parish Coroners Dr. Paul McGarry and Dr. Frank Minyard, classified Robair's death as accidental; and 3) the Orleans Parish District Attorney's Office refused criminal charges against Williams and Moore because there was insufficient evidence to determine whether they acted in conformity.[15]

However, Sgt. Wharton instituted a second PIB investigation after it was learned that Williams and Moore were convicted for the death of Robair following a federal jury trial.[16] Wharton subsequently found that Williams and Moore violated NOPD Rule 2 for Moral Conduct by failing to adhere to the Law and they were both suspended and terminated from employment

---

[11] Id.

[12]

[13] Id. at 643.

[14] See Affidavit of Sgt. Daniel Wharton attached hereto as Exhibit 1 with supporting documents attached hereto as Exhibits A-E.

[15] See PIB Report of Sgt. Daniel Wharton documented under PIB Control No. 05-875, dated July 2, 2008 with Exhibits, attached hereto as Exhibit 1-A in globo.

[16] See PIB report of Sgt. Daniel Wharton documented under PIB Control No. 10-1065-R  dated  July 5, 2011, attached hereto as Exhibit 1-D in globo.

with NOPD.[17]

## II.      PROCEDURAL HISTORY

Plaintiffs, Judona Mitchell and Lashonda Saulsberry, are the adult children of decedent Raymond Robair.  They filed suit on July 31, 2006 against the City, Compass, Cannatella, Williams, Moore, Sgt. John Doe and Lt. R. Roe under 42 U.S.C. Section 1983 and state law for Robair's death.[18] The case was stayed on March 14, 2007 due to pending criminal proceedings against Williams and Moore.[19]   The stay was lifted following a Motion by the Plaintiffs on April 22, 2015 after Williams and Moore were convicted in April 2011 and their appeal concluded in February 2013.[20]  The City filed a Motion to Substitute Counsel and withdrew its representation of Williams and Moore on May 19, 2015.[21] Plaintiffs' filed an Amended Complaint on August 13, 2015 and Defendants filed an Answer asserting Qualified Immunity on behalf of Compass.[22] Plaintiffs also filed a Motion to Substitute party following the death of Anthony Cannatella, naming his son, Anthony Cannatella, Jr. in his place.[23]

## III.      LAW& ARGUMENT

### A.  Standard of Review Rule 12 (c) Motion to Dismiss

The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6).  *Johnson v. Johnson*, 385 F.2d 503, 529 (5th Cir. 2004).  Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Motions to dismiss for failure to state a claim are appropriate when a defendant attacks the complaint because it fails to

---

[17] Id. See also termination notice for Moore attached hereto as Exhibit 2 and termination notice for Williams attached hereto as Exhibit 3.
[18] Rec. Docs. 1 and 36.
[19] Rec. Doc. 12
[20] Rec. Docs. 11-16
[21] Rec. Docs. 21, 24-15
[22] Rec. Docs. 36-40
[23] Rec. Docs. 37-38

state a legally cognizable claim. *Anthony v. School Board of Iberia Parish*, 692 F.Supp. 612, 257 Ed. Law Rep. 240 (W.D. La. 2/5/10)( *citing Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). In considering a Rule 12(b)(6) motion, the Court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).

But, in deciding whether dismissal is warranted, the Court will not accept conclusory allegations in the complaint as true. *See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). Indeed, the Court must first identify allegations that are conclusory and, thus, not entitled to the assumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). Assuming the veracity of the well-pleaded factual allegations, the Court must then determine "whether they plausibly give rise to an entitlement to relief." *Id.*

In deciding a motion to dismiss, the Court may consider documents that are essentially "part of the pleadings" -- that is, any documents attached to or incorporated in the plaintiff's complaint that are central to the plaintiff's claim for relief. *See Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).

**B.  Standard of Review Rule 56 Motion for Summary Judgment**

Summary judgment shall be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Barrios v. Clipps*, 825 F.Supp.2d 730 at 6 (5th Cir. 2011), *citing*, Fed. R.Civ. P. 56(a). Further, summary judgment is appropriate when the pleadings, depositions, answers to interrogatories and admissions on file,

together with affidavits, if any, show that there is not genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[24] A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.[25]  When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party.[26]

If the moving party has made an initial showing that there is no evidence to support the non-moving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue.[27]   Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.[28]  The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim.[29]  Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support Plaintiff's opposition to Defendant's motion.[30]

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment."[31]   Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion.[32] If the nonmoving party fails to make a showing sufficient to establish the existence of

---

[24] Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[25] *Anderson v. Libery Lobby, Inc*., 477 U.S. 242, 248, 106 S.Ct. 2505 (1986).

[26] *Matsushita El;ec. Indus. Co v. Zenith Radio Cotp*., 475 U.S. 574, 587, 106 S.Ct. 1348 (1986); Ragas, 136 F.3d at 458.

[27] *Matsushita,* 475 U.S. at 586, 106 S.Ct 1348 (1986).

[28] *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (La. All. Ct. 5 Cir.)., cert denied, 513 U.S. 871, 115 S. Ct 195 (1994).

