# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JUDONNA MITCHELL and LaSHONDA SAULSBERRY** | **CIVIL ACTION** |
| **Plaintiffs** | **NO. 06-4021 J-4** |
| **VS.** | |
| **CITY OF NEW ORLEANS,** Former NOPD Superintendent **EDDIE COMPASS,** | **JUDGE BARBIER** |
| NOPD Officers **MELVIN WILLIAMS** and **DEAN MOORE,** NOPD Sgt. **J. DOE,** | **MAGISTRATE ROBY** |
| NOPD Lt. **R. ROE** and NOPD Capt. **ANTHONY CANATELLA** | **JURY TRIAL** |
| **Defendants** | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO JOINT MOTION TO DISMISS PURSUANT TO FED. RULE CIV. PROC. 12(c) OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. RULE CIV. PROC. 56**

For the following reasons, plaintiffs Judonna Mitchell and LaShonda Saulsberry oppose the Motion of defendants, the City of New Orleans ("the City"), Edwin P. Compass, III ("Compass"), and Anthony Cannatella, Jr., ("Cannatella, Jr."),[1] to Dismiss Pursuant to Fed. Rule Civ. Proc. 12(c) or in the alternative Motion for Summary Judgment Pursuant to Fed. Rule Civ. Proc. 56.

First, the Court should deny movers' Rule 12(c) motion because plaintiffs have satisfied the requirements for pleading their federal and state claims against the City, Compass, and Cannatella. Alternatively, if the Court finds that plaintiffs have not met this standard, it is respectfully requested that plaintiffs be allowed the opportunity to amend their pleading to restate

---

[1] Plaintiffs refer herein to Anthony W. Cannatella, Jr. as "Cannatella, Jr." and to Anthony W. Cannatella, Sr., the late NOPD officer, as "Capt. Cannatella." Cannatella, Jr., in his capacity as Administrator of the Succession of Capt. Cannatella, has been substituted as a defendant in the place of the late Capt. Cannatella. Doc. 38.

these claims. Second, it is requested that the Court grant plaintiffs additional time under Rule 56(d) to conduct depositions to obtain facts essential to justify their opposition to movers' Rule 56 summary judgment motion. Alternatively, if the Court does not grant plaintiffs additional time under Rule 56(d), the Court should deny movers' Rule 56 motion because they have (1) submitted unauthenticated and inadmissible documents in support of their motion; and (2) violated Rule 56(c)(1)(A) by failing to support their assertion of uncontested material facts with specific citations to particular parts of the record. Additionally, defendants have not met their burden of showing that they are entitled to a Rule 12(c) dismissal or to summary judgment on the issue of qualified immunity.

## Background

Raymond Robair ("Robair") was a 48-year-old resident of New Orleans on July 30, 2005 when he died as a result of an unprovoked, unjustified and brutal beating he suffered in the custody of then New Orleans Police Department (NOPD) officers Melvin Williams ("Williams") and Matthew Dean Moore ("Moore"). A federal grand jury indicted both officers for crimes related to Robair's death and the cover-up. On April 13, 2011, a jury convicted both officers on all charges.[2] Melvin Williams was convicted under 18 U.S.C. § 242 of depriving Raymond Robair of his civil rights under color of law, and the jury specifically found that this offense "resulted in the death of Raymond Robair."[3] Both officers were convicted of obstructing a federal investigation under 18 U.S.C. §§ 2 and 1519. Officer Moore was also convicted of violating 18 U.S.C. § 1001

---

[2] *United States v. Melvin Williams and Matthew Dean Moore,* Cr. No. 10-213-L (E.D.La.), Doc. 97-4. A court can refer to matters of public record when deciding a motion to dismiss. C*hauhan v. Formosa Plastics Corp.,* 212 F.3d 595, 595 (5th Cir. 2000).

[3] *United States v. Melvin Williams and Matthew Dean Moore,* Cr. No. 10-213-L (E.D.La.), Doc. 97-4.

(making false statements).[4]  The Fifth Circuit Court of Appeals affirmed their convictions, and

Melvin Williams and Dean Moore are now serving their sentences.[5]  All convictions are final.

In its opinion, the Fifth Circuit Court of Appeals summarized the facts in the light most

favorable to the jury's verdict as follows:

> On July 30, 2005, at approximately 9:00 a.m., Raymond Robair was on Dumaine Street in New Orleans. A patrol car driven by New Orleans Police Department (NOPD) officer Williams pulled over to the curb near Robair. Williams had been employed by the NOPD since 1994. Officer Moore, who was in the passenger seat, was a recruit who had graduated from the police academy several months earlier and was under the supervision of Williams, his field training officer.

> When the patrol car stopped, Robair turned to go the opposite way. Moore got out of the patrol car, grabbed Robair, threw him to the ground, got on top of him and tried to handcuff him. Williams also got out of the car, and helped Moore handcuff Robair.

> Although the testimony was not entirely consistent, four neighborhood witnesses testified that while Robair was on the ground with Moore on top of him, Williams kicked Robair in the torso. Robair screamed. Williams then struck Robair across the legs and torso with his metal police baton while Moore held Robair. Robair did not resist and Moore did nothing to stop Williams. Williams and Moore then put Robair into the back of the patrol car and drove away.

> The officers drove Robair to the emergency room at Charity Hospital, arriving at around 9:20 a.m. They brought Robair, who was unresponsive, in by wheelchair.

