## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JUDONNA MITCHELL and LaSHONDA SAULSBERRY | CIVIL ACTION |
| **Plaintiffs** | NO. 06-4021 J-4 |
| | |
| CITY OF NEW ORLEANS, Former NOPD Superintendent EDDIE, | JUDGE BARBIER |
| NOPD Officers MELVIN WILLIAMS and DEAN MOORE, NOPD Sgt. J. DOE, | MAGISTRATE ROBY |
| NOPD Lt. R. ROE AND NOPD Capt. ANTHONY CANATELLA | JURY TRIAL |
| **Defendants** | |

### MEMORANDUM IN SUPPORT OF
### PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
### AGAINST DEFENDANTS MELVIN WILLIAMS AND THE CITY OF NEW ORLEANS

Plaintiffs Judonna Mitchell and LaShonda Saulsberry move for partial summary judgment against defendants Melvin Williams and the City of New Orleans.  There is no genuine dispute as to any material fact related to this motion.

### I.      PLAINTIFFS' SUMMARY JUDGMENT EVIDENCE

#### 1.   Facts Established Through Collateral Estoppel

On July 29, 2010, the United States filed an indictment against Officers Williams and Moore in the Eastern District of Louisiana.[1]  Williams was convicted under 18 U.S.C. § 242 of depriving Raymond Robair of his civil rights under color of law, and the jury  specifically found that this offense "resulted in the death of Raymond Robair."[2] (Count 1).   Williams and Moore

---

[1] Ex. 1, Indictment.  *United States v. Melvin Williams and Matthew Dean Moore,* Crim. No. 10-cr-213 (E.D.La.) (hereafter "*U.S. v Williams* (E.D.La.)")  (doc. 1).

[2] Ex. 2, Verdict Form, *U.S. v Williams* (E.D.La.)  (doc. 97-4).

were both convicted of obstructing a federal investigation under 18 U.S.C. § 2 (aiding and abetting the submission of a false incident report to NOPD) and 18 U.S.C. § 1519 (obstructing a federal investigation) (Count 2).   Moore was convicted of making a false statement (to an FBI agent) under 18 U.S.C. § 1001 (Count 3). The Fifth Circuit affirmed all convictions and sentences.[3] All direct appeals have concluded.  Neither defendant filed for post-conviction relief, and those filing deadlines have expired.[4]

In Williams' and Moore's appeal of their convictions,[5] the Fifth Circuit Court of Appeals summarized the facts in the light most favorable to the jury's verdict:

> On July 30, 2005, at approximately 9:00 a.m., Raymond Robair was on Dumaine Street in New Orleans. A patrol car driven by New Orleans Police Department (NOPD) officer Williams pulled over to the curb near Robair. Williams had been employed by the NOPD since 1994.  Officer Moore, who was in the passenger seat, was a recruit who had graduated from the police academy several months earlier and was under the supervision of Williams, his field training officer.

> When the patrol car stopped, Robair turned to go the opposite way. Moore got out of the patrol car, grabbed Robair, threw him to the ground, got on top of him and tried to handcuff him. Williams also got out of the car, and helped Moore handcuff Robair.

> Although the testimony was not entirely consistent, four neighborhood witnesses testified that while Robair was on the ground with Moore on top of him, Williams kicked Robair in the torso. Robair screamed. Williams then struck Robair across the legs and torso with his metal police baton while Moore held Robair.  Robair did not resist and Moore did nothing to stop Williams. Williams and Moore then put Robair into the back of the patrol car and drove away.

> The officers drove Robair to the emergency room at Charity Hospital, arriving at around 9:20 a.m. They brought Robair, who was unresponsive, in by wheelchair.

---

[3] *United States v. Matthew Dean Moore and Melvin Williams,* 708 F.3d 639 (5th Cir. 2013).  (hereafter "*U.S. v Moore* (5th Cir.)."   Judge Fallon sentenced  Williams to serve, concurrently, 262 months on the first count and 240 months on the second count.  He sentenced Moore to serve, concurrently, 70 months on the second count and 60 months on the third count.  *See also U.S. v. Williams et al*  (E.D.La.) (doc. 145, 146).

[4] *See* docket sheet for *U.S. v. Williams*  (E.D.La.).  *U.S. v. Williams* is a closed case.

[5] *U.S. v Moore*  (5th Cir.) (footnote omitted).

Williams told the charge nurse that Robair had been found lying on the ground under a bridge and had a history of drug use. Williams and Moore did not identify themselves or provide their badge numbers, which was unusual, and left after about ten minutes. They returned about 15 minutes later. Williams told the nurse that they had found some crack cocaine in the back of the police car. Neither officer mentioned that Robair's condition was a result of a trauma.

Based on this information, the medical staff at the hospital treated Robair for drug overdose. There was no visible outward sign of trauma and no evidence of blood. Tests revealed that Robair did have cocaine in [his] system, track marks on his arm and a high heart rate—all of which are consistent with a response to cocaine. X-rays showed that Robair had one broken rib. While in the emergency room, Robair also suffered a heart attack requiring chest compressions and other means to resuscitate him.

Around 10:55 a.m., doctors drew fluid from Robair's abdomen and determined that he had internal bleeding, leading doctors to suspect trauma. He was immediately taken to the operating room, but it was too late to save him. Robair's spleen had ruptured, causing massive internal bleeding. Experts testified that if the staff had known that Robair was a victim of blunt force trauma, he would have been treated differently and would likely have survived.

Two autopsies were performed on Robair, one by Dr. McGarry of the Orleans Parish Coroner's Office and one by plaintiff's expert Dr. Sperry, chief medical examiner for the State of Georgia, which was conducted post-embalming. Both identified the cause of death as internal bleeding due to a ruptured spleen. Dr. Sperry further concluded that Robair sustained massive force on the left side of the chest that broke four ribs and crushed his spleen. Dr. Sperry also found other evidence to indicate that Robair was the victim of a beating and that the injuries to his ribs and spleen were consistent with a kick. Dr. Sperry concluded that the death was a homicide.

On the day of Robair's death, Officers Williams and Moore filled out an incident report regarding their encounter with Robair. The report does not mention any use of force, rather describing the encounter as a medical incident. The officer's respective roles in preparing the report were disputed.

When interviewed by an FBI investigator, Moore stated that Robair was running toward their patrol car as they drove down Dumaine Street. He also stated that when they stopped the car, Robair ran into the street, made some evasive moves and then fell to the ground when his shoe fell off. Moore stated that he jumped onto Robair to attempt to handcuff him. Williams assisted getting Robair handcuffed. They then placed him in the car and transported him to the hospital. Moore denied that he or Williams ever kicked or struck Robair. Moore and Williams testified similarly at trial.