[29] *Ragas*, 136 F.3d at 458.

[30] *Id*.; *Skotak v. Tenneco Resins, Inc*., 953 F.2d 909, 915-16 & n.7 (5th Cir.)., cert denied, 506 U.S. 832, 113 S. Ct. 98 (1992).

[31] *Anderson*, 477 U.S. at 248, 106 S. Ct. 2505 (1986).

[32] *Id*.

an element to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Id.* Conclusory allegations unsupported by specific facts will not prevent the award of summary judgment; 'the plaintiff cannot rest on his allegations to get to a jury without any significant probative evidence tending to support the complaint. *Barrios*, 825 F.Supp.2d 730 at 7, citing, *Nat'l Ass'n of Gov't Employees*, 40 f.3d at 713 (quoting *Anderson*, 477 U.S. 249, 106 S.Ct. 2505).

Under the above standards, dismissal is appropriate because Plaintiffs have failed to state a claim for relief against the City and has failed to offer any proof of liability under *Monell*.

### 1.  PLAINTIFFS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED OR PROVE LIABILITY AGAINST THE CITY

In order to succeed against the City in federal court, Plaintiffs must show that the City is liable under §1983 for its policies that cause constitutional torts.[33]  A municipality may not be held liable for its employees conduct pursuant to a theory of *respondeat superior* under federal law; rather, the plaintiff has the burden of proving that there was a constitutional deprivation and that municipal policy was the driving force behind the constitutional deprivation. *Id.* Isolated unconstitutional actions by municipal employees will almost never trigger liability.[34] Moreover, a suit against a government official in his or her official capacity is a suit against the governmental entity or municipality. *Kentucky v. Graham*, 105 S.Ct. 3099 (1983).  Thus, municipal liability under §1983 requires proof of three elements: (1) a policy maker; (2) an official policy; and (3) a policy that was the "moving force" behind a constitutional violation. *Id.* (citing *Monell*, 436 U.S. at 694).

---

[33] *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978); *see also*, *Zarnow v. City of Wichita Falls*, 614 F.3d 161 (5th Cir. 2010), *citing*, *Monell v. New York City*, 436 U.S. 658, 690, 98 S.Ct. 2018(1978); see also, *City of St. Louis v. Prarpotnik*, 485 U.S. 112, 121, 108 S.Ct. 915 (1988).

[34] *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) (citing *Bennett v. City of Slidell*, 728 F.2d 762, 768 n. 3 (5th Cir.1984))

The Supreme Court later emphasized the need for *Monell* plaintiffs to establish both the causal link ("moving force") and the city's degree of culpability ("deliberate indifference" to federally protected rights) declaring "[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability."[35] Thus, a plaintiff seeking to prevail must prove a direct causal link between the municipal policy and the constitutional deprivation.  Then, the plaintiff must establish that the city consciously enacted a policy reflecting "deliberate indifference" to the constitutional rights of its citizens.[36] Municipalities can only be held liable when execution of a government's policy or custom inflicts an injury.[37]  The tortious conduct, however, must be part of an "official policy."[38]  The "official policy" requirement can be met in three different ways.[39]  First, when the municipality promulgates a generally applicable statement of policy and the injury resulted from that policy.[40]

Second, when no "official policy" exists, but the action of the policy maker violated a constitutional right and third, when the policymaker fails to act to control its agents when it was "so obvious, and the inadequacy [of existing practice] so likely to result in the violation of constitutional rights, that the policymake[r]...can reasonably be said to have been deliberately indifferent to the need."[41]  Deliberate indifference of this sort is a stringent test, and "a showing of simple or even heightened negligence will not suffice" to prove municipal culpability.[42] Thus, it follows that each and any policy which Plaintiff alleges caused a constitutional violation must

---

[35] *Board of County Commissioners of Bryan County, Okl. v. Brown*, 520 U.S. 397(1997).

[36] *City of Canton*, 489 U.S. at 389,; *See also Watson v. City of New Orleans*, 2000 WL 126921 (E.D.La. 2/3/2000).

[37] *Burge v. Parish of St. Tammany,* 187 F.3d 452, 468-71 (La. 1999).

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] *Id. at 471.*

[42] *Piotrowski,* 237 F.3d at 579 (*citing Bryan County*, 520 U.S. at 407, 117 S.Ct. at 1389, 1390 (1997)).

be ***specifically identified*** by Plaintiff, and it must be determined whether each one is facially constitutional or unconstitutional.[43] [Emphasis added].