---

[4] *Id.*

[5] *See United States v. Matthew Dean Moore and Melvin Williams,* 708 F.3d 639, 643-44  (5th Cir.  2013). The foregoing facts are not mere allegations by plaintiffs.  They are conclusively established facts  in this civil litigation that follows from and is based on the now concluded criminal case against Officers Moore and Williams.  In a civil action that follows from a criminal conviction, collateral estoppel precludes relitigation of any issues decided in the earlier proceeding.  *Emich Motors Corp. v. General Motors Corp.,* 340 U.S. 558, 569 (1951)("In the case of a criminal conviction based on a jury verdict of guilty, issues which were essential to the verdict must be regarded as having been determined by the judgment"); *Wolfson v. Baker,* 623 F.2d 1074, 1078 (5th Cir 1980), *cert. denied,* 450 U.S. 966 (1981).

Melvin Williams was convicted under 18 U.S.C. § 242, which is considered the criminal counterpart to § 1983.  *Cito v. Bridgewater Township Police Dept.,* 892 F.2d 23, 26 n. 3 (3rd Cir. 1989); *United States v. Stokes,* 506 F.2d 771, 776 (5th Cir. 1975).  A criminal conviction for acts identical to those alleged in a subsequent civil action will conclusively establish the issue adjudged against the guilty defendant. *United States v. Thomas,* 709 F.2d 968, 972 (5th Cir. 1983).  Collateral estoppel also applies to a plaintiff's supplemental state law claims where the elements necessary to prove these claims were decided in the criminal action.  *Vela v. Alvarez,* 507 F.Supp. 887 (S.D.Tex. 1981).

Williams told the charge nurse that Robair had been found lying on the ground under a bridge and had a history of drug use. Williams and Moore did not identify themselves or provide their badge numbers, which was unusual, and left after about ten minutes. They returned about 15 minutes later. Williams told the nurse that they had found some crack cocaine in the back of the police car. Neither officer mentioned that Robair's condition was a result of a trauma.

Based on this information, the medical staff at the hospital treated Robair for drug overdose. There was no visible outward sign of trauma and no evidence of blood. Tests revealed that Robair did have cocaine in this system, track marks on his arm and a high heart rate—all of which are consistent with a response to cocaine. X-rays showed that Robair had one broken rib. While in the emergency room, Robair also suffered a heart attack requiring chest compressions and other means to resuscitate him.

Around 10:55 a.m., doctors drew fluid from Robair's abdomen and determined that he had internal bleeding, leading doctors to suspect trauma. He was immediately taken to the operating room, but it was too late to save him. Robair's spleen had ruptured, causing massive internal bleeding. Experts testified that if the staff had known that Robair was a victim of blunt force trauma, he would have been treated differently and would likely have survived.

Two autopsies were performed on Robair, one by Dr. McGarry of the Orleans Parish Coroner's Office and one by plaintiff's expert Dr. Sperry, chief medical examiner for the State of Georgia, which was conducted post-embalming. Both identified the cause of death as internal bleeding due to a ruptured spleen. Dr. Sperry further concluded that Robair sustained massive force on the left side of the chest that broke four ribs and crushed his spleen. Dr. Sperry also found other evidence to indicate that Robair was the victim of a beating and that the injuries to his ribs and spleen were consistent with a kick. Dr. Sperry concluded that the death was a homicide.

On the day of Robair's death, Officers Williams and Moore filled out an incident report regarding their encounter with Robair. The report does not mention any use of force, rather describing the encounter as a medical incident. The officer's respective roles in preparing the report were disputed.

When interviewed by an FBI investigator, Moore stated that Robair was running toward their patrol car as they drove down Dumaine Street. He also stated that when they stopped the car, Robair ran into the street, made some evasive moves and then fell to the ground when his shoe fell off. Moore stated that he jumped onto Robair to attempt to handcuff him. Williams assisted getting Robair handcuffed. They then placed him in the car and transported him to the hospital. Moore denied that he or Williams ever kicked or struck Robair. Moore and Williams testified similarly at trial.

After a jury trial, Moore and Williams were convicted on all counts. The jury also found that Williams' violation of Section 242 (the civil rights charge) "resulted in the death of Raymond Robair."[6]

Plaintiffs Judonna Mitchell and LaShonda Saulsberry, Robair's adult children, filed this suit on July 30, 2006 against the City, former officers Williams and Moore, former NOPD Superintendent Compass, Capt. Cannatella, and two unnamed NOPD supervisors (Roe and Doe). Doc. 1. The district court entered a stay in this case in 2007 pending resolution of the FBI's open criminal investigation and the criminal prosecution that followed. The civil case was reopened in April 2015, and is set for trial on May 23, 2016.

Plaintiffs filed a First Amended Complaint on July 30, 2015. Doc. 36. The First Amended Complaint includes various federal and state law claims, including 42 U.S.C. § 1983 claims under the First, Fourth, Ninth and Fourteenth Amendments for violation of Raymond Robair's rights to privacy, liberty, locomotion, travel, and to be left alone; free speech and association, due process, equal protection, privileges and immunities, and his right to be free from unreasonable search and seizure and from excessive force. All defendants have answered the First Amended Complaint. Doc. 40, 48, 50, 51. The City and Compass have moved for dismissal of certain claims under Rule 12(c) or, alternatively, for summary judgment under Rule 56.

## I.      THE COURT SHOULD DENY MOVERS' RULE 12(c) MOTION.

### 1.  Standard for Dismissal Under Rule 12(c)

The standard for dismissal on a Rule 12(c) motion for judgment on the pleadings is the same as for dismissal for failure to state a claim under Rule 12(b)(6). *Phillips v. City of Dallas,* 781 F.3d 772, 775-76 (5th Cir. 2015); *Gentilello v. Rege,* 627 F.3d 540, 543-44 (2010). To survive a motion to dismiss under Rule 12(b)(6), a complaint need only allege enough facts which, if true,

---

[6] *United States v. Matthew Dean Moore and Melvin Williams,* 708 F.3d 639, 643-44 (5th Cir. 2013) (footnote omitted).