After a jury trial, Moore and Williams were convicted on all counts. The jury also found that Williams' violation of Section 242 (the civil rights charge) "resulted in the death of Raymond Robair."

### 2. Facts Admitted Under Rule 36.

In addition to the facts established through Williams' criminal trial and conviction, Williams and the City of New Orleans ("the City") have responded to plaintiffs' Requests for Admission.  Each fact set out below has been admitted under Rule 36 by the City, Williams, or both.   There is no genuine dispute as to any of these facts.

In 1994, Williams was hired by the City and began his employment with the NOPD.[6] In 2004, Moore was hired by the City and began his employment with the NOPD.[7]  In December 2004, Moore enrolled in an NOPD Training Academy ("Academy") class of recruits.[8]  In or about May 2005, Moore graduated from the Academy.[9] Following his graduation, Moore entered the NOPD's field training program.[10] On July 30, 2005, Moore was in the NOPD's field training program for graduates of the Academy.[11]  While Moore was in the NOPD's field training program, the NOPD allowed him to perform duties of a police officer while under the supervision of an

---

[6] Plaintiffs' Requests for Admission ("RFA") No. 2 to City and City's amended response to same.   Ex. 3;  Ex. 4.

[7] Plaintiffs' RFA No. 3 to City and City's amended response to same.   Ex. 3; Ex. 4.

[8] Plaintiffs' RFA No. 4 to City and City's amended response to same.   Ex. 3; Ex. 4.

[9] Plaintiffs' RFA No. 5 to City and City's amended response to same.   Ex. 3; Ex. 4.

[10] Plaintiffs' RFA No. 6 to City and City's amended response to same.   Ex. 3; Ex. 4.

[11] Plaintiffs' RFA No. 7 to City and City's amended response to same.   Ex. 3; Ex. 4.

NOPD field training officer ("FTO").[12]  An FTO is an NOPD officer who is assigned to participate in training NOPD recruits in the field, after the recruits have graduated from the Academy.[13]

On July 30, 2005, Williams and Moore were employees of the City assigned to the NOPD.[14] On that day, Williams was working as a Police Officer IV for the NOPD,[15] and Moore was working as an NOPD recruit.[16]  On July 30, 2005, Williams assisted in training Moore.[17]  On July 30, 2005, these officers' duties included conducting proactive street patrols in the NOPD's First District,[18] which included the 1500 block of Dumaine Street in New Orleans' Treme neighborhood.[19]  That morning, Williams and Moore conducted a patrol in the NOPD's First District in a marked NOPD vehicle, unit 3019.[20] Williams was driving unit 3019,[21] and Moore was a passenger.[22]

---

[12] Plaintiffs' RFA No. 8 to City and City's amended response to same. Ex. 3; Ex. 4.

[13] Plaintiffs' RFA No. 9 to City and City's amended response to same. Ex. 3; Ex. 4.

[14] Plaintiffs' RFA No. 12 and 13 to City and City's amended response to same. Ex. 3; Ex. 4; Plaintiffs' RFA No. 13 to Williams and Williams' response to same.  Ex. 5; Ex. 6.

[15] Plaintiffs' RFA No. 14 to City and City's amended response to same. Ex. 3; Ex. 4.

[16] Plaintiffs' RFA No. 15 to City and City's amended response to same. Ex. 3; Ex. 4.  Both Williams and Moore testified at the criminal trial that they were working overtime in the 1500 block of Dumaine Street on July 30, 2005. Ex. 7, testimony of Melvin Williams, *U.S. v. Williams, et al* (E.D.La.)(doc. 169), April 7, 2011 at p. 849, lines 8-9; p. 850, lines 21-25; p. 851, 7-8; Ex. 8,  testimony of Matthew Dean Moore, *U.S. v Williams, et al,* (E.D.La.), April 7, 2011 at p. 746, lines 18-24; p. 749, lines 19-21.

[17]  Plaintiffs' RFA No. 16 to City and City's amended response to same. Ex. 3; Ex. 4.

[18] Plaintiffs' RFA No. 18 and 19 to City and City's amended response to same.  Ex. 3; Ex. 4.

[19] Plaintiffs' RFA No. 20 to City and City's amended response to same. Ex. 3; Ex. 4; Plaintiffs' RFA No. 20 to Williams and Williams' response to same.   Ex. 5; Ex. 6.

[20] Plaintiffs' RFA No. 21 to City and City's amended response to same. Ex. 3; Ex. 4; Plaintiffs' RFA No. 21 to Williams and Williams' response to same.   Ex. 5; Ex. 6.

[21] Plaintiffs' RFA No. 33 to City and City's amended response to same.    Ex. 3; Ex. 4.

[22] Plaintiffs' RFA No. 34 to City and City's amended response to same.  Ex. 3; Ex. 4.

Around 9:00 a.m., in the course of their patrol, the two officers encountered Robair in the 1500 block of Dumaine.[23] Williams was performing his duties and assignment as an NOPD officer,[24] and  Moore was performing his duties and assignment as an employee of the City assigned to the NOPD when the two officers encountered Robair in the 1500 block of Dumaine.[25] Both officers were on duty during their entire encounter with Robair in the 1500 block of Dumaine.[26] On that day, both Williams and Moore were authorized by the NOPD to carry and use handcuffs in the course of their duties.[27] Each of the officers was also authorized by the NOPD to carry and use an NOPD-approved firearm,[28] and each officer was carrying such a firearm.[29] On that day, the NOPD had also authorized each officers to carry and use an approved expandable

---

[23] Plaintiffs' RFA No. 22 and City's amended response to same. Ex. 3; Ex. 4; Plaintiffs' RFA No. 22 and Williams' response to same.   Ex. 5; Ex. 6.

[24] Plaintiffs' RFA No. 23 to Williams and Williams' response to same. Ex. 5 Ex. 6.  The City objected to, but did not deny RFA No. 23.  Ex. 3; Ex. 4.

[25] Plaintiffs' RFA No. 26 to Williams and Williams' response to same.  Ex. 5; Ex. 6.  The City objected to, but did not deny RFA No. 26.  Ex. 3; Ex. 4.

[26] Plaintiffs' RFA No. 24, 27, 66, and 67 and Williams' responses to same.  Ex. 5; Ex. 6.  The City objected to, but did not deny RFA No. 24, 27, 66 and 67.  Ex. 3; Ex. 4.

[27] Plaintiffs' RFA No. 45 and 46 to City and City's amended response to same.  Ex. 3; Ex. 4; Plaintiffs' RFA No. 45 and 46 to Williams and Williams' response to same.  Ex. 5; Ex. 6.