      **a)  Plaintiffs have failed to plead or prove a policy or custom of the City that was the moving force behind the alleged constitutional deprivation of Robair's rights.**

In this case, Plaintiffs' original and amended complaints do not identify any specific or official policy, practice or custom implemented by the City of New Orleans that was the moving force behind Robair's death. Both complaints contain mere conjecture and unsupported conclusions. They list several broad allegations against the City, but fail to allege any facts that satisfy the requisite proof required to succeed under *Monell*.[44] Both complaints fail to allege:  1) a policymaker with actual or constructive knowledge of; 2) an official or specific policy, ordinance or regulation that was; 3) the moving force behind any alleged constitutional violation. For example, plaintiffs assert extremely vague allegations against the City for conspiracy, developing and maintaining policies, practices, procedures and customs exhibiting deliberate indifference, but does not identify one specific policy, practice or custom .[45] Moreover, it is well settled that a bald allegation that a conspiracy exists, unsupported by any factual allegations is insufficient.[46]

Here, there are no facts to support that the City conspired with any of the co-defendants to deprive Robair of his constitutional rights.  Additionally, there are no facts or evidence to support Plaintiffs' claims that the City is liable for failure to properly screen before hiring, failing

---

[43] *Piotrowski,* 237 F.3d at 579.
[44] Rec. Doc. 1, pgs. 12-16, Rec. Doc. 36 pgs., 11-16.
[45] Rec. Doc. 1, pg. 12, par. 37-40 and Rec. Doc. 36, par. 31, pg. 11, par. 24 subparts 1-13, pgs 12-14.
[46] *McCall v. Peters*, 2003 WL 21488211 (N.D. Tex.), *citing, Lynch v. Cannatella*, 810 F.2d 1363, 9-70 (5th Cir. 1987); see also *Green v. State Bar of Tex*., 27 F.3d 1083, 1089 (5th Cir. 1994) (stating that a plaintiff is required to allege facts sufficient to suggest an agreement among one or more parties). Id. at 9.

to supervise, discipline, train and investigate allegations of police misconduct also fail.[47]  These conclusory allegations are also insufficient to invoke liability against the City, because courts have consistently held that in order for the Plaintiffs to prove a training or hiring program is defective  "the focus must be on the adequacy of the training [or hiring] program in relation to the tasks the particular officers must perform".[48]  Moreover to hold a municipality liable for failure to train an officer it must have been obvious that "the highly predictable consequence of not training its officers was that they would apply force in such a way that the Fourth Amendment rights of citizens were at risk.  *Brown v. Bryan Co., Okla*, 219 F.3d 450, 458 (5th Cir. 2000).

Plaintiffs in the case at bar fail to identify a specific training or hiring program of the City that is inadequate or defective and fail to establish the causal link or connection between said program and Robair's death.  Because Plaintiffs have failed to identify a specific training/hiring program or cite to any official policy, ordinance, law or custom of the City of New Orleans or show how the City acted with deliberate indifference, they have failed to establish a causal link between any policy and Robair's death sufficient to invoke liability against the City under *Monell*.

### b)  Plaintiffs failed to prove a causal link between any policy and the alleged deprivation of Robair's rights

Plaintiffs conclusory allegations that the City acted with deliberate indifference is insufficient to establish liability under *Monell* and false.[49]  Furthermore, the plaintiffs must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation

---

[47] Rec. Doc.. 1, pg. 13 par. 40, sub-par. 1-5.
[48] *Barrios v. Clipps*, 825 F.Supp.2d 730 at 21(ED La. 2011), *citing*, *Connick v. Thompson*, 131 S.Ct. 1350, 1359(2011).
[49] Rec. Docs. 1, pg. 13, par. 35 and Rec. Doc. 36, pg. 12.

of a particular constitutional or statutory right will follow the decision.[50]  It is not enough for Plaintiffs to merely recite a list of conclusory allegations in paragraph 34 subparts 1-13 to invoke liability against the City and to state the City "developed and maintained policies, customs and practices exhibiting deliberate indifference" without any other facts or evidence to substantiate this allegation.[51] Even if this Court finds that Plaintiffs have sufficiently stated a claim against the City for deliberate indifference, which the City denies, there is no evidence to support this allegation because the City did not create unconstitutional policies.

To the contrary, the NOPD's policy on Use of Force specifically prohibits force that is excessive when it is illegal, in appropriate or unreasonable.[52]   Furthermore, NOPD Rule 2, titled Moral Conduct, specifically provides that "employees shall not use or direct unjustifiable physical abuse, violence, force or intimidation against any person."[53]  Williams testified that he was well trained by NOPD on the use of force, the use of a baton and the legal consequences of excessive force.[54]  Additionally, Plaintiffs' claims that the City failed to investigate and discipline officers for misconduct as well as condoned, ratified or approved of conduct that would violate constitutionally protected activities is also not sufficient proof of deliberate indifference, because Plaintiffs fail to allege with specificity how the City acted in such a manner and these allegations are factually inaccurate.[55]

Contrary to Plaintiffs allegation, it is undisputed that the City conducted an investigation into the cause of Robair's death and the misconduct of Williams and Moore.[56]  Although the initial finding of misconduct was "unfounded", Sgt. Williams conducted a second investigation