"state a claim to relief that is *plausible* on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, *quoting Bell Atlantic Corp. v Twombly,* 550 U.S. 544, 570 (2007) (emphasis added). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678. *See also Owens v Baltimore City State's Attorneys Office*, 767 F3d 379, 396 (4th Cir. 2014), *cert. denied,* 135 U.S. 1893 (2015)("The plaintiff's complaint will not be dismissed as long as he provides sufficient detail about his claim to show that he has a more-than-conceivable chance of success on the merits," *citing Twombly,* 550 U.S. at 570). "This standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re Scrap Material Co., LLC,* 541 F.3d 584, 587 (5th Cir. 2008), *cert. denied,* 556 U.S. 1152 (2009), *quoting Twombly,* 550 U.S. at 556.

In ruling on a Rule 12(b)(6) motion, a court "must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff." *Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228, 232-33 (5th Cir. 2009); *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir 1996).

### 2. The First Amended Complaint States a Claim Upon Which Relief Can be Granted Against the City, Compass, and Cannatella.

*Plaintiffs' well-pleaded claims against the City*

The First Amended Complaint sets out extensive, detailed allegations against the City of New Orleans pursuant to 42 U.S.C. §1983 and *Monell v. Dept. of Social Services of City of New York,* 436 U.S. 658 (1978), regarding the City's policies and practices which caused the violation of rights and injuries asserted in the complaint. *See* para. 34.

In paragraph 5 of the First Amended Complaint, plaintiffs state that defendant former NOPD Superintendent Compass "was responsible for the policies, practices, customs and procedures of the NOPD, as well as the hiring, training, supervision, discipline and control of police personnel under his command" and that he "was a final policymaker for the City of New Orleans relating to police practices, policies, customs and procedures." Further, plaintiffs allege in the first sentence of para. 34 that the City's "policies, customs and practices exhibiting deliberate indifference to the constitutional rights of individuals in the City of New Orleans [ ] caused the violation of plaintiffs' rights and those of Raymond Robair, deceased, as described herein." Clearly, plaintiffs' allegations regarding the City's *Monell* liability are more than sufficient to withstand dismissal under Rule 12(c).

### *Plaintiffs' well-pleaded claims against Compass*

Movers request dismissal of plaintiffs' 42 U.S.C. § 1983 claim against Compass. Plaintiffs allege that Compass was "the Superintendent of Police for the City of New Orleans at all pertinent times," and was "responsible for the policies, practices, customs and procedures of the NOPD, as well as the hiring, training, supervision, discipline and control of police personnel under his command, which includes the NOPD defendants named [ ] herein . . . . He was a final policymaker for the City of New Orleans relating to police practices, policies, customs and procedures." Doc. 36, ¶ 5. In addition, there are specific claims against defendant Compass set forth in the First Amended Complaint in paragraphs 22, 23, 24, 25, 26, 27, 28, and 40, among other sections. These detailed allegations comfortably satisfy *Twombly/Iqbal*'s mandate of pleading a claim that is plausible on its face and are clearly distinguishable from the "formulaic recitation of the elements of a cause of action" proscribed by *Twombly,* 550 U.S. at 555.

Defendant Compass alleges three specific deficiencies in plaintiffs' § 1983 claims against him. As shown below, the pleading does not suffer from any of these three alleged deficiencies.

### (i)     Compass' personal involvement in the alleged constitutional deprivations

Compass first argues that the pleading fails "to assert any allegations of personal involvement of Compass in Robair's death."[9] Memo. at 14. Plaintiffs' allegations of Compass's specific involvement in constitutional violations include the following:

- failing to insist upon accountability and discipline of officers under his command (First Amended Complaint, ¶ 23)

- communicating, directly or indirectly, to NOPD commanders, supervisors and police officers, particularly those in task force or "jump out" or street units, that complaints by civilians of mistreatment by officers would not be seriously investigated ( *Id.*)

- communicating, directly or indirectly, to NOPD commanders, supervisors and police officers, particularly those in task force or "jump out" or street units, that officers would be largely free of consequence and accountability for violation of citizens' rights and could conduct themselves accordingly (*Id.*)

- taking actions, directly and indirectly, to excuse and condone misconduct by his subordinates, and failing to exercise control or discipline over police officers, their supervisors or his command staff (*Id.* at ¶ 26)

- failing to adequately or reasonably investigate the circumstances of Mr. Robair's injuries and death and failing to take appropriate disciplinary or remedial action or to refer this matter to the District Attorney's office of Orleans Parish for criminal investigation.    (*Id.* at ¶ 27).

---

[9] Plaintiffs have never claimed that Compass was present or that he personally participated in the beating death of Raymond Robair. Plaintiffs have alleged that Compass was personally involved, in his role as supervisor and final policymaker, in communicating to NOPD officers and supervisors that he encouraged aggressive, illegal street patrol activities by officers and would protect and insulate them from accountability for their illegal acts. His involvement made it foreseeable that these actions would lead to serious violations of constitutional rights and injuries, including death.