[28] Plaintiffs' RFA No. 47 and 48 to Williams and Williams' response to same. Ex. 5; Ex. 6; Plaintiffs' RFA No. 47 and 48 to City and City's amended response to same (admitting that Williams and Moore were authorized to carry a firearm approved by the NOPD while employed by the NOPD).  Ex. 3; Ex. 4.

[29] Plaintiffs' RFA No. 49 and 50 to Williams and Williams' response to same. Ex. 5; Ex. 6. The City objected to, but did not deny RFA No. 49 and 50.  Ex. 3; Ex. 4.

baton.[30] Neither officer found any weapon on Robair's person.[31] Neither officer made a call for backup while they were in the 1500 block of Dumaine.[32]

Williams placed Robair in the back seat of NOPD unit 3019 in the 1500 block of Dumaine, and drove him to Charity Hospital.[33]  Officer Moore was a passenger in the front seat during this trip.[34] Both officers were on duty when  Williams drove Robair to Charity Hospital.[35] On July 30, 2005, from the time that Williams and Moore encountered Robair in the 1500 block of Dumaine through the time that the two officers left Charity Hospital in connection with Robair, each officer was wearing an approved NOPD uniform.[36] Raymond Robair died at Charity Hospital on July 30, 2005.[37] The cause of his death was internal bleeding due to a ruptured spleen.[38]

---

[30] Plaintiffs' RFA No.  51 and 52 to Williams and Williams' response to same.  Ex. 5; Ex. 6; Plaintiffs' RFA No. 51 and 52 to the City and City's amended response to same (admitting that the City issued batons to Williams and to Moore).  Ex. 3; Ex. 4.

[31] Plaintiffs' RFA No. 53 and 54 to City and City's amended response to same.  Ex. 3; Ex. 4; Plaintiffs' RFA No. 53 and 54 to Williams and Williams' responses to same.  Ex. 5; Ex. 6.

[32] Plaintiffs' RFA No. 64 and 65 to City and City's amended response to same.  Ex. 3; Ex. 4.  *Movers' Note:* At this point in the encounter, Robair received the injuries inflicted by Williams that led to his death at Charity Hospital more than four hours later. Although the defendants have not admitted that Williams beat Robair, resulting in his death, that fact is conclusively established  by  Williams' federal criminal civil rights conviction under 18 U.S.C. § 242, for those actions, as discussed *infra*.

[33] Plaintiffs' RFA No. 71 to City and City's amended response to same.  Ex. 3; Ex. 4; Plaintiffs' RFA No. 71 to Williams and Williams' response to same.  Ex. 5; Ex. 6.

[34] Plaintiffs' RFA No. 75 to City and City's amended response to same.  Ex. 3; Ex. 4.

[35] Plaintiffs' RFA No. 72 and 76 and Williams' response to same. Ex. 5; Ex. 6.  The City objected to, but did not deny RFA No. 72 or 76, objecting that both requests called for a "legal conclusion", and that request No. 72 also called for "speculation."  The City admitted in response to RFA No. 72 that "Melvin Williams testified he drove Robair to Charity and took him into the emergency room via a wheelchair."  Ex. 3; Ex. 4.

[36] *See* Plaintiffs' RFA No. 35 and 36 to Williams and Williams' responses to same.  Ex. 5; Ex. 6. The City objected to, but did not deny RFA No. 35 or No. 36.  Ex. 3; Ex. 4.

[37] Plaintiffs' RFA No. 98 and City's amended response to same. Ex. 3; Ex. 4.

[38] Plaintiffs' RFA No. 99 to the City and the City's amended response to same.  Ex. 3; Ex. 4.

The City paid Officer Williams for working for the NOPD on July 30, 2005.[39]

## II.     PLAINTIFFS' SUMMARY JUDGMENT EVIDENCE IS UNDISPUTED.

### 1.   The Factual Issues Essential to the Federal Criminal Conviction of Williams under 18 U.S.C. § 242 are Conclusively Established.

The doctrine of collateral estoppel "precludes relitigation of issues actually litigated and necessary to the outcome of the first action." *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 325 n. 5 (U.S. 1979).  In a civil action that follows from a criminal conviction, collateral estoppel precludes relitigation of any issues decided in the earlier proceeding.  *Emich Motors Corp. v. General Motors Corp.,* 340 U.S. 558, 569 (1951)("In the case of a criminal conviction based on a jury verdict of guilty, issues which were essential to the verdict must be regarded as having been determined by the judgment"); *Wolfson v. Baker,* 623 F.2d 1074, 1078 (5th Cir 1980), *cert. denied,* 450 U.S. 966 (1981).

Section 242 is considered the criminal counterpart to § 1983.  *United States v. Stokes,* 506 F.2d 771, 776 (5th Cir. 1975); *Cito v. Bridgewater Township Police Dept.,* 892 F.2d 23, 26 n. 3 (3rd Cir. 1989).  A criminal conviction for acts identical to those alleged in a subsequent civil action will conclusively establish the issue adjudged against the guilty defendant. *United States v. Thomas,* 709 F.2d 968, 972 (5th Cir. 1983) (affirming summary judgment in civil case based on collateral estoppel effect of prior criminal conviction).  "Because of the existence of a higher standard of proof and greater procedural protection in a criminal prosecution, a conviction is conclusive as to an issue arising against the criminal defendant in a subsequent civil action." *United States v. Thomas, supra; Bickham Lincoln-Mercury, Inc. v. United States,* 168 F.3d 790, 794 (5th Cir. 1999); *Temich v. Cossette,* No. 11-cv-958, 2015 WL 3674469 (D.Conn. June 12,

---

[39] Plaintiffs' RFA No. 29 and Williams' response to same. Ex. 5; Ex. 6.

2015) (applying, in plaintiff's subsequent § 1983 lawsuit alleging excessive force, collateral estoppel to defendant police officer's conviction under 18 U.S.C. § 242); *Pizzuto v. County of Nassau,* 239 F.Supp. 2d 301, 308 (E.D.N.Y. 2003) (applying, in subsequent § 1983 lawsuit alleging cruel and unusual punishment by defendant corrections officer, collateral estoppel to defendants' convictions and pleas under 18 U.S.C. § 242).[40]

Collateral estoppel also applies to a plaintiff's supplemental state law claims where the elements necessary to prove these claims were decided in the criminal action. *Vela v. Alvarez,* 507 F.Supp. 887 (S.D.Tex. 1981) (collateral estoppel applied to plaintiff's state law claims for assault and battery by a police officer where the officer had been convicted under 18 U.S.C. § 242 for assaulting and threatening the plaintiff). Thus, in ruling on plaintiffs' request for partial summary judgment on federal and state claims, the factual issues which were essential to Williams' conviction under 18 U.S.C. § 242 are conclusively established for purposes of this motion.