---

[50] *Valle v. City of Houston*, 613 F.3d  536 (5th Cir. 2010), citing, *Bd. Of the County Comm'rs v. Brown*, 520 U.S. 3997, 404 (1997).
[51] See Rec. Doc. 1,  pgs. 13, par. 35 and Rec. Doc. 36, pgs. 12-14.
[52] See NOPD Use of Force Policy, Chapter 1.2 attached hereto as Exhibit 4.
[53] See NOPD Rule 2, attached hereto as Exhibit 5
[54] See transcript of Williams testimony in U.S. V. Moore, Case No. 2:10-cr-00213 (Rec. Doc. 169, pgs. 170-171.
[55] See Rec. Doc. 1, pg. 12, par. 27 and Rec. Doc. 36, pg. 10 , par. 27 and pgs. 13-14, par. 11-12.
[56] See Exhibit 1.

following the convictions of Williams and Moore and "sustained" violations of NOPD Rule 2 for

Moral Conduct which led to Williams and Moore's suspension and subsequent termination.[57]

Moreover, the Court has held that a policymaker who defends conduct that is later shown to be

unlawful does not necessarily incur liability on behalf of the municipality.[58]   Accordingly,

Plaintiffs fail to state a claim or offer any evidence to support liability against the City pursuant

to *Monell* and all claims against the City should be dismissed with prejudice.

## 2.   Plaintiffs have failed to prove liability against the City under section 1983 and state law for the actions of Melvin Williams and Matthew Moore

The Fifth Circuit has consistently held that absent a policy, practice, custom or causal

connection pursuant to *Monell* a municipality and police chief cannot be held liable under federal

and state law for the actions of its employee.[59]   In *Young*, the Fifth Circuit affirmed the District

Court's denial of liability against a City and police chief for the police shooting of a suspect

involved in a drug transaction in an automobile. Id.   However, the Fifth Circuit affirmed liability

as to the police officer under Texas wrongful death law.   In affirming liability as to the police

officer, the court reasoned there was no basis in the record to support liability against the city and

the police chief because the plaintiffs failed to establish a policy or custom of the city and there

was no personal involvement by the police chief.[60]

Additionally, the Court held the constitutional right to be free from unreasonable seizure has

never been equated by the Court with the right to be free from a negligently executed stop or

arrest. Id.   There is no question about the fundamental interest in a person's own life, but it does

---

[57] See Exhibits 1-D in globo
[58] *Peterson v. City of Fortworth*, 588 F.3d 838, 848 (5th Cir. 2009; *citing, Coon v. Ledbetter*, 780 F.2d 1158, 1161-62 (5th Cir. 1986). See also, *Sndyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998)(refusing to find ratification where an officer shot fleeing suspect in the back).
[59] *Young v. City of Kileen Texas*, 775 F.2d 1349 (5th Cir. 1995).
[60] Id. at 1352.

not follow that a negligent taking of life is a constitutional deprivation.[61]

The Court looked specifically at the *Young's* actions and determined that his movements gave Officer Olson cause to believe that there was a threat of serious physical harm.  Id. Olson's use of deadly force was not a constitutional violation.[62]  The only fault found against Olson was his negligence in creating a situation where the danger of such a mistake would exist.  The Court further reasoned: "we hold no right is guaranteed by federal law that one will be free from circumstances where he will be endangered by the misinterpretation of his acts".  Id.   The Court also held: "in the tort action after identifying the negligence, we need only determine whether the harm was a foreseeable consequence caused by the negligence.  If a person of ordinary intelligence should have anticipated danger to another by his negligence, he is liable even though he did not believe that harm would occur and could not anticipate just how the injuries would grow out of the particular dangerous situation. [63] Accordingly, the Fifth Circuit affirmed the District Court's decision to hold only the officer liable for the pendent state law claims.

Similar to *Young*, is *Lewis v. Pugh*, the Fifth Circuit denied liability against the City and police chief for an Officer's intentional criminal action in committing rape and assault after being found guilty at trial.[64]  The Court affirmed the jury verdict against the officer and held the Plaintiff did not prove liability against the City or police chief pursuant to *Monell*.[65]

Like the Plaintiffs in the above referenced cases, Plaintiffs claims against the City in the instant case should be dismissed with prejudice as well.  Plaintiffs are unable to prove liability under federal and state law against the City, Compass and Cannatella.

### 3.  Plaintiffs have failed to state a claim upon which relief can be granted

---

[61] Id. at 1353
[62] Id., *citing, Tennessee v. Garner*, 471 U.S. at , 105, S.Ct. at 1701.
[63] *Young*, at 1354.
[64] *Lewis v. Pugh*, 289 Fed.Appx. 767 (5th Cir. 2008).
[65] Id. at 775-777

**against former Superintendent Edwin P. Compass**

It is well settled that Supervisory officials cannot be held vicariously liable for their subordinates' actions, rather, they may only be held liable if they affirmatively participate in acts that cause the constitutional deprivation; or implement unconstitutional policies that causally result in the plaintiff's injuries.[66]   Personal involvement is an essential element of a civil rights cause of action. [67]

Here, Plaintiffs' Complaints lacks the requisite pleading requirement to invoke liability against former Superintendent Edwin Compass.  It is undisputed that Compass was not present when Williams and Moore encountered Robair on July 30, 2005, and both complaints fail to assert any allegations of personal involvement of Compass in Robair's death.  The complaint consists of bald conclusory allegations against Compass that do not assert a claim upon which relief can be granted.[68] For instance, plaintiffs vaguely assert that Compass is liable for the actions of Williams and Moore because  "he was responsible for the policies, practices and customs and procedures of the NOPD, as well as  hiring, training supervision, discipline and control."[69]     However, plaintiffs fail to allege with specificity what specific policy, practice, custom or procedure Compass is responsible for promulgating or enforcing.  Additionally, Plaintiffs fail to assert that these alleged policies or customs were the cause of the alleged constitutional deprivation of Robair's rights.