### (ii) Allegations of specific policies or customs that Compass was responsible for promulgating or enforcing

Compass also argues that the First Amended Complaint fails "to allege with specificity what specific policy, practice, custom or procedure Compass is responsible for promulgating or enforcing." Memo at 14. In fact, the pleading describes the following customs or policies that Compass, as superintendent of the NOPD, was responsible for promulgating or enforcing:

- A custom or policy, whereby NOPD officers, including the defendant officers, "interfered, stopped, intimidated and harassed civilians, in particular African Americans or those associated with African Americans or in predominantly African American neighborhoods, who were engaging in lawful and protected activities such as walking, standing, driving and/or gathering in public places and streets of the City of New Orleans, sitting on front porches or stoops where they were lawfully permitted to be, and participating and engaging in other acts of protected speech, association, locomotion and travel such as second lines, Mardi Gras Indians' gatherings, mourning traditions, family gatherings and other such activities (First Amended Complaint, ¶ 24)

- Compass set the tone and direction for these incidents of police harassment and interference with these protected rights by approving, ratifying and condoning these actions by NOPD officers and by communicating, directly and indirectly, to police officers, supervisors and commanders that he would see to it that they would be protected from discipline or accountability if they were charged or accused of misconduct towards residents of the community while carrying out this unlawful harassment and interference (*Id.*, ¶ 25)

### (iii) Allegations that these alleged policies promulgated by Compass caused the constitutional deprivation of Raymond Robair's rights

Compass further argues that the First Amended Complaint fails "to assert that these alleged policies or customs were the cause of the alleged constitutional deprivation of Robair's rights." Memo. at 14. This is not the case. The pleading states that "actions of the defendants as described herein [ ] were the proximate cause of the damages suffered by plaintiffs and Raymond Robair." First Amended Complaint, ¶ 40. The broad language in this statement (*e.g.*, "the defendants") clearly encompasses the actions and inactions of Compass, and the reference to "damages suffered

9

by plaintiffs and Raymond Robair" clearly include the consequences of each of the alleged constitutional violations by Compass.

*Plaintiffs' well-pleaded claims against Cannatella*

Movers request dismissal of plaintiffs' § 1983 claim against Capt. Cannatella. Cannatella was the NOPD captain in charge of the 6th District, NOPD, which was the home district for Melvin Williams. Specific allegations against Capt. Cannatella are contained in paragraphs 16 and 18 in the First Amended Complaint. Plaintiffs also alleged in para. 32 that Compass, Sgt. Doe, Lt. Roe and Capt. Cannatella "had knowledge of the wrongs done and conspired to be done as described herein, had the power to prevent or aid in the prevention of same, yet failed or refused to do so in violation of 42 USC 1983." It is submitted that plaintiffs have provided sufficient detail about their claims to show that they have "a more-than-conceivable chance of success on the merits," should those claims be taken to trial. *Twombly,* 550 U.S. at 570.

## II. ALTERNATIVELY, IF THE COURT GRANTS DISMISSAL OF ANY CLAIMS UNDER RULE 12(c), THE COURT SHOULD ALLOW PLAINTIFFS TO AMEND THEIR PLEADING TO RESTATE THOSE CLAIMS.

If the Court determines that any of the claims challenged by movers should be dismissed, plaintiffs respectfully request that theybe allowed to amend their pleading to restate such claim(s). District courts "often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 329 (5th Cir.2002); *see Briggs v. Phebus,* 12-2145, 13-5335, 13-5342, 2013 WL 6835992 (E.D. La. Dec. 23, 2013)(granting leave to amend following partial grant of motion to dismiss). "Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification such as "undue delay, bad faith

or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." is considered an abuse of discretion." *United States ex rel. Adrian v. Regents of the Univ. of Cal.,* 363 F.3d 398, 403 (5th Cir.2004)(citations omitted); *Meek v. Gold Coast Skydivers, Inc.,* 2016 WL 81812 (Jan. 7, 2016); *Barnett v. Perfect Search Corp.,* 2014 WL 6805529 (N.D. Tex. Dec. 3, 2014); *Klein v. Federal Ins. Co.,* 2014 WL 4476556 * 9 (N.D.Tex. Sept. 11, 2014); *Bond Street Ltd., LLC v. Liess,* 2014 WL 1287620 (E.D. Tex. March 31, 2014); *Woodard v. Sears, Roebuck, and Co.,* 2013 WL 5335331 (S.D. Miss. Sept. 23, 2013); *Quantlab Technologies Ltd. (BVI) v. Godlevsky,* 719 F.Supp.2d 766 (S.D.Tex. 2010).

In the event that the Court finds that plaintiffs have not properly stated each of the claims challenged by movers, it is requested that the Court allow plaintiffs to amend their pleading to properly state those claims.

### III. PLAINTIFFS REQUEST ADDITIONAL TIME UNDER RULE 56(d) TO CONDUCT DEPOSITIONS.

In addition to filing a Motion to Dismiss pursuant to Rule 12 (c), defendants also style their motion as, in the alternative, a Motion for Summary Judgment. This despite the fact that depositions have not yet taken place in this matter and pre-deposition document discovery is still proceeding.[10] Rule 56(d)(2) authorizes a district court to allow a non-moving party time to take discovery if that party shows that it cannot present facts essential to justify its opposition. Rule

---

[10] Plaintiffs have filed, with the consent of all defendants except Cannatella, Jr., a Motion for Continuance of Trial Date and Pre-Trial Deadlines (Doc.73), which explains some of the difficulties and delays the parties have experienced in preparing this case for trial and conducting pre-trial discovery. *See also* Declaration of Maureen Blackburn Jennings, attached to this opposition. To date, no depositions have been taken by any parties to this litigation, though there were depositions scheduled which had to be postponed.

56(d) motions are "broadly favored and should be liberally granted." *McKay v. Novartis Pharmaceutical Corp.,* 751 F.3d 694, 700 (5th Cir. 2014) (*quoting Raby v. Livingston,* 600 F.3d 552, 561 (5th Cir.2010)). A Rule 56(d) movant "must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *Id.* (*quoting C.B. Trucking, Inc. v. Waste Mgmt. Inc.,* 137 F.3d 41, 44 (1st Cir.1998)). If the requesting party "has not diligently pursued discovery, however, she is not entitled to relief" under Rule 56(d). *Beattie v. Madison Cnty. Sch. Dist.,* 254 F.3d 595, 606 (5th Cir. 2001). That is not the case here.