## 2. <u>Defendants' Responses to Plaintiffs' Requests for Admission are Admissible Summary Judgment Evidence.</u>

Rule 56(c) provides that Rule 36 admissions can support a fact that a party asserts cannot be genuinely disputed in the context of summary judgment. *Carney v. Internal Revenue Service,* 258 F.3d 415, 420 (5th Cir. 2001). Because Rule 36 admissions "are admissions conclusive as to

---

[40] The facts and holdings in the *Pizzuto* case are similar to this case. Several correctional officers inflicted a vicious and fatal beating on Tommy Pizzuto, who was serving the first day of a 90-day sentence on a misdemeanor conviction. The beating left him with extensive visible injuries on several parts of his body, including a lacerated spleen. Two of the officers pled guilty to violating 18 U.S.C. §§ 241 and 242 by conspiring to deprive and, in fact, depriving Pizzuto of his right to be free from cruel and unusual punishment resulting in bodily injury and death. A third correctional officer was convicted of depriving Pizzuto of his Eighth Amendment right to be free from cruel and unusual punishment, in violation of 18 U.S.C. §§ 241 and 242. In Pizzuto's family's subsequent § 1983 suit, the district court granted partial summary judgment, holding that the three officers were collaterally estopped from disputing § 1983 liability for conspiracy to violate Pizzuto's Eighth Amendment rights; the officers who participated in or observed the beating were liable for deliberate indifference to Pizzuto's serious medical needs; the three officers were liable for battery under state law; and the county was vicariously liable for the officers' state law torts.

the matters admitted, they cannot be overcome at the summary judgment stage by contradictory affidavit testimony or other evidence in the summary judgment record." *Id. (*citing *Dukes v. South Carolina Ins. Co*., 770 F.2d 545, 548-49 (5th Cir. 1985)).  Thus, defendants' responses to plaintiffs' Rule 36 Requests for Admission are admissible as part of the summary judgment record.

### 3.   The Trial Testimony of Williams and Moore is Admissible Summary Judgment Evidence.

Plaintiffs' evidence (Ex. 7 and Ex. 8) includes excerpts from the sworn testimony of Officers Williams and Moore at their criminal trial.[41]   This sworn testimony is not hearsay, and is admissible under Federal Rule of Evidence 801(d)(2)(A) as statements of an opposing party.

## III.    SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) authorizes a party to move for summary judgment on a claim or part of a claim.  District courts have discretion to order partial summary judgment on particular issues as a means to narrow and focus the issues for trial. *Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1415 (5th Cir. 1993).  Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). Once the moving party has made an initial showing that there is no dispute of material fact, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).  The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his

---

[41] The undisputed testimony included here as Ex. 7 and Ex. 8 is limited  to the fact that Officers Williams and Moore were working overtime throughout their encounter with Raymond Robair on July 30, 2005 and that the officers did not arrest Raymond Robair.

claim. *Ragas v. Tenn. Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998).   to support a party's

opposition to summary judgment." *Id.*

## IV.     PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT AGAINST WILLIAMS ON THEIR STATE LAW CLAIMS FOR WRONGFUL DEATH AND SURVIVAL.

Louisiana Civil Code Article 2315 permits the recovery of damages sustained as a result

of the "fault" of another.  The article encompasses liability based on negligence or intentional

misconduct. *See Hero Lands Co. v. Texaco, Inc*., 310 So.2d 93, 97 (La. 1975). In a suit seeking

damages resulting from an intentional tort, Louisiana law requires that the plaintiff prove all *prima*

*facie* elements of that tort.   *Landry v. Bellanger,* 851 So.2d 943, 954 (La.  2003).

Under Louisiana law, a battery is a "harmful or offensive contact with a person, resulting

from an act intended to cause the plaintiff to suffer such a contact." *Caudle v. Betts,* 512 So.2d

389, 391 (La. 1987).  "The intention need not be malicious nor need it be an intention to inflict

actual damage.  It is sufficient if the actor intends to inflict either a harmful or offensive contact

without the other's consent."   *Caudle v. Betts, id.* (citation omitted).

The "physical attack of a private citizen by a police officer absent a valid arrest constitutes

a battery."   *Deville v. Marcantel,* 567 F.3d 156, 173 n. 9 (5th Cir. 2009), *cert. denied,* 559 U.S.

1048 (2010) (quoting *Ross v. Sheriff of Lafourche Parish,* 479 So.2d 506, 510 (La. App. 1st  Cir.

1985)).  Robair was not arrested.[42]  Nor was he charged with a crime.[43]

---

[42] Moore testified unequivocally four times at the criminal trial that Robair was not arrested. Ex. 8, p. 763, line 11; p. 768, line 8; p. 772, line 5-6; and p. 780, line 20.

[43] Plaintiffs' RFA No. 61 to City and City's amended response to same. Ex. 3; Ex. 4.

Louisiana law also recognizes a claim for damages for "excessive force", *i.e.*, force used by law enforcement officers which is unreasonable or excessive. "The use of force when necessary to make an arrest is a legitimate police function. But if the officers use unreasonable or excessive force, they and their employer are liable for any injuries which result". *Kyle v City of New Orleans* 353 So.2d 969 (La. 1977) (*citations omitted)*; see also *Deville v. Marcantel, supra* at 172;  La.C.Cr. P. Article 220 and Official Revision Comment (b); Article 1, Section 5, Louisiana Constitution of 1974.[44] "Whether the officers had reasonable suspicion to detain Miller or probable cause to arrest him is of no moment. It is clear that regardless of whether reasonable suspicion exists to stop or probable cause exists to detain, 'the use of excessive force in effecting the arrest becomes an actionable claim for damages.'" *Miller v Village of Hornbeck,* 65 So. 3d 784 (La. App. 3rd Cir. 2011)(citations omitted). As stated in *Manis v Zemlik*, 96 So.3d 509, 513 (La.App 5th Cir.), *writ denied,* 98 So.2d 852 (La. 2012):

> Excessive force claims are analyzed under general negligence laws, which employ a duty-risk analysis. *Stroik v Ponseti,* 96-2897 (La.9/9/97), 699 So.2d 1072, 1077. As such, plaintiffs must prove (1) defendant owed a duty of care to plaintiffs; (2) the requisite duty was breached by defendant; (3) the conduct in question was a cause-in-fact of the resulting harm; and (4) the risk of harm was within the scope of the protection afforded by the duty breached. *Id."*

> Whether a duty is owed is a question of law. *Stroik*, 699 So.2d at 1077. Police officers owe a duty of reasonableness when effecting an arrest or approaching a subject to disarm him. See La. C.Cr. P. art. 220. *Kyle v City of New Orleans* 353 So.2d 969 (La. 1977); *Mathieu v Imperial Toy Corp.*, 94-952 (La. 11/30/94), 646 So.2d 318.  (citations omitted)