Moreover, Plaintiffs' vague erroneous assertion that Compass should be held liable because he either knew or should have known of the "numerous incidents and complaints against

---

[66]*Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018(1978). *Mouille v. City of Live Oak*, 977 F.2d 951, (5th Cir. 1992), cert. denied, 508 U.S. 951, 113 S.Ct. 2443 (1993).
[67]*Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir.), *cert denied*, 464 U.S 897, 104 S.Ct. 248 (1983)(citing *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598 (1976)(affirmative link needed between injury and defendant's conduct)).
[68]Rec. Doc. 1, pg. 2, paragraph 5.
[69] Rec. Doc. 1, pg. 3, par. 5.

14

Williams" and "failed to properly supervise, discipline, investigate or intervene in the actions of defendant Williams" is also insufficient to state a claim against Compass.[70]   In paragraphs 22 through 27 of the Complaint, Plaintiffs assert very broad conclusory allegations against Compass that he should be liable because he was well aware of the history of NOPD, and its "dysfunctions and deficiencies" in hiring, supervision and discipline but fail to assert any direct involvement of Compass and the death of Robair.[71]   These vague and conclusory allegations do not identify the specific dysfunction or deficiency cause by Compass, nor does it establish a pattern of similar conduct to that which was sustained by Robair.  Moreover, Plaintiffs fail to show a causal or direct link with these ambiguous prior incidents and the death of Robair.

Furthermore, Plaintiffs' conspiracy claims against Compass also fail.[72]  Once again, in order to prevail on a section 1983 conspiracy claim a plaintiff must establish the existence of a conspiracy involving state action and a deprivation of civil rights in furtherance of that conspiracy.[73]  The plaintiff must also show that the Compass agreed to commit an illegal act with the other named defendants.[74]  The bald allegation that Compass and other supervisors had "knowledge of the wrongs done and conspired to be done as described herein" is not only false but simply insufficient to state a plausible claim against Compass.[75]   This allegation without anything further to substantiate it is insufficient to state a claim of conspiracy.  Id.

Additionally, Plaintiffs erroneous accusations that Compass failed to investigate and discipline officers are also insufficient to state a claim upon which relief can be granted.[76]  was

---

[70] Rec. Doc. 1, pg. 8, par. 19.
[71] Rec. Doc. 1 pgs. 9-11, Par. 22-27, see also Rec. Doc. 36, pgs. 8-9.
[72] See Rec. Doc. 1, pg. 13, par. 32, see also Rec. Doc. 36, pg. 11.
[73] *Vinas v. Serpas*, 2012 WL 2135286 (E.D. La. 6/12/12); *citing, Thompson v. Johnson*, 348 Fed. Appx. 919, 922 (5th Cir. 2009).  T
[74] Id. (quoting *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982).
[75] Rec. Doc. 1, pg. 13, par. 33.
[76] Rec. Doc. 1, pg. 9, par. 23 and Rec. Doc. 36, pg. 8-9 par. 23-24

the moving force or cause of the constitutional deprivation to Robair.  Once again, Robair's death was immediately  investigated by the NOPD Homicide Division on July 30, 2005 and PIB on July 31, 2005.[77]   Sgt. Wharton initially concluded that the charges of misconduct against Williams and Moore were "unfounded" at that time due to inconsistent witness statements, autopsy report and refusal to prosecute by the DA.[78]   However, Sgt. Wharton instituted a second investigation following the federal criminal trial of Williams and Moore and concluded both violated NOPD policies for Moral Conduct, Adherence to Law and were subsequently terminated from employment with NOPD. [79]   Compass subsequently retired from NOPD on October 31, 2005.[80]   Thus, he was no longer employed by NOPD to order, participate or supervise subsequent investigations of Williams and Moore's actions.  Accordingly, all claims against Compass should be dismissed with prejudice.

### 4. Plaintiffs have failed to state a claim upon which relief can be granted as to Sgt. John Doe, Lt. R. Roe and Cpt. Anthony Cannatella, Sr. (deceased)

In addition to failing to state a claim upon which relief can be granted as to Compass, Plaintiffs have also failed to state a claim upon which relief can be granted as to Sgt. John Doe, Lt. R. Roe and Cpt. Anthony Cannatella, Sr.  Plaintiffs make vague and conclusory allegations against these defendants in their individual and official capacity that fail to meet the requisite pleading standard.  For instance, Plaintiffs assert that Sgt. J. Doe, Lt. Roe and Capt. Cannatella "were in the chain of command over defendants Williams and Moore and should be liable for failing to intervene or take other appropriate actions to remedy this situation".[81]   However, Plaintiffs fail to assert any personal involvement of Sgt. J. Doe, Lt. R. Roe and Capt. Cannatella