A party seeking additional discovery in order to oppose a motion for summary judgment must demonstrate both "why additional discovery is necessary" and "how additional discovery will create a genuine issue of material fact." *234 Harbor Circle, LLC v. JP & D Digital Satellite Sys.,* 2011 U.S. Dist. LEXIS 128137 (E.D.La. Nov. 4, 2011) (Barbier, J.)(*quoting Canady v. Bossier Parish School Bd.,* 240 F.3d 437,445 (5th Cir. 2001). In the *234 Harbor Circle* case, the district court found that the non-movants demonstrated that additional discovery was necessary, and ordered that mover could reassert its summary judgment motion after providing defendants "adequate discovery to allow them to oppose such a motion." *See also Who Dat Vat Chat, LLC v. Who Dat, Inc.,* 2012 U.S. Dist. LEXIS 79677 (E.D.La. June 8, 2012) (Barbier, J.).[11]

---

[11] The Court in *Who Dat* found that denial of the pending motion for summary judgment was appropriate because there was "substantial doubt as to whether all the facts pertinent to use of the Who Dat marks from 1983 to the present have been sufficiently developed." *See Marcus v. St. Paul Fire and Marine Ins. Co.,* 651 F.2d 379, 382 (5th Cir. 1981) (noting that motion for summary judgment should be denied for policy reasons, and that "the sound exercise of judicial discretion dictates that the motion should be denied to give the parties an opportunity to fully develop the case."); *National Screen Serv. Corp. v. Poster Exchange, Inc.,* 305 F.2d 647, 651 (5th Cir. 1962) ("The moving party has the burden of positively and clearly demonstrating that there is no genuine issue of fact and any doubt as to the existence of such an issue is resolved against him."); *Veillon v. Exploration Servs .. Inc.,* 876 F.2d 1197, 1200 (5th Cir. 1989) ("A district judge has the discretion to deny a Rule 56 motion even if the movant otherwise successfully carries its burden of proof if the judge has doubt as [ 42] to the wisdom of terminating the case before a full trial.").

The circumstances of this case, as verified by the attached declaration of Maureen Blackburn Jennings, co-counsel for plaintiffs, warrant an allowance of a reasonable period of additional time for plaintiffs to conduct limited discovery on the issues of the City's policies and practices related to the hiring, training, supervision, discipline and investigation of its police officers and the policies and practices at issue in this lawsuit relating to the aggressive pro-active street patrols in which defendants Williams and Moore were engaged. This limited discovery would include the Rule 30(b)(6) deposition of the City on these topics, as well as the deposition of defendant Compass and other NOPD officials with knowledge of the events alleged in the complaint. Plaintiffs need this specific discovery in order to respond to the pending summary judgment motion on their *Monell* and supervisory claims. Plaintiffs expect that the testimony derived from these depositions will create genuine issues of material fact as to these claims.

IV.   **ALTERNATIVELY, IF THE COURT DOES NOT ALLOW PLAINTIFFS ADDITIONAL TIME UNDER RULE 56(d), THE COURT SHOULD DENY MOVERS' RULE 56 MOTION.**

1.   **Movers have submitted unauthenticated and inadmissible exhibits in support of their motion.**

In support of their request for summary judgment, movers attached one affidavit (Ex. 1) and six other exhibits. In the affidavit, NOPD Sgt. Daniel Wharton, Jr. describes two investigations he conducted (in 2005 and 2011) into the involvement of Williams and Moore in Robair's death. Five documents (marked as *in globo* Ex. A, B, C, D, and E) are attached to Ex. 1, not one of which is properly authenticated or admissible. As to Ex. A, Wharton states that he "documented [his]

---

Because summary judgment can be supported or defeated by citing a developed record, courts must give the parties "adequate time for discovery." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

findings in a report dated July 2, 2008." Wharton Affid. at ¶ 7. As to Ex. D, Wharton states that

he "authored a second report." Wharton Affid. at ¶ 13. The affidavit lacks proper authentication

from a records custodian for either report to be admissible as a business record, and the two reports

are not otherwise admissible. Ex. C, a 2008 letter from the Orleans Parish District Attorney to

NOPD Superintendent Warren C. Riley is inadmissible hearsay, as is Ex. B, a 2005 Autopsy

Protocol from the Orleans Parish Coroner's Office. Sgt. Wharton's only reference to Ex. E (2011

letters of suspension addressed to Williams and Moore) is that he "drafted the Notifications of

Williams' and Moore's Suspension that was subsequently signed by Chief Arlinda Westbrook."

Wharton Affid. at ¶ 14. These two letters are not admissible as business records, and Wharton has

failed to state that he has personal knowledge that Chief Westbrook signed them. Ex. 2 – 6 are

likewise inadmissible. They are not even mentioned, much less authenticated, by Sgt. Wharton.

With the exception of limited statements in Sgt. Wharton's affidavit, movers have no competent

summary judgment evidence to support their request for Rule 56 relief. These documents are not

properly before the Court for consideration of defendants' request for summary judgment. In

addition, para. 16 of Sgt. Wharton's affidavit states that Ex. A – E "reflect the results of" his

investigation, based on his "knowledge, information and belief at the time of drafting." This

violates the plain requirement of Rule 56(c)(4) that that an affidavit "used to support or oppose a

motion [for summary judgment] must be made on personal knowledge."