---

[44] "Article 1, Section 5 of the Louisiana Constitution, like the Fourth Amendment, protects against unreasonable searches and seizures…..Both the U.S. and Louisiana Constitutions prohibit unreasonable searches and seizures". *Carter v St. John Baptist Sheriff's Office* No. 11-1401, 2012 WL 1752682 * 7 (E.D.La. May 16, 2012).  Art 1, Sec. 5 of Louisiana's Constitution is "analogous" to the federal Fourth Amendment proscribing unreasonable searches and seizures. *N.S. v City of Alexandria*, No. 09-0779, 2014 WL 4274108 * 4 (W.D.La. Aug. 28, 2014)(citation omitted); *Thomas v Town of Jonesville*, No. 11-408, 2013 WL 265235, *6 (W.D.La. Jan. 23, 2013), *aff'd,* 539 Fed.Appx. 645 (5th Cir. 2013);  *Molette v  City of  Alexandria*, No. 04-0501, 2007 WL 2174623 *4 n.10 (W.D.La. July 25, 2007) ("Louisiana law is nearly identical to federal law with respect to unreasonable search and seizure claims".)

*See also Penn v St. Tammany Parish Sheriff's Office*, 843 So.2d 1157 (La. App. 1st Cir. 2003);
*Ross v Sheriff, supra* at 511.[45]

The standard used to determine reasonableness of the force used by an officer is based on the "totality of facts and circumstances in each case". *Kyle*, 353 So.2d at 973. "The degree of force employed is a factual question." *Id.*

As the U.S. 5th Circuit Court of Appeals has noted, "Louisiana's excessive force mirrors its federal constitutional counterpart". *Deville v. Marcantel, supra* at 172.

The factual question as to whether excessive force was used against Raymond Robair by NOPD officer Melvin Williams on July 30, 2005, which resulted in his death, has already been determined by the federal court jury which convicted Williams of violating 18 U.S.C. § 242 and found that "the offense resulted in the death of Raymond Robair".[46]

Because Robair died as a result of the injuries Williams inflicted on him, Williams' battery and use of excessive force against Robair gives rise to two distinct causes of action: first, a survival action on Robair's behalf for the damages that he could have recovered had he lived (Louisiana Civil Code Art. 2315.1) and, second, a wrongful death action on plaintiffs' own behalf for their damages occasioned by their father's death. (La. Civil Code Art. 2315.2) Survival actions and wrongful death actions are "special legislation providing for the survival of a right of action in

---

[45] "A police officer, in carrying out his authority to enforce laws, has a duty to act reasonably to protect life and limb, to refrain from causing injury or harm, and to exercise respect and concern for the well-being of those whom he is employed to protect." *Carter v St. John Baptist Parish Sheriff's Office*, No. 11-1401, 2012 WL 1752682 *7 (E.D.La. May 16, 2012)(citations omitted). *See also Mathieu v. Imperial Toy Corp.*, 646 So.2d 318, 322 (La. 1994) (holding that duty of reasonableness in effecting arrest extends to approaching a suspect).

[46] Ex. 2, Verdict Form. Both the Indictment and the Jury Charge in the criminal case refer to Raymond Robair's "right to be free from the use of unreasonable force by a law enforcement officer" which is secured by "the Constitution and laws of the United States." Ex. 1; Ex. 10, Jury Charge, *U.S. v. Williams* (E.D.La.) (doc. 94).

favor of named classes of survivors and also creating a cause of action in favor of those same classes of persons for wrongful death." *Levy v. State Through Charity Hosp. of La. at New Orleans Bd. of Adm'rs,* 216 So.2d 818, 819 (La. 1968), *rev'd on other grounds sub nom. Levy v. Louisiana,* 391 U.S. 68 (1968).

"Although both actions arise from a common tort, survival and wrongful death actions are separate and distinct." *Harper v. State through Dept. of Health and Hospitals*, 176 So. 3d 479, 491-92 (La. App. 4th Cir. 2015), *writ denied,* 184 So.3d 692 (La. 2016) (citing *Taylor v. Giddens,* 618 So.2d 834, 340 (La. 1993)).   Each right arises at a different time and addresses itself to the recovery of damages for totally different injuries and losses." *Id.*   The survival action under La. Civ. Code 2315.1 comes into existence simultaneously with the tort (here, Williams' battery of Robair which resulted in his death), allows recovery only for damages suffered by the victim from the time of injury to the moment of death, and is transmitted to the victim's beneficiaries upon his death.  *Boullt v. State Farm Mut. Auto Ins. Co*., 752 So.2d 739, 743-44 (La. 1999).   A wrongful death action under La. Civ. Code art. 2315.2 arises when the victim dies due to the fault of another, and compensates beneficiaries for their own individual injuries that occur at the moment of the victim's death and thereafter.  *Walls v. American Optical Corp.,* 740 So.2d 1262, 1269-70 (La. 1999).[47]

There is no genuine issue of material fact as to whether or not Williams used excessive force against Raymond Robair on July 30, 2005, which resulted in Robair's death.  The criminal

---

[47] Plaintiffs Judonna Mitchell and LaShonda Saulsberry are the adult daughters of Raymond Robair.  As such, they are the proper parties to recover damages for their father's survival action ( La. Civ. Code art. 2315.1) and to recover damages for his wrongful death (La. Civ. Code art. 2315.2).   The paternity of Raymond Robair of both plaintiffs has been confirmed by court order. Ex. 9, certified copy of Order of Filiation, *In re:  LaShonda Saulsberry and Judonna Mitchell,* Civil District Court for the Parish of Orleans, No. 06-6823.

conviction of Williams for violating 18 U.S.C. § 242 necessarily involved determination by the factfinder, *i.e.*, the jury, of the essential elements of plaintiffs' state law wrongful death and survival claims for the death of Robair due to the battery and use of excessive force by Williams against Robair. *Pizzuto v. County of Nassau,* 239 F.Supp. 2d 301, 308 (E.D.N.Y. 2003); *Vela v. Alvarez,* 507 F.Supp. 887 (S.D.Tex. 1981). Plaintiffs are entitled to summary judgment on their state law wrongful death and survival claims against Williams.

## V.     PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT AGAINST THE CITY THROUGH VICARIOUS LIABILITY ON PLAINTIFFS' STATE LAW CLAIMS FOR WRONGFUL DEATH AND SURVIVAL.