---

[77] See Exhibits 1A-E
[78] See Exhibit , pg. 11
[79] Exhibit 1D
[80] Exhibit 6
[81] Rec. Doc. 36, par. 18, pg. 7.

with the death of Robair. It is undisputed that Cannatella, Sgt. J. Doe and lt. R. Roe were not present when Williams and Moore encountered Robair on July 30, 2005. Additionally, Plaintiffs vaguely assert that numerous NOPD supervisors and commander, including Compass, knew, must or should have known of the numerous incidents and complaints against Williams", but these allegations also fail as there are no specific facts alleged to support the claims made against these defendants. [82] Even plaintiffs' Amended Complaint fails to identify Sgt. J. Doe and Lt .R. Roe or any other officer or employee of the City present when Williams and Moore encountered Robair on July 30, 2005.

Moreover, Plaintiffs' conspiracy allegation against the supervisors are also conclusory as there are no facts within either the Original or Amended Complaint to support that the supervisors conspired to commit the alleged constitutional violations committed by Williams and Moore.[83] More importantly Plaintiffs have failed to plead with specificity a causal connection between these vague allegations and the death of Robair. Therefore, all claims against Sgt. John Doe, Lt. R. Roe and Capt. Anthony Cannatella, Sr. and Anthony Cannatella, Jr. should be dismissed with prejudice because Plaintiffs have failed to state a claim upon which relief can be granted. Even if this Court finds that Plaintiffs have stated a claim against these supervisors, which Defendants herein deny, these supervisors are entitled to qualified immunity.

## C. Qualified Immunity Standard of Review

When a government official is sued under section 1983 he may be entitled to qualified immunity. In *Saucier v. Katz,* the Supreme Court proscribed a mandate: "[i]n a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified defense must

---

[82] Rec. Doc. 36, par. 19, pg. 7.
[83] Rec. Doc. 36, par. 31-32, pg. 11.

be considered in proper sequence.[84]  Where the defendants, as here, seek qualified immunity, a ruling on that issue should be made early in the proceedings so that the cost and expenses of trial are avoided where the defense is dispositive.[85]  Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation.[86]  The privilege is an ***immunity from suit rather than a mere defense to liability;*** and like the absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.[87]

"A court required to rule upon the qualified immunity issue must consider, then, this threshold question:  Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?  This must be the initial inquiry."[88]  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.[89]  On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.  This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable."[90]

The Fifth Circuit has held: "to overcome a qualified immunity defense, the complaint

---

[84] *Saucier*, 533 U.S. 194, 121 S.Ct. 2151 (2001).

[85] *Id.*

[86] *Id.* (citing *Mitchell v. Forsythe*, 472 U.S. 511, 526, 105 S.Ct 2806, 86 L.Ed. 2d 411 (1985)).

[87] *Id.* (emphasis added).

[88] *Katz*, 121 S.Ct. 2151, 2156 (2001) (citing *Siegert v. Gilley*, 520 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)). For several years, the Supreme Court required that the first of these criteria-whether plaintiffs' facts allege a constitutional violation-must be decided at the outset as set forth in *Saucier,* 533 U.S. 194, 201. Recently, however, the Court reversed course, holding that "courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *See Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).*

[89] *Id.*

[90] *Id.*

must allege facts that, if proven would demonstrate that the officer violated clearly established statutory or constitutional rights".[91]  Furthermore, the Plaintiffs must plead sufficient factual matter to show that each Government official defendant, through his own individual actions, has violated the Constitution.[92]

> **1.  Compass, Sgt. John Doe, Lt. R. Roe and Capt. Anthony Cannatella are entitled to Qualified Immunity.**

Plaintiffs' complaint fails to allege facts that if proven would demonstrate that Compass and each of the named and unidentified supervisors violated clearly established statutory or constitutional rights.

In *Wicks*, plaintiff filed a racial discrimination and first amendment claim against his former supervisor.[93]  The supervisor filed a Motion to Dismiss or Alternatively Motion for Summary Judgment on qualified immunity.  Id.  The Defendants additionally filed a Motion to Hold Discovery in Abeyance pending the consideration of the qualified immunity defense.  Id. The Fifth Circuit reversed the District Court's denial of qualified immunity and further held discovery should not proceed until the district court first finds that plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity.  Id.  Plaintiff must allege facts specifically focusing on the conduct of his supervisor which cause his injury.  Id. at 995.

Moreover, as a prerequisite, plaintiffs must identify defendants who were either personally involved or whose acts are causally connected to the constitutional violation alleged.[94] Plaintiffs must show  (1) that the police chief failed to supervise or train the officer; (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiff's

---

[91] *Wicks v. Mississippi State Employment Services, et al*, 41 F3d. 991 (5th Cir. 1995).
[92] *Ashcroft v. Iqbal*, 556 U.S. 662, at 663, 129 S.Ct. 1937 (2009).