**2.** **Movers have violated Rule 56(c) by failing to support their assertion
of uncontested material facts with specific citations to particular parts
of the record.**

Rule 56(c) (1)(A) requires that a party asserting that a fact cannot be genuinely disputed

must support the assertion by "citing to particular parts of materials in the record." *See Clapper

v. Amnesty Int'l USA,* 133 S.Ct. 1138, 1148-49 (2013); *Guidotti v. Legal Helpers Debt Resolution,*

*L.L.C.,* 716 F.3d 764, 772 (3ʳᵈ Cir. 2013).   Movers' failure to satisfy this requirement is evident

from their  Statement of Uncontested Material Facts, in which a significant number of their 22

allegedly uncontested facts lack specific citations.  In some cases, movers provide only a general

citation to the transcript of the criminal trial, without a specific page citation.  The transcript of

that trial consists of more than 1,000 pages.[12]  "Judges are not like pigs, hunting for truffles buried

in briefs." *De la O v. Housing Authority of the City of El Paso, Texas,* 417 F.3d 495, 501 (5ᵗʰ

Cir.2005) (quoting *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991).

V. **DEFENDANTS HAVE NOT MET THEIR BURDEN OF SHOWING THAT THEY ARE ENTITLED TO A RULE 12(c) DISMISSAL OR TO SUMMARY JUDGMENT ON THE ISSUE OF QUALIFIED IMMUNITY UNDER FEDERAL LAW OR TO DISCRETIONARY IMMUNITY UNDER STATE LAW.**

1. **Defendants Compass and Cannatella are not entitled to qualified immunity under federal law.**

Defendants Compass and  Cannatella argue that they are entitled to qualified immunity on

plaintiffs' § 1983 claims. "In evaluating a claim of qualified immunity, the court considers (1)

whether the plaintiff has alleged a violation of a constitutional right, and (2) whether that right was

clearly established at the time of the alleged misconduct. *Upchurch v City of Moss Point*,  2011

WL 5082224 (S.D.Miss. Oct. 26, 2011) (citations omitted).  It goes without saying that the rights

asserted by plaintiffs  were clearly established on July 30, 2005.   These constitutional rights

include the right to walk on public streets and sidewalks protected by  the First  Amendment to the

U.S. Constitution, *Hague v CIO,* 307 U.S. 496 (1939), *Shuttlesworth v City of Birmingham,* 394

U.S. 147 (1969),  and  the right to be free from use of excessive force and unlawful search and

seizure under the Fourth Amendment, applicable to the states through the  Fourteenth Amendment.

---

[12] *See* Plaintiffs' Response to Defendants' Statement of Uncontested Material Facts Pursuant to Fed. R. Civ. P. 56(c)  and Local Rule 56.2.

*Graham v Connor*, 590 U.S. 386 (1989). There is no question that plaintiffs have clearly stated, with particularity, the facts which underlie these allegations, as well as the acts and omissions of the defendants involved which caused the violation of these clearly established rights. Any reasonable officer…and any reasonable supervisor… would have known that these acts and omissions would constitute violations of clearly established rights. Indeed, defendant police officer Williams has been criminally convicted of violation of Raymond Robair's civil rights by use of excessive force resulting in his death. *United States of America vs. Williams, supra.*

The liability of supervisory officers under §1983 is not dependent on whether they were personally present at the scene. "… [T]o be liable under section 1983, a supervisory official must be personally involved in the act causing the alleged constitutional deprivation *OR* must have implemented a policy so deficient that the policy itself acts as a deprivation of constitutional rights." *Warner v City of New Orleans,* No. 03-0175, *1, 2004 WL 877383 (E.D.La. April 21, 2004) (emphasis added). In this instance, plaintiffs do not claim that the supervisory defendants were present at the scene when Raymond Robair was beaten to death. Rather, the allegations regarding supervisory liability revolve around the failure to properly train and supervise, as well as a policy and practice encouraged and condoned by then Chief Compass to promote aggressive street patrols or "jump-out" units where officers would essentially be relieved of the responsibility to comply with constitutional provisions and would be protected from consequences of their illegal and excessive actions.  See First Amended Complaint, ¶¶ 15–19, 22–26. Messaging by a police superintendent, in this instance, defendant Chief Compass, to supervisors, including  Cannatella, Doe and Roe,  and through them to officers Williams and Moore, who are engaged in aggressive street patrols or "jump-out" units, that the officers would not be held accountable to constitutional standards in conducting these patrols, is exactly the kind of acts and omissions for which

supervisory liability is intended.[1] Plaintiffs' further alleged that the actions of the defendants, including the supervisory defendants, were the proximate cause of Robair's injuries and death, Doc. 36, ¶ 40, and that the actions were done with deliberate indifference. *Id.,* ¶ 35.

It is submitted that plaintiffs' allegations are more than sufficient to state a claim against the City and the supervisory defendants for these constitutional violations and that the supervisory defendants are not entitled to qualified immunity. It is further submitted that discovery on these issues, as well as the *Monell* allegations against the City, will support these assertions. Plaintiffs also submit that discovery in preparation for trial in this matter should not be limited to "immunity-related discovery" but should proceed through the "normal litigation track" as the most efficient way to proceed. *King v Lawrence County Bd of Educ.,* 2013 WL 319286 (S.D.Miss. Jan. 28, 2013). Should defendants wish to re-file a motion for summary judgment at a later date, after discovery has been completed, they would obviously be entitled to do so. Should the Court determine that more specificity of pleading is required, plaintiffs respectfully request sufficient time in which to amend their complaint and proceed with discovery.

### 2. Defendants Compass and Capt. Cannatella are not entitled to Discretionary immunity under state law.

In support of their argument that Compass and Capt. Cannatella are entitled to discretionary immunity under state law, movers cite only Subsection B. of La. R.S. 9:2798.1, omitting Subsection C, which states as follows:

C. The provisions of Subsection B of this Section are *not* applicable:

---

[1] The Chief of Police of the NOPD is a final policymaker for the City relative to policies and practices of the police department relating to the City's liability under *Monell. Albright v City of New Orleans,* 2001 WL 725354 (E.D.La. June 26, 2001); *Bean v Hunt,* 2013 WL 5890573 (E.D.La. Nov. 1, 2013); *Beckett v Serpas,* 2013 WL 2921639 (E.D.La. 6/12/13); *Article* IV, Chapter 5, Section 4-501 of the City of New Orleans Home Rule Charter.