Under Louisiana law, an employer is liable for the intentional torts of its employees if the employee acted within the course and scope of his employment. La. Civ. Code art. 2320; *Orgeron v. McDonald,* 639 So.2d 224, 226 (La. 1994); *LeBrane v. Lewis,* 292 So.2d 216, 217 (La. 1974). The course of employment test refers to time and place, and the scope of employment test examines the employment-related risk of injury. *Benoit v. Capitol Mfg. Co.,* 617 So.2d 477, 479 (La. 1993). In order to hold an employer vicariously liable, the employee must act within the ambit of his assigned duties *and* in furtherance of his employer's objective. *Baumeister v. Plunkett,* 673 So.2d 994, 996 (La. 1996).

In general, the vicarious liability inquiry "requires the trier of fact to determine whether the employee's tortious conduct was 'so closely connected in time, place and causation to his employment-duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interests.'" *Russell v. Noullet*, 721 So. 2d 868, 871 (La. 1998). "The scope of risks attributable to an employer increases with the amount of authority and freedom of action granted to the servant in performing his assigned tasks." *Richard v. Hall*, 874 So.2d 131, 139 (La. 2004).

15

"The fact that the predominant motive of the servant is to benefit himself or a third person does not prevent the act from being within the scope of employment." *Ermert v. Hartford Insurance Company,* 559 So.2d 467, 477 (La. 1990). "If the purpose of serving the employer's business actuates the employee to any appreciable extent, the employer is liable." *Doe v. Morris*, No. 11-1532, 2013 WL 3933928 (E.D. La. July 30, 2013) (citing *Richard*, 874 So.2d at 137-38)); *see also Orgeron v. McDonald*, 639 So.2d 224, 226-27 (La. 1994) (explaining that an employee acts within the course and scope of his employment if "the conduct is of the kind that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer").

The use of force beyond that which is considered reasonable does not insulate an employer from vicarious liability for the acts of its employees under La. Civ. Code art. 2320.  *See, e.g., Campbell v. Mouton,* 412 So.2d 191 (La. App. 3rd Cir.), *writ denied*; 415 So.2d 954 (La. 1982); *Moore v. Smith,* 303 So.3d 246 (La. App. 2nd Cir. 1974). "The use of force when necessary to make an arrest is a legitimate police function.  But if the officers use unreasonable or excessive force, they and their employer are liable for any injuries which result." *Kyle v. City of New Orleans,* 353 So.2d 969, 972 (La. 1977).

 Where the facts are undisputed, courts routinely grant summary judgment with respect to vicarious liability. *See, e.g.*, *Doe v. Morris,* 2013 WL 3933928, at *4.

### 1. **The *LeBrane* Factors**

The Louisiana Supreme Court in *LeBrane* identified four factors for a court to consider in determining whether an employee's tort was committed in the course and scope of his employment: (1) whether the tortious act was primarily employment rooted; (2) whether the violence was reasonably incidental to the performance of the employee's duties; (3) whether the

act occurred on the employer's premises; and (4) whether it occurred during the hours of employment.  292 So.2d at 218.  Although it is not necessary that all four *LeBrane* factors be met in order to find vicarious liability, *Baumeister*, 673 So. 2d at 997, each of the factors weighs strongly in favor of imposing vicarious liability on the City in this case.

*The first LeBrane factor:*
*Whether Williams' tortious act was primarily employment rooted.*

The first *LeBrane* factor - whether the tortious act was primarily employment rooted - is determined by "whether the employee's actions were so closely connected to his employment duties that the risk of harm faced by the victim was fairly attributable to his employer." *Mitchell v. CCA of Tenn., Inc.*, 2007 WL 837293, at *9 (W.D. La. March 15, 2007) (citing *Turner v. State*, 494 So.2d 1292, 1296 (La. App. 2d Cir. 1986)); *Samuels v. Southern Baptist Hospital*, 594 So. 2d 571, 574 (La.App. 4th Cir.), *writ denied,* 599 So.2d 316 (1992); *see also Russell v. Noullet*, *supra* at 871.  In this case, there can be no question that Williams' misconduct was employment rooted, or that the risk of harm to Robair was fairly attributable to the City.[48]

The two officers were clearly on duty,[49] carrying out their official employment duties for the City (conducting proactive patrols) in a specific area where they were assigned to work. They

---

[48] *See* discussion of conclusively established facts (section I.1, *supra*) and facts admitted under Rule 36 (section I.2, *supra*).  "In police cases, Louisiana courts give special weight to the authority wielded by on-duty police officers in performing the vicarious liability analysis." *Doe v Morris*, *supra* at *4 (E.D.La. July 30, 2013) (citing *Applewhite v City of Baton Rouge*, 380 So.2d 119 (La. App. 1st Cir 1979), where the court "reviewed Louisiana case law in the police context and concluded that it consistently held employers responsible for transgressive police behavior even if the conduct was not squarely within the officer's usual duties.").

[49] The City objected to plaintiffs' RFA No. 24 regarding the "on duty" status of Williams, claiming that it "calls for speculation and a legal conclusion".  Ex. 3; Ex. 4.  Accepting *arguendo* the City's position that this is a "legal" issue, the undisputed facts clearly show that Williams was "on duty" as a police officer and acting as a police officer at all times when he used excessive force on Raymond Robair on July 30, 2005.  In addition, Williams was criminally convicted under 18 U.S.C. § 242 for his actions as described herein, one element of which requires that he acted "under color of law," *i.e.*, that he used his authority as a police officer to commit the acts which resulted in Robair's death. *United States v. Moore, et al,* 708 F.3d 639, 645 (5th Cir. 2013).

were at work, on the job, doing patrol, in a police car, armed with police approved equipment, (handcuffs, gun, baton), using the police radio to communicate with dispatch, filling out police reports, etc. Robair was handcuffed and under the authority and control of these two NOPD officers when Williams inflicted the beating which ruptured Robair's spleen and led to his death. The officers' conduct toward Robair was so closely connected to their duties as police officers in time  (*i.e.,* on patrol/"on duty"), place (in a neighborhood the NOPD had specifically targeted for proactive patrols), and causation (the jury's specific finding in the criminal case that Officer Williams' deprivation of Raymond Robair's rights under color of law "resulted in the death of Raymond Robair") that their conduct constituted a risk of harm attributable to the business of the NOPD and the City.  Moreover, the NOPD official paperwork related to Officers Williams' and Moore's activities on July 30, 2005 further confirms that their tortious activity that day was primarily employment rooted and that they were engaged in their work as NOPD officers when this incident occurred.[50]

*The second LeBrane factor:*
*Whether the violence was reasonably incidental to the*
*performance of Williams' duties.*

The undisputed facts in the summary judgment record also satisfy the second factor. Louisiana courts have repeatedly found intentional violence to be reasonably incidental to an employee's duties.  For example, in *LeBrane,* the Louisiana Supreme Court found the owner of a hotel vicariously liable when a supervisor stabbed an employee whom he had terminated after their argument turned into a fight.  The Court found the fight was "employment rooted," because it was

---

[50] Officer Moore prepared a trip sheet on July 30, 2005 that was submitted to the NOPD for his and Officer Williams' activities that day.  Plaintiffs' RFA No. 95 to City and City's amended response to same.  Ex. 3; Ex. 4.

reasonably incidental to the performance of the supervisor's duties in connection with firing the employee and getting him to leave the employer's premises.