[93] Id. at 994.
[94] *See Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005), *citing Woods v. Edwards,* 51 F.3d 577, 583 (5th Cir. 1995).

rights; and (3) the failure to supervise or train amounted to deliberate indifference to the plaintiff's constitutional rights. [95]

In *Roberts* the plaintiffs sued the chief of police in Shreveport for the wrongful death of their father who was shot and killed by a police officer during a foot chase of a vehicle that would not stop. Id. The Court dismissed all claims against the Chief of Police under federal and state law, on the basis of qualified immunity. Id.

Similar to *Wicks* and *Roberts* is plaintiffs in this case. Plaintiffs allege that Compass, Sgt. John Doe, Lt. R. Roe and Capt. Anthony Cannatella violated 42 U.S.C. Sect. 1983, as well as, the 1st, 4th, 9th and 14th Amendment but does not allege any facts to support this allegation. [96] Moreover, Plaintiffs Complaint fails to establish any conduct or personal involvement of Compass and the other named supervisors which caused the injury to Robair. It is undisputed that the Plaintiffs never allege that Compass, nor Sgt. John Doe, Lt. R. Roe or Capt. Anthony Cannatella were present when Williams and Moore allegedly beat Robair on July 30, 2005. It is also undisputed that neither Compass, nor Sgt. John Doe, Lt. R. Roe or Capt. Anthony Cannatella were indicted by any criminal court for their actions as it relates to the death of Robair because none were present or personally involved in the incident that forms the basis of this litigation. Accordingly, Compass, Sgt. John Doe, Lt. R. Roe and Capt. Anthony Cannatella, Sr are all entitled to Qualified Immunity under federal law.

### 2. Compass, Sgt. John Doe, Lt. R. Roe and Capt. Anthony Cannatella, Sr. are entitled to immunity under state law.

Similar to federal law, public officials are entitled to immunity from suit for their discretionary actions under state law. Under Louisiana law, Compass, Sgt. John Doe, Lt. R. Roe

---

[95] Id., *citing, City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197 (1989); *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003).
[96] Rec. Docs, 1, and 36.

and Capt. Anthony Cannatella, Sr.  also enjoy immunity from suit under Louisiana's discretionary immunity statute, R.S. 9:2798.1, which provides, in relevant part:

> "B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties."[97]

Louisiana and federal courts have consistently held that hiring, training, retention, and supervision fall under the discretionary immunity protection the statute confers.[98]

Here, Plaintiffs filed suit against Compass as the "final policymaker" for the City of New Orleans, however the Complaint fails to identify a specific policy that was created by him and failed to establish a causal link between the policy and the alleged constitutional deprivation to Robair.[99]  Since the statute explicitly protects policy-making decisions, this cannot be a basis for liability under Louisiana law.  Additionally, the complaint lacks any allegations that Compass, Sgt. John Doe, Lt. R. Roe and Capt. Anthony Cannatella, Sr. (deceased) or his son, Anthony Cannatella, Jr. affirmatively participated in any acts that caused the alleged constitutional deprivation of Mr. Robair.  Moreover, Plaintiffs have failed to allege with specificity what unconstitutional policies or customs that Compass, as the policymaker, implemented that caused Mr. Robair's death.   Thus, these defendants are entitled to immunity under Louisiana law as well on Plaintiffs' supplemental state law claims.

## D.  **Plaintiffs have failed to prove liability under State Law**

---

[97] La. Rev. Stat. § 2798.1(B).

[98] *See Robertson v. Staton*, CIV.A.06 0183, 2006 WL 3412323, at *3 (W.D. La. Nov. 27, 2006)(holding that under La. R.S. §2798.1, "[s]heriff['s]. . . decision to continue [d]etective['s] . . . employment was discretionary, and liability cannot be imposed under state law"); *see also Roberts v. City of Shreveport*, 397 F.3d 287, 296 (5th Cir. 2005)(holding that under the same statute, a sheriff's "training and supervisory decisions are grounded in policy considerations"); *Smith v. Lafayette Parish Sheriff's Dep't,* 2003-517, p. 7 (La.App. 3 Cir. 4/21/04); 874 So.2d 863, 868 (holding that under the same statute sheriff's "hiring/retention was a discretionary act")(citing *Gregor v. Argenot Great Cent. Ins. Co.,* 02-1138, p.7 (La.5/20/03); 851 So.2d 959, 964).

[99] Rec. Doc. , pgs. 6, par. 4-5.