(1) To acts or omissions which are not reasonably related to the *legitimate* governmental objective for which the policymaking or discretionary power exists; or

(2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless or flagrant misconduct. (emphases added)

In their First Amended Complaint, plaintiffs allege that the supervisory defendants Compass, Doe, Roe and Cannatella, Sr. (hereafter "NOPD supervisors"), knowingly condoned and authorized the suspension of the protections and guarantees of the First, Fourth, Ninth, and Fourteenth Amendments rights of Raymond Robair and like-situated African American civilians in the City of New Orleans to congregate, associate, to be left alone, to travel, to privacy, to liberty, to locomotion, to due process and equal protection, and to be free from unreasonable search and seizure and from the unreasonable and excessive use of force. Doc. 36, ¶¶ 30-32. The complaint also includes related allegations of violations of Louisiana constitutional and statutory law. Doc. 36, ¶¶ 36-38.

The acts and omissions by these defendants took the form, among others, of sanctioning and permitting unfit, untrained and unsupervised police officers, *i.e.*, defendants Williams and Moore, to essentially patrol the city streets at will, without oversight, restraint or accountability. Doc. 36, ¶¶ 17. Plaintiffs alleged that defendants Cannatella, Doe, and Roe knew that Williams and Moore were engaged in unlawful and unconstitutional behavior but nevertheless permitted it to persist. Doc. 36, ¶¶ 18-19. It is further alleged that defendant Compass made it clear that officers engaged in task force or "jump out" units, such as Williams and Moore, who were engaged in unlawful, *illegitimate* behavior would be protected from citizen complaints and accountability for their misconduct. Doc. 36, ¶¶ 22-26.

In invoking state discretionary immunity, the defendants have to satisfy a two-step test as set forth by the U.S. Supreme Court in *Berkovitz by Berkovitz v. United States* 486 U.S. 531 (1988). The first step is to establish that the action was in fact discretionary, *i.e.,* "the product of judgment or choice." *Berkovitz*, 486 U.S. at 536. The second step is to determine "whether that judgment is of the kind that the discretionary function exception was designed to shield". *Berkovitz*, at 536. The discretionary immunity statute protects only governmental action based upon considerations of public policy. *Id.* In short, if the discretionary act was grounded in social, economic, or political policy, then the discretionary function exception immunizes the public entity (or employee) from suit. *Id.; Randle v Tregre*, 15-395, 2015 WL 7777981 * 10 (E.D.La. Dec. 2, 2015), *appeal pending,* No. 15-31078 (5th Cir.); *Lockett v. New Orleans City,* 639 F.Supp.2d 710, 745 (E.D.La. 2009), *aff'd,* 607 F.3d 992 (5th Cir.), *cert. denied,* 562 U.S. 1003 (2010). The statute does not provide immunity for negligent conduct "at the operational level". *Randle, supra; Sahota v Cobb*. 14-2722, 2015 WL 6835480 (W.D.La. Nov 6, 2015).

The burden is on the defendants to demonstrate that "the challenged action is grounded in social, economic or political policy". *Kniepp v City of Shreveport*, 609 So. 2d 1163, 1166 (2nd Cir 1992), *writ denied,* 613 So.2d 976 (La. 1993); *Randle v Tregre, infra.* Defendants have failed to identify any such policies, legitimate or otherwise, in their motion. As in *Pea v City of Pontchatoula,* No. 13-542, 2014 WL 1050783 *4 (E.D.La. March 17, 2014), "defendants seem to believe that an exercise in discretion ipso facto immunizes them from all liability flowing from that decision. This position is contrary to Louisiana law." The failure of defendants to articulate any policy considerations which underlie any discretionary decisions for which immunity is sought means that defendants' motion must fail and "... the suit may go forward." *Commerce and Industry Ins. Co. v. Grinnel Corp.,* 280 F. 3d 566, 572 (5th Cir. 2002).

Indeed, plaintiffs submit that such a showing cannot be made. R.S. 9:2798.1(C)(1) requires that the policy at issue have a *legitimate* governmental objective. There can be no *legitimate* state governmental objective for policies or practices which authorize or condone the suspension or suppression of citizens' federal or state constitutional or statutory rights. There is no discretionary right of police supervisors to undermine or abrogate the U.S. and Louisiana constitutional and civil rights to which citizens are entitled.[13] Such unlawful, i.e., *illegitimate*, conduct is not protected under La.R.S. 9:2798.1 (C)(1).[14]

"If there is no room for an official to exercise a *policy* judgment, the discretionary function exception does not bar a claim that an act was negligent. When the government acts negligently *for reasons unrelated to public policy considerations*, it is liable to those it injures." *Kniepp v. City of Shreveport,* 609 So. 2d 1163, 1166 (La. App. 2nd Cir. 1992), *writ denied,* 613 So.2d 976 (1993) (citations omitted) (first emphasis in original, second emphasis added*);Gregor v Argenot Great*

---

[13] It is axiomatic that public entities/individuals do not have the discretion to violate constitutional or statutory rights. "[C]ourts have read the Supreme Court's discretionary function cases as denying protection to actions that are unauthorized because they are unconstitutional, proscribed by statute, or exceed the scope of an official's authority." *Thames Shipyard and Repair Co. v. U.S.,* 350 F. 3d 247,254 (1st Cir. 2003) (citations omitted). "It is, of course, a tautology that a federal official cannot have discretion to behave unconstitutionally or outside the scope of his delegated authority." *Myers & Myers, Inc. v. U.S. Postal Service,* 527 F2d 1252, 1261 (2nd Cir 1975). See also *Castro v. U.S.,* 608 F. 3d 266, 269 (5th Cir. 2010), *cert. denied,* 562 U.S. 1168 (2011) (Dennis, J., concurring in the judgment in part and dissenting in part).