Williams' duties and assignments on July 30, 2005 specifically included conducting proactive street patrols in the NOPD's First District,[51] in the course of which he encountered Robair.[52] Williams' battery and use of excessive force on Robair on that day and in that location arose directly from his execution, albeit flawed, of the duties the City assigned to him. This clearly constitutes a risk of harm attributable to the City's business of operating a police department to ferret out and prevent crime.

As in *LeBrane,* Williams' battery/excessive force on Robair was "employment rooted," because it was reasonably incidental to the performance of Officer Williams' duties that day. "The scope of risks attributable to an employer increases with the amount of authority and freedom of action granted to the servant in performing his assigned tasks." *Doe*, 2013 WL 3933928, at *4 (quoting *Richard v. Hall*, 874 So.2d at 139). The fact that a tort victim, such as Robair, was under the employee's care and custody at the time of the tort has been considered particularly important in establishing vicarious liability. *See, e.g.*, *Baumeister v. Plunkett*, 673 So.2d 994, 999 n. 2 (La. 1996); *Samuels*, 594 So.2d at 574.

---

[51] Plaintiffs' RFA No. 18 to City and City's amended response to same.  Ex. 3; Ex. 4.

[52] Plaintiffs' RFA No. 22 to City and City's amended response to same. Ex. 3; Ex. 4; Plaintiffs' RFA No. 22 to Williams and Williams' response to same.    Ex. 5; Ex. 6.

*The third LeBrane factor:*
*Whether the act occurred on the employer's premises*

On July 30, 2005, Williams' duties and assignments as an NOPD officer included "conducting proactive street patrols in the NOPD's First District," which included the 1500 block of Dumaine.[53]  Williams' assault of Robair occurred within the geographic bounds of the NOPD's authority (the territorial limits of the City) and in the specific part of the City (the NOPD's First District) where the officers had been assigned to patrol on July 30, 2005.[54]

*The fourth LeBrane factor:*
*Whether it occurred during the hours of employment*

In addition, the battery of Robair took place during Williams' hours of employment,[55] while he and Officer Moore worked an overtime shift that started at 8:00 a.m. on July 30, 2005.[56]

All four *LeBrane* factors strongly support a finding of vicarious liability on the part of the City.

**2.  The fact that Williams' actions were criminal does not relieve the City of vicarious liability for his actions.**

No serious argument can be made that Williams was not on duty when, while on police patrol, in uniform, during work hours, he kicked and beat Robair with his police baton, causing Robair's spleen to rupture, resulting in his death.  The fact that Williams failed to execute his

---

[53] Plaintiffs' RFA No. 18 and 20 to City and City's amended response to same.  Ex. 3; Ex. 4.

[54] Plaintiffs' RFA No.  18 and 20 to City and City's amended response to same  (admitting that Williams' duties and assignments including conducting proactive street patrols in the NOPD's First District, which included the 1500 block of Dumaine).  Ex. 3; Ex. 4.

[55] Plaintiffs' RFA No. 22 to City and City's amended response to same (admitting that, at about 9:00 a.m. on July 30, 2005, Williams and Moore encountered Robair in the 1500 block of Dumaine in the course of their patrol in the First District).  Ex. 3; Ex. 4.

[56] Williams' testimony, Ex. 7 at p. 850, lines 21-25**,** *U.S. v. Williams*  (E.D.La.) (doc. 169); Moore's testimony, Ex. 8 at p. 746, lines 18-24; p. 749, lines 19-21**,** *U.S. v. Williams*  (E.D. La.)  (doc. 169).

duties properly, or that this failure resulted in a criminal conviction, does not relieve the City of vicarious liability. In *Doe v. Morris*, Judge Vance, in holding the City of Thibodaux vicariously liable for a police officer's rape of an intoxicated woman he had escorted to her apartment, explained that merely because the employee's misconduct "is proscribed or performed in a forbidden manner does not remove the act from the scope of employment." *Doe*, 2013 WL 3933928, at *4 (quotation marks and citation omitted). For this reason, courts routinely find on-duty intentional torts subject to vicarious liability. *See, e.g.*, *Sampson v. City of New Orleans*, No. 04-1052, 2005 WL 14908, at *3 (E.D. La. Jan. 3, 2005) (vicarious liability where police officers demanded payment before freeing plaintiff from unlawful arrest); *Latullas v. State of Louisiana*, 658 So. 2d 800 (La. App. 1st Cir. 1995) (finding state vicariously liable for prison guard's rape of a prisoner on prison grounds); *Turner*, 494 So. 2d 1292 (finding vicarious liability of Louisiana National Guard for its employee's battery of several recruits).

Courts have routinely considered criminal convictions as a basis for vicarious liability. *See, e.g.*, *Barrios-Barrios v. Clipps*, 825 F. Supp. 2d 730, 743 (E.D. La. 2011) (holding that malfeasance conviction supported vicarious liability claim); *Applewhite v. City of Baton Rouge*, *supra* (holding employer vicariously liable for on duty police officer who sexually assaulted victim and was subsequently convicted of malfeasance); *see also Bean v. Hunt*, No. 11-3157, 2013 WL 5890573, at *8 (E.D. La. Nov. 1, 2013) (rejecting municipality's argument that officers' malfeasance convictions relieved municipality of vicarious liability).

Accordingly, plaintiffs are entitled to summary judgment on their vicarious liability claim against the City for wrongful death and survival due to the battery and use of excessive force by Williams against Robair, resulting in Robair's death, while Williams was acting in the course and scope of his employment as an NOPD officer.

**VI.     PLAINTIFFS ARE ENTITLED TO  SUMMARY JUDGMENT ON THEIR 42 U.S.C. § 1983 EXCESSIVE FORCE CLAIM AGAINST WILLIAMS.**

Plaintiffs contend that Officer Williams violated Robair's right to be free from excessive force when he caused Robair's spleen to rupture in the course of an unprovoked and unjustified beating, resulting in his death.   In order to prevail under 1983, plaintiffs must (1) allege a deprivation of a right secured by the Constitution or laws of the United States and (2) show that the alleged deprivation was committed by a person acting under color of state law.  *Whitley v. Hanna,* 726 F.3d 631, 638 (5th Cir. 2013), *cert. denied,* 134 S.Ct.1935 (2014); *James v. Tex. Collin Cnty.,* 535 F.3d 365, 373 (5th Cir. 2008).