In addition to Plaintiffs' federal claims, their state law claims should be dismissed with prejudice as well.[100]  In their complaint, Plaintiffs assert vague state law claims against the Defendants for violations of  Robair's constitutional rights under state law.[101] However, these allegations are also insufficient and do not pass muster under *Monell*, because, Louisiana law follows federal guidelines for municipal liability. Louisiana courts state that Plaintiffs must allege with specificity and identify a policy, practice or custom of the City that was the moving force behind the constitutional deprivation of Robair's rights.[102]

Furthermore, for Plaintiffs to recover under state law negligence claims they must show that (1) the City, Compass and Cannatella's conduct was the cause in fact of the harm, (2) that they owed him a duty of care, (3) that the duty was breached and (4) the risk was in the scope of harm afforded by the duty.[103]  In *Batiste*, the Fifth Circuit dismissed the plaintiff's state law negligence claims because the plaintiff could not show that the officers' supposed excessive force caused the plaintiff's death or that the force used was unreasonable.[104]

Plaintiffs will likely argue the City should be vicariously liable for the actions of Williams and Moore under Louisiana law for vicarious liability claiming the officers were in course and scope of their employment.[105] However, it is undisputed that Williams and Moore were not on duty but working a voluntary overtime at the time of the incident.  Even if this court finds they were considered working "on the clock" at the time of the incident, under Louisiana law an employer will not be attributed vicarious liability simply because the intentional act

---

[100] Rec. Doc. 1, par. 1, 36-39 and Rec. Doc. 36, par. 36-39.
[101] Rec. Doc. 1, pgs. 3-4, pg. 16 par. 43
[102] See *Taylor v. Shreveport*, 653 So.2d 232 (La. 2nd Cir. 1995), writ denied, 653 So.2d 232 (La. 1995), denying municipal liability for and granting qualified immunity to police chief finding plaintiffs failed to plead any allegation or show proof the City had a policy or custom or practice of violating plaintiff's rights in the death of woman after entering the home pursuant to a valid arrest warrant. Id. at 236.
[103] *Batiste*, 458 Fed. Appx. 351, 359, *citing, Syrie v. Schilhab*, 693 So.2d 1173, 1177 (La. 1997).
[104] Id. at 360.
[105] Rec. Doc. 1 pg. 3, par. 4 and Rec. Doc. 36, pg. 2, par. 4.

occurs during work hours.[106] In order to impose vicarious liability, the employee also needs to be

acting within the ambit of his assigned duties and/or furthering his employer's objective.  Id.

Because the City does not have a policy that allows illegal and unnecessary excessive

force or supports the acts for which Williams and Moore were convicted, they clearly were not

acting within the ambit of their assigned duties and/or furthering the City's objective.

Additionally, both were terminated for acting outside the course and scope of their duties when

found to be in violation of NOPD's rules for Moral Conduct by failing to adhere to the law.[107]

Thus, Plaintiffs are not entitled to damages by the City, Compass or Cannatella and the other un-

named supervisors.

## E.  DAMAGES

Plaintiffs are seeking compensatory and punitive damages in this case.  [108]  However, it is

well settled law that municipalities are exempt from punitive damages in section 1983 cases.[109]

Moreover, there is nothing in the record to show the City acted with malice toward Robair to

entitle Plaintiffs to punitive damages.  Additionally, the City cannot be held liable for Williams

and Moore's conduct under *Monell*.  Furthermore, even if Williams and Moore are found

personally liable, a victory in a personal capacity action is a victory against the individual

defendant, rather than against the entity that employs him.  *Kentucky v. Graham*, 473 U.S. 159,

168, 105 S.Ct. 3099 (1985).  Accordingly, Plaintiffs claims for damages from City should be

dismissed as well.

---

[106] *Faust v. Greater Lakeside Corp*., 797 So.2d 748 (4th Cir. 2001), denying employer liability for the stabbing of two employees by co-workers, holding the intentional conduct falls outside the scope of employment. Id. at 755,756.
[107] See Exhibits 6-7.
[108] Rec. doc. 1, par. 91, pg. 24
[109] *City of Newport v. Fact Concert, Inc*. 453 U.S. 247, 101 S.Ct. 2748 (1981). see also,  *Webster v. City of Houston*, 689 F.2d 1220 (C.A. Tex. 1982).

## IV.    CONCLUSION

Based on the above and foregoing, all claims against the City, Edwin Compass, Anthony Cannatella Sr., Anthony Cannatella Jr., and the other un-named supervisors should be dismissed with prejudice.

Respectfully Submitted,

*/s/Churita H. Hansell*

**CHURITA H. HANSELL**, LSB#25694
DEPUTY CITY ATTORNEY
1300 Perdido Street, Room 5E03
New Orleans, Louisiana 70112
Telephone:  (504) 658-9850
Fax: (504) 658-9868
chhansell@nola.gov
**E. PATRICK EAGAN, LSB# 34848**
ASSISTANT CITY ATTORNEY
**ISAKA R. WILLIAMS, LSB# 29704**
ASSISTANT CITY ATTORNEY
**CHERRELL R. SIMMS, LSB# 28227**
SR. CHIEF DEPUTY CITY ATTORNEY
**REBECCA H. DIETZ, LSB# 28842**
CITY ATTORNEY

and

*/s/Anthony Cannatella, Jr.*

Anthony Cannatella, Jr. in his capacity as the
Administrator of the Succession of Anthony Cannatella, Sr.
Pro Se
1258 Helios Ave.
Metairie, Louisiana 70005
Telephone:  (504)234-2557

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the above and foregoing pleadings have been forwarded to opposing counsel via e-filing this 26th day of February, 2016.

*/s/Churita H. Hansell*

CHURITA H. HANSELL

24