[14] "[I[f the employee's conduct cannot *appropriately* be the product of judgment or choice, then there is no discretion in the conduct for the discretionary function exception to protect....Moreover, assuming the challenged conduct involves an element of judgment, a court must determine *whether that judgment is of the kind that the discretionary function exception was designed to shield*....The exception, properly construed, therefore protects only governmental actions and decisions based on considerations of public policy...In sum, the discretionary function exception insulates the Government from liability if the action challenged in the case involves the *permissible* exercise of policy judgment." *Berkovitz by Berkovitz v U.S.* 486 U.S. 532, 536-537 (1988) (emphases added). "If the employee had no discretion or choice as to *appropriate* conduct, there is no immunity." *Hardy v Bowie* 744 So2d 606 , 613. (La. 1999). (emphasis added).

*Cent. Ins. Co.*, 851 So2d 959, 968 (La. 2003); *McIntosh v McElveen*, 893 So2d 986, 994 (La.App. 3rd Cir.) *writ denied,* 901 So.2d 1069 (La. 2005).

In addition, acts or omissions which are "criminal, fraudulent, malicious, intentional, wilful, outrageous, reckless or flagrant misconduct" are specifically exempted under La.R.S.9:2798.1(C)(2). The complaint in this case alleges that the defendants "acted maliciously, willfully, wantonly, and in reckless disregard of plaintiffs' rights and those of Mr. Robair." Doc. 36, ¶ 35. Moreover, plaintiffs alleged that the NOPD supervisors condoned, aided and abetted the acts and/or omissions at issue in this lawsuit, which included criminal behavior. Doc. 36, ¶ 39.

Furthermore, discretionary immunity pursuant to La. R.S. 9:2798.1 is an affirmative defense, the application of which is "a question of fact to be determined through a trial." *Johnson v Orleans Parish School Board,* 975 So2d 698, 710 (La. App. 4th Cir.), *writ denied,* 983 So.2d 1289 (La. 2008); *Glaster v City of Mansfield* 14-627, 2015 WL 852412 (W.D. La. Feb. 26, 2015). As such, the defense must be proved by the defendant at trial by a preponderance of the evidence. *Johnson*, *supra* at 710.

It is clear that this issue is not appropriate for resolution at this stage of the proceedings. *Bouchereau v Gautreaux*, 14-805, 2015 WL 5321285, *15 (M.D.La. Sept 11, 2015). ("(E)ven if certain of the alleged acts of misconduct...are discretionary acts and decisions as claimed by the defendants, we are unable to determine through the exception of no cause of action whether the defense will apply herein. Even where discretion is involved, the court must determine whether the discretionary act is the kind which is 'grounded in social, economic or political policy,' a question of fact to be determined through a trial." (citations omitted*). See also O'Quin v Gautreaux* 14-98, 2015 WL 1478194, *12 (M.D.La. March 31, 2015), *appeal dismissed* (July 7, 2015).

Also, while defendants have styled their motion as "in the alternative, motion for summary judgment" they provide no supporting affidavits or otherwise admissible evidence, *i.e.,* no admissible facts whatsoever, in support of their argument.[15] Defendants' motion claiming state law discretionary immunity should be denied.


## VI. <u>CONCLUSION.</u>

Movers have not met their burden of showing that they are entitled to dismissal of any of plaintiffs' claims under Rule 12. Alternatively, if the Court finds that plaintiffs have not met the pleading standard under Rule 12, plaintiffs respectfully request that the Court allow them the opportunity to amend their pleading to restate those claims. Plaintiffs also request that the Court grant them a limited period of time under Rule 56(d) to conduct depositions to obtain facts essential to justify their opposition to movers' Rule 56 motion. Alternatively, if the Court does not grant plaintiffs additional time under Rule 56(d), the Court should deny movers' Rule 56 motion because they have failed to place proper evidence into the summary judgment record to support their motion, and have violated the requirements of Rule 56(c)(1)(A).

---

[15] In *Roberts v City of Shreveport*, 397 F3d 287 (5th Cir. 2005 ), the Court had the benefit of an extensive record from both trial and pre-trial depositions. In *Smith v Lafayette Parish Sheriff's Dept.*, 2003-517, 874 So2d 863, 865 (3rd Cir 4/21/04), the trial court reviewed "extensive discovery". The court in *Robertson v Staton,* 2008 WL 3412323 (W.D. La. Nov. 27, 2006), involved a *pro se* plaintiff and uncontested affidavits.

Respectfully submitted,

MARY E. HOWELL # 7030, T.A
Attorney at Law
316 S. Dorgenois Street
New Orleans, LA 70119
(504) 822-4455
maryhowell316@gmail.com

and

*/s/ Maureen Blackburn Jennings*
MAUREEN BLACKBURN JENNINGS
La. Bar #3100
Attorney at Law
3 Riverway, Suite 1800
Houston, TX 77056
(713) 209-2930
maureen@maureenjenningslaw.com

Attorneys for Plaintiffs, Judonna Mitchell and
LaShonda Saulsberry

## CERTIFICATE OF SERVICE

Undersigned counsel certifies that all counsel of record for the represented defendants will be served with a copy of this motion via the Court's CM/ECF system. In addition, undersigned counsel will serve a copy of this motion on Anthony W. Cannatella, Jr., representative of the Succession of Anthony W. Cannatella, Sr., by regular mail and by e-mail on March 15, 2016.

*/s/ Maureen Blackburn Jennings*