In order to prevail on their § 1983 claim for violation of Robair's Fourth Amendment right to be free from the use of excessive force by a law enforcement officer,[57] plaintiffs must prove that (1) Robair suffered an injury; (2) such injury resulted directly and only from the use of force that was excessive to the need; and (3) such force was objectively unreasonable.  *Harris v. Serpas,* 745 F.3d 767, 772 (5th Cir. ), *cert. denied,* 135 S.Ct. 137 (2014) ; *Goodson v. City of Corpus Christi,* 202 F.3d 730, 740 (5th Cir. 2000).   Williams has already been criminally convicted of violating Robair's civil rights by use of excessive force resulting in his death.[58] As a result, each of these three elements is conclusively established by Williams' conviction under 18 U.S.C. § 242.   In affirming this conviction, the Fifth Circuit found that Robair "died of internal bleeding due to a ruptured spleen."[59] It also found that "a jury could reasonably conclude from the evidence that

---

[57] This is the constitutional right that Melvin Williams was charged with and convicted of violating under 18 U.S.C. § 242.  *See* U.S. *v. Williams* (E.D.La.), Ex. 1 (doc 1); Ex. 10 (doc. 94).

[58] *U.S. v. Moore* (5th Cir.)*, supra.*

[59] 708 F.3d at 646.

Robair's death was proximately caused by and the foreseeable result of being kicked in the chest by Williams."[60]   The Fifth  Circuit also noted its agreement with the district court's finding that Williams' "behavior in the events leading up to Robair's death [was] such a gross deviation from a reasonable standard of care that he must have been aware of a serious risk of death or serious bodily injury." [61]

Plaintiffs must also show that Officer Williams acted under color of state law.  "It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State." *West v. Atkins,* 487 U.S. 42, 49-50 (1988) (citing *Monroe v. Pape,* 365 U.S. 167, 172 (1961).  "Acts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it." *Screws v. United States*, 325 U.S. 91, 111 (1944).  "An action occurs under color of law when there is '[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *United States v. Dillon,* 532 F.3d 379, 384 (5th Cir. 2008)(quoting *United States v. Classic,* 313 U.S.  299 (1941)).  *See also U.S. v Tarpley* 945 F.2d 806 (5th Cir 1991), *cert. denied,* 504 U.S. 917 (1992).

Plaintiffs are entitled to summary judgment on their 42 U.S.C. §1983 excessive force claim against Williams.  There is no genuine issue of material fact as to the elements of this claim.

## VII.    PLAINTIFFS ARE ENTITLED TO  SUMMARY JUDGMENT ON THE PREDICATE CONSTITUTIONAL VIOLATION FOR THEIR *MONELL* CLAIM AGAINST THE CITY.

---

[60] 708 F.3d at 647.

[61] 708 F.3d at 648.

In addition to their § 1983 excessive force claim against Williams, plaintiffs have also brought a *Monell* claim against the City. In order to prevail under *Monell*, plaintiffs must show "there was either an official policy or an unofficial custom, adopted by the municipality, that was the moving force behind the claimed constitutional violation." *Duvall v. Dallas County, Tex.,* 631 F.3d 203, 209 (5th Cir.), *cert. denied,* 132 S.Ct. 111 (2011) (citing *Monell,* 436 U.S. at 694). As a predicate to this *Monell* claim, plaintiffs must first show there was an underlying constitutional violation, in this case, excessive force under the Fourth Amendment. *Id.* Because Williams' conduct constitutes such a violation (*see* section VI), plaintiffs are entitled to partial summary judgment against the City on this element – the underlying constitutional violation – of plaintiffs' *Monell* claim.[62] The remaining elements of plaintiffs' *Monell* claim, including questions of official policy or custom and moving force, are not part of this motion.

The Fifth Circuit specifically found that Williams "acted with an intent to do bodily harm."[63] It also noted its agreement with the district court's finding that Williams' "behavior in the events leading up to Robair's death [was] such a gross deviation from a reasonable standard of care that he must have been aware of a serious risk of death or serious bodily injury."[64]

The undisputed factual record establishes that Williams' conduct prior to Robair's death meets both of the elements of subjective deliberate indifference: first, that Williams knew that Robair faced a substantial risk of serious harm and, second, that Williams disregarded that risk.

---

[62] *See Nagle v. Gusman,* 61 F.Supp.3d 609, 630-31 (E.D.La. 2014) (Vance, J.) (finding it "proper for plaintiffs to move for summary judgment on the constitutional violation component of their *Monell* claim," and granting plaintiffs "partial summary judgment on "the 'constitutional violation' component of the third element of their intended *Monell* claim against Sheriff Gusman.").

[63] 708 F.3d at 648.

[64] *U.S. v Moore,* 708 F.3d at 648

Plaintiffs are entitled to partial summary judgment on the predicate constitutional violation element of its *Monell* claim against the City on the issue of Williams' violation of Robair's Fourth Amendment right to be free from excessive force.

## VIII.   CONCLUSION.

Plaintiffs respectfully request that the Court enter partial summary judgment against Melvin Williams on (1) plaintiffs' wrongful death claim under La. Civ. Code art. 2315.2; (2) plaintiffs' survival claims under La. Civ. Code art. 2315.1; and (3) plaintiffs' Fourth Amendment excessive force claim under 42 U.S.C. § 1983.  Plaintiffs also respectfully request that the Court enter partial summary judgment against the City of New Orleans on (1) plaintiffs' wrongful death and survival claims against the City under vicarious liability; (2) the predicate constitutional violation for plaintiffs' *Monell* claim against the City pursuant to 42 U.S.C. § 1983.

Respectfully submitted,

MARY E. HOWELL # 7030, T.A.            */s/ Maureen Blackburn Jennings*
Attorney at Law                                      Maureen Blackburn Jennings
316 S. Dorgenois Street                            La. Bar No. 3100
New Orleans, LA 70119                          3 Riverway, Suite 1800
(504) 822-4455                                       Houston, TX  77056
                                                               Tel:  (713) 209-2930
                                                               Fax:  (713) 659-5302
                                                               maureen@maureenjenningslaw.com

Attorneys for Plaintiffs
Judonna Mitchell and LaShonda Saulsberry

## CERTIFICATE OF SERVICE

Undersigned counsel certifies that all counsel of record for the defendants will be served with a copy of this motion via the Court's CM/ECF system.  Undersigned counsel also certifies that a copy will be served by e-mail on Anthony W. Cannatella, Jr., Succession Representative of Anthony W. Cannatella, Sr., on April 5, 2016.

*/s/ Maureen Blackburn Jennings*

25