UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JUDONNA MITCHELL, ET AL.                    CIVIL ACTION

VERSUS                                      NO: 06-4021

CITY OF NEW ORLEANS, ET AL.                 SECTION: "J"(4)

## ORDER & REASONS

Before the Court is a *Joint Motion to Dismiss Pursuant to Fed. Rule Civ. Proc. 12(c) or in the Alternative Motion for Summary Judgment Pursuant to Fed. Rule Civ. Proc. 56* **(Rec. Doc. 67)** filed by the City of New Orleans, Edwin P. Compass III, Anthony Cannatella Jr., Sgt. J. Doe, and Lt. R. Roe (collectively "City Defendants"); an opposition thereto (Rec. Doc. 75) filed by Plaintiffs, Judonna Mitchell and LaShonda Saulsberry; and the City Defendants' reply (Rec. Doc. 84). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED IN PART** and **DENIED IN PART**.

## FACTS AND PROCEDURAL BACKGROUND

This matter arises from an incident involving two former New Orleans Police Department ("NOPD") officers that resulted in the death of Raymond Robair. On July 31, 2006, Plaintiffs, the adult daughters of Robair, filed this civil rights lawsuit against the City of New Orleans and various former employees of the NOPD, including Superintendent Edwin P. Compass III, Captain Anthony

Cannatella Sr.,[1] Officer Melvin Williams, and Officer Matthew Dean Moore, in their individual and official capacities.[2] (Rec. Doc. 1.) Due to pending criminal proceedings that arose out of the same facts and circumstances, this matter was stayed on March 14, 2007. (Rec. Doc. 12.)

On July 29, 2010, the United States filed an indictment in the Eastern District of Louisiana against Williams and Moore, the two NOPD officers involved in Robair's death. Following a jury trial, Williams was convicted of causing the death of Robair while depriving him of his civil rights, in violation of 18 U.S.C. § 242. Further, Williams and Moore were both convicted of aiding and abetting obstruction of justice by filing a false police report. Lastly, Moore was convicted of making a false statement to the FBI. On appeal, the United States Court of Appeals for the Fifth Circuit affirmed the convictions and sentences. *United States v. Moore*, 708 F.3d 639 (5th Cir. 2013).

The Fifth Circuit presented the following factual summary of the incident resulting in Robair's death. *See id.* at 643-45. On July 30, 2005, at approximately 9:00 a.m., Robair was on Dumaine Street in New Orleans. *Id.* at 643. Williams and Moore, the two former NOPD officers, pulled their patrol car over to the curb

---

[1] Anthony Cannatella Jr., in his capacity as Administrator of the Succession of Anthony Cannatella Sr., has been substituted as a defendant in the place of the late Captain Cannatella. (Rec. Doc. 38.)
[2] Plaintiffs also pursue claims against two unidentified individuals, designated as "Sgt. J. Doe" and "Lt. R. Roe," in their individual and official capacities.

near Robair.[3] When the patrol car stopped, Robair turned to go the opposite way. Moore got out of the patrol car, grabbed Robair, threw him to the ground, and tried to handcuff him. Williams also got out of the car and helped Moore handcuff Robair.

Although the testimony at trial was not entirely consistent, four neighborhood witnesses testified that while Robair was on the ground with Moore on top of him, Williams kicked Robair in the torso. *Id.* Robair screamed. Williams then struck Robair across the legs and torso with his metal police baton while Moore held Robair. Robair did not resist and Moore did nothing to stop Williams. Williams and Moore then put Robair into the back of the patrol car and drove away.

The officers drove Robair to the emergency room at Charity Hospital, arriving at around 9:20 a.m. *Id.* Robair was unresponsive, so the officers brought him in by wheelchair. Williams told the charge nurse that Robair had been found lying on the ground under a bridge and had a history of drug use. Williams and Moore did not identify themselves or provide their badge numbers, which was unusual, and left after about ten minutes. They returned about fifteen minutes later. Williams told the nurse that they had found

---

[3] Williams, the driver of the patrol car, had been employed by the NOPD since 1994. Moore, the passenger, was a recruit who had recently graduated from the police academy and was under the supervision of Williams, his field training officer.

some crack cocaine in the back of the police car. Neither officer mentioned that Robair's condition was a result of a trauma.

Based on this information, the medical staff at the hospital treated Robair for drug overdose. *Id.* at 644. There was no visible outward sign of trauma and no evidence of blood. Tests revealed that Robair did have cocaine in this system, track marks on his arm, and a high heart rate, all of which are consistent with a response to cocaine. X-rays showed that Robair had one broken rib. While in the emergency room, Robair also suffered a heart attack requiring chest compressions and other means to resuscitate him.

Around 10:55 a.m., doctors drew fluid from Robair's abdomen and determined that he had internal bleeding, leading doctors to suspect trauma. *Id.* He was immediately taken to the operating room, but it was too late to save him. Robair's spleen had ruptured, causing massive internal bleeding. Experts testified that if the staff had known that Robair was a victim of blunt force trauma, he would have been treated differently and would likely have survived.

Two autopsies were performed on Robair, one by Dr. McGarry of the Orleans Parish Coroner's Office and one by Dr. Sperry, chief medical examiner for the State of Georgia, which was conducted post-embalming. *Id.* Both identified the cause of death as internal bleeding due to a ruptured spleen. Dr. Sperry further concluded that Robair sustained massive force on the left side of the chest that broke four ribs and crushed his spleen. Dr. Sperry also found

4

other evidence to indicate that Robair was the victim of a beating and that the injuries to his ribs and spleen were consistent with a kick. Dr. Sperry concluded that the death was a homicide.

On the day of Robair's death, Officers Williams and Moore filled out an incident report regarding their encounter with Robair. *Id.* The report does not mention any use of force, rather describing the encounter as a medical incident. The officer's respective roles in preparing the report were disputed.

When interviewed by an FBI investigator, Moore stated that Robair was running toward their patrol car as they drove down Dumaine Street. He also stated that when they stopped the car, Robair ran into the street, made some evasive moves and then fell to the ground when his shoe fell off. Moore stated that he jumped onto Robair to attempt to handcuff him. Williams assisted getting Robair handcuffed. They then placed him in the car and transported him to the hospital. Moore denied that he or Williams ever kicked or struck Robair. Moore and Williams testified similarly at trial. After a jury trial, Moore and Williams were convicted on all counts.

On April 23, 2015, after all direct appeals in the criminal case concluded, the Court lifted the stay and reinstated this case to the Court's active docket. (Rec. Doc. 16.) Thereafter, Plaintiffs filed their First Amended Complaint. (Rec. Doc. 36.) Plaintiffs assert federal claims against the City and the

individual defendants for deprivation of civil rights, under 42 U.S.C. §§ 1983 and 1988. *Id.* at 11-14. In addition, Plaintiffs assert a survival action and wrongful death action under Louisiana law, seeking to recover damages suffered by Robair before death and damages suffered by the Plaintiffs as a result of the wrongful death of their father. *Id.* at 14.

The City Defendants filed the instant *Joint Motion to Dismiss Pursuant to Fed. Rule Civ. Proc. 12(c) or in the Alternative Motion for Summary Judgment Pursuant to Fed. Rule Civ. Proc. 56* **(Rec. Doc. 67)** on February 26, 2016. Plaintiffs opposed the motion on March 15, 2016. On March 20, 2016, the City Defendants filed a reply.[4] The motion is now before the Court on the briefs.

## PARTIES' ARGUMENTS

The City Defendants move to dismiss Plaintiffs' claims against them pursuant to Rule 12(c) or, in the alternative, move for summary judgment pursuant to Rule 56. The City Defendants argue that Plaintiffs' original and amended complaints fail to identify any specific policy or custom implemented by the City that was the moving force behind Robair's death. (Rec. Doc. 67-2 at 9.) According to the City Defendants, both complaints contain mere

---

[4] Following the Court's order granting the City Defendants leave to file a reply, Plaintiffs and Defendant Melvin Williams both filed motions to continue the submission date of the City Defendants' motion. (Rec. Docs. 87, 89.) Plaintiffs argue that the City Defendants' reply includes ten new exhibits, each containing evidence not included in their original motion. Consequently, Plaintiffs contend that they are entitled to file a surreply brief in response, and they seek additional time in order to do so.

conjecture and unsupported conclusions. *Id.* at 9-10. Moreover, the City Defendants dispute many of Plaintiffs' factual allegations. *See id.* at 9-12, 15. Next, the City Defendants contend that Plaintiffs have failed to allege any personal involvement on the part of Compass, Cannatella, Doe, or Roe to support their individual capacity claims. *Id.* at 14-17. Lastly, the City Defendants argue that Compass, Cannatella, Doe, and Roe are entitled to qualified immunity and immunity under state law. *Id.* at 17-21.

In response, Plaintiffs first argue that the Court should deny the City Defendants' motion pursuant to Rule 12(c) because Plaintiffs have satisfied the requirements for pleading their federal and state claims. (Rec. Doc. 75, at 1.) Second, Plaintiffs move pursuant to Rule 56(d) for additional time to conduct depositions to obtain facts essential to justify their opposition to the City Defendants' motion for summary judgment. *Id.* at 2.

**LEGAL STANDARD**

**A. Motion for Judgment on the Pleadings**

Rule 12(c) provides that "[a]fter the pleadings are closed— but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion brought pursuant to Rule 12(c) "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any

7

judicially noticed facts." *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990).

Courts evaluate a motion under Rule 12(c) for judgment on the pleadings using the same standard as a motion to dismiss under Rule 12(b)(6) for failure to state a claim. *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (citing *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).

**B.   Motion for Summary Judgment**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either

countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g.*, *id.* at 325; *Little*, 37 F.3d at 1075.

## DISCUSSION

## A.   Rule 12(c) Motion for Judgment on the Pleadings

The Court first considers the City Defendants' motion to dismiss pursuant to Rule 12(c) by looking to the substance of the pleadings and any judicially noticed facts to determine whether Plaintiffs have alleged sufficient facts to state a plausible claim for relief against the City Defendants.

Section 1983 provides a claim against anyone who "under color of any statute, ordinance, regulation, custom, or usage, of any

State" violates another's constitutional rights. 42 U.S.C. § 1983. Section 1983 is not itself a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere. *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999).

To state a § 1983 claim, "a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (quoting *James v. Texas Collin County*, 535 F.3d 365, 373 (5th Cir. 2008)).

## 1.   Official Capacity and Municipal Liability Claims

Municipalities and other bodies of local government are considered "persons" who may be sued directly under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). However, "a municipality cannot be held vicariously liable for the constitutional torts of its employees or agents." *Gros v. City of Grand Prairie*, 181 F.3d 613, 615 (5th Cir. 1999). In other words, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. Thus, ordinarily, municipal liability must be based on a municipal "policy" or "custom" that caused the plaintiff's injury. *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997).

A suit against a government officer "in his official capacity" is no different from a suit against the government entity of which he is an agent. *Burge v. Parish of St. Tammany* (*Burge I*), 187 F.3d 452, 468 (5th Cir. 1999) (quoting *McMillian v. Monroe County*, 520 U.S. 781, 785 n.2 (1997)); *see also Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell*, 436 U.S. at 690 n.55)). Therefore, the Court considers the official capacity claims against Compass, Cannatella, Doe, and Roe to be municipal liability claims against the City.

To succeed on a § 1983 claim against a municipality, a plaintiff must show the deprivation of a federally protected right caused by action taken "pursuant to an official municipal policy." *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) (citing *Monell*, 436 U.S. at 691). Thus, municipal liability under § 1983 requires proof of three elements: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Id.* (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)).

The first element, existence of an official policy or custom, can be shown in at least three ways. First, there may be a policy that is "officially adopted and promulgated" by the municipality

or by an official with policymaking authority. *Burge v. St. Tammany Parish* (*Burge II*), 336 F.3d 363, 369 (5th Cir. 2003). Second, there may be a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Id.* A persistent, widespread practice may also encompass allegations that a policymaker failed to act affirmatively, "if the need to take some action to control the agents of the local governmental entity 'is so obvious, and the inadequacy [of existing practice] so likely to result in the violation of constitutional rights, that the policymake[r] . . . can reasonably be said to have been deliberately indifferent to the need.'" *Burge I*, 187 F.3d at 471 (alteration in original) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). Third, a "single decision by a policy maker may, under certain circumstances, constitute a policy for which a [municipality] may be liable." *Valle*, 613 F.3d at 542 (alteration in original) (quoting *Brown v. Bryan County*, 219 F.3d 450, 462 (5th Cir. 2000)).

A municipality may be liable under § 1983 if it maintained a widespread, persistent practice of allowing the use of excessive police force. *See Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984). In meeting their burden of showing that the municipality maintained such a practice, plaintiffs may attempt to

13

prove other similar incidents of the use and toleration of excessive force. *See id.* It is also well-settled that "a City policy of inadequate officer discipline could be unconstitutional if it was pursued with deliberate indifference toward the constitutional rights of citizens," and could be evidenced by a "purely formalistic investigation." *Piotrowski v. City of Houston*, 237 F.3d 567, 581-82 (5th Cir. 2001). Similarly, a municipality may be liable under § 1983 for inadequate training of officers if the failure to train amounts to deliberate indifference to the rights of persons with whom the police come in contact. *City of Canton*, 489 U.S. at 388.

Here, Plaintiffs have alleged several facts from which one could make a reasonable inference of a persistent, widespread practice by NOPD officers of conducting unlawful seizures and using excessive force rising to the level of a custom having the force of official City policy. First, Plaintiffs claim that the two NOPD officers were acting pursuant to an unlawful policy or custom "to interfere, stop, intimidate and harass civilians," predominantly in African American neighborhoods, who were engaging in lawful activities.[5] (Rec. Doc. 36, at 9.) In addition, Plaintiffs have

---

[5] In particular, the Amended Complaint contains an allegation that the City has developed and maintained the following policy:

    Authorizing, permitting, ratifying and condoning policies, practices, customs and procedures whereby constitutionally protected activities and gatherings involving the rights to speech, expression, association, locomotion and travel, particularly of African Americans and those who associate or frequent African

alleged a persistent, widespread practice of failing to train, supervise, and discipline NOPD officers, especially those assigned to street patrol or "jump-out"[6] units. *See id.* at 12-14. Plaintiffs also allege a custom of condoning a culture within the NOPD in which NOPD personnel had the reasonable belief that their actions would not be properly monitored and that their misconduct would not be thoroughly investigated or sanctioned, but instead would be tolerated and approved. *Id.* at 14. Taking all of their allegations to be true, the Court concludes that Plaintiffs have pleaded sufficient facts, at the motion to dismiss stage, from which one could make a reasonable inference of a persistent, widespread practice rising to the level of a custom having the force of official City policy.

The second element requires proof of an official policymaker with actual or constructive knowledge of the constitutional

---

American neighborhoods, and particularly those activities which have deep roots in the social, cultural, political and religious traditions of the African American community of New Orleans, have been the subject of disruption, interference, harassment and intimidation, in an effort to deter, frustrate, intimidate and have a chilling effect upon the rights of African American citizens to walk, stand, drive or gather in public places and areas where they have permission to be, and also to freely and lawfully associate with others without fear of police interference, harassment, intimidation or abuse.

(Rec. Doc. 36, at 13.)

[6] Some use the term "jump-out" units to describe police units that patrol high-crime areas seeking to stop individuals. *See United States v. Coleman*, No. 08-107, 2009 WL 395218, at *6 (D. Del. Feb. 17, 2009) ("In today's cities, police 'jump-outs' are prevalent . . . and orders are often given to officers by their superiors to stop every person walking the streets in particular areas of a city.").

violation. *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 167 (5th Cir. 2010). A policymaker is "one who takes the place of the governing body in a designated area of city administration." *Id.* (quoting *Webster*, 735 F.2d at 841). "The policymaker must have final policymaking authority." *Davis v. Tarrant County.*, 565 F.3d 214, 227 (5th Cir. 2009). Whether a particular official has "final policymaking authority" is a question of state law. *Id.* (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)).

Here, Plaintiffs have adequately alleged that an official policymaker can be charged with actual or constructive knowledge of an unconstitutional policy or custom. Plaintiffs allege that former NOPD Superintendent Compass was "responsible for the policies, practices, customs and procedures of the NOPD, as well as the hiring, training, supervision, discipline and control of police personnel under his command" and that he "was a final policymaker for the City of New Orleans relating to police practices, policies, customs and procedures." (Rec. Doc. 36, at 2.) Presumptive policymakers for the police include the mayor, the city council, and the superintendent of police. *See Webster*, 735 F.2d at 841-42; *see also* New Orleans, La., Code of Ordinances § 4-501 (establishing the superintendent of police as the head of the department of police).

To satisfy the "moving force" element, a plaintiff must show culpability and causation. *Valle*, 613 F.3d at 542. A municipality

is culpable under § 1983 if (1) an official policy is unconstitutional or (2) a facially innocuous policy was "promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." *Piotrowski*, 237 F.3d at 579 (quoting *Brown*, 520 U.S. at 407). "Deliberate indifference of this sort is a stringent test, and 'a showing of simple or even heightened negligence will not suffice' to prove municipal culpability." *Id.* A pattern of complaints by other citizens can evidence not only the existence of a policy but also deliberate indifference. *Id.* at 582. In addition to culpability, there must be a direct causal link between the municipal action and the deprivation of federal rights. *Id.* at 580.

Here, Plaintiffs have alleged sufficient facts to demonstrate that Superintendent Compass, as alleged to be the City's final policymaker, adopted or maintained unconstitutional policies with deliberate indifference to their known or obvious consequences. Plaintiffs allege that Officer Williams "had a long history of prior incidents involving misuse of force and mistreatment and violation of citizens' rights." (Rec. Doc. 36, at 6.) According to the Amended Complaint, Williams "had compiled an extensive record of incidents and civilian complaints for abuse of citizen[s'] rights," of which Compass was aware. *Id.* Yet, Compass failed to take appropriate steps to intervene or prevent this conduct. *Id.*

Further, Plaintiffs allege that Compass "set the tone and direction" for these incidents of police harassment and deprivation of rights by approving, ratifying, and condoning these actions and by communicating to NOPD officers, particularly those in street patrol or "jump-out" units, that they would be protected from discipline or accountability if they were charged or accused of misconduct. *Id.* at 8-9. For purposes of withstanding the instant motion to dismiss, these allegations are sufficient.

Contrary to the City Defendants' argument, Plaintiffs' allegations are sufficient to survive dismissal. In recent years, after *Twombly* and *Iqbal*, courts have split as to the level of specificity required for pleading municipal liability claims. *See Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 841-45 (S.D. Tex. 2011) (describing different approaches taken by courts). Fifth Circuit cases have continued to disapprove of complaints that merely recite failures to train, supervise, or discipline as an element of a municipal liability claim. *See, e.g.*, *Whitley*, 726 F.3d at 649 ("The proposed amended complaint makes no specific factual allegations of the county's policies and simply adds the words 'policies, practices, and/or customs' to Whitley's perceived wrongs. Such allegations are insufficient to survive dismissal."). Persuasive authority holds that a plaintiff can transcend bare, conclusory allegations to state a plausible claim for relief by identifying in the complaint, among other things, "past incidents

of misconduct to others, multiple harms that occurred to the plaintiff himself, misconduct that occurred in the open, the involvement of multiple officials in the misconduct, or the specific topic of the challenged policy or training inadequacy." *Thomas*, 800 F. Supp. 2d at 843-44 (footnotes omitted). "Where a plaintiff provides more than a boilerplate recitation of the grounds for municipal liability, and instead makes some additional allegation to put the municipality on fair notice of the grounds for which it is being sued, 'federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later.'" *Id.* (quoting *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168-69 (1993)).

In sum, Plaintiffs' Amended Complaint meets the pleading requirements because the City Defendants are given fair notice of Plaintiffs' municipal liability claims against them. Plaintiffs allege that Compass was a final policymaker, the NOPD had unconstitutional policies or a lack of policies, and that those policies were the moving force behind the alleged violations of Robair's constitutional rights. Plaintiffs make more than a boilerplate recitation of the grounds for municipal liability, and instead provide sufficient detail to put the City Defendants on fair notice of the grounds for which they are being sued.

Therefore, the City Defendants' motion for judgment on the pleadings is denied as to Plaintiffs' municipal liability claims.

### 2. Individual Capacity Claims

In addition to their municipal liability claims, Plaintiffs assert claims against Compass, Cannatella, Doe, and Roe in their individual capacities. In order to succeed on a § 1983 claim against an official in his individual capacity, a plaintiff must "establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation." *Jones v. Lowndes County*, 678 F.3d 344, 349 (5th Cir. 2012) (quoting *James*, 535 F.3d at 373). This standard requires more than conclusory assertions. *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002). Plaintiffs suing governmental officials in their individual capacities must satisfy a heightened pleading standard by alleging "specific conduct [and] facts giving rise to a constitutional violation." *Id.*

"Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). A supervisory official may be held liable under section 1983 only if "(1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 435

(5th Cir. 2008). "In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (alterations in original) (quoting *Gates*, 537 F.3d at 435). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (alteration in original) (quoting *Brown*, 520 U.S. at 410).

Plaintiffs' claims against Compass, Cannatella, Doe, and Roe in their individual capacities revolve around allegations of the failure to properly train and supervise, as well as a policy to promote aggressive street patrol or "jump-out" units where officers would essentially be relieved of the responsibility to comply with constitutional provisions and would be protected from the consequences of their illegal actions.

A supervisor may be liable for failure to supervise or train if "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Porter*, 659 F.3d at 446. "To establish deliberate

21

indifference, 'a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation.'" *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009) (quoting *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003)). Furthermore, "for a supervisor to be liable for failure to train, the focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform." *Id.* (quoting *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)). Moreover, "for liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective." *Id.* (quoting *Roberts*, 397 F.3d at 293).

Plaintiffs' allegations against Cannatella are contained in three paragraphs of the Amended Complaint. (Rec. Doc. 36, at 6.) First, Plaintiffs allege that Cannatella was aware that Williams had compiled an extensive record of incidents and complaints for abuse of citizens' rights, but he "failed to take appropriate, reasonable or necessary steps to intervene or to prevent or curtail [Williams's] misconduct and inappropriate behavior or to provide adequate supervision, monitoring or discipline." *Id.* Second, Plaintiffs allege that Cannatella was "in the chain of command over defendants Williams and Moore," was aware of the officers' background and actions, failed to intervene or take other

22

appropriate actions to prevent or remedy this situation, and instead "approved of, ratified and condoned the actions of the defendant officers." *Id.* at 7. Third, Plaintiffs allege that Cannatella, along with Compass, Doe, and Roe, "had knowledge of the wrongs done and conspired to be done as described herein, had the power to prevent or aid in the prevention of same, yet failed or refused to do so." *Id.* at 11.

Here, to the extent that the Amended Complaint can be read as asserting a claim under § 1983 against Cannatella for failure to supervise or train Williams and Moore, any such claim fails.[7] It is not disputed that Cannatella was not present at the scene and had no involvement in the acts that allegedly deprived Robair of his constitutional rights. Thus, Plaintiffs must allege sufficient facts to show that Cannatella failed to train or supervise the officers involved, that a causal link exists between Cannatella's failure to train or supervise and the violation of Robair's rights, and that Cannatella's failure to train or supervise amounts to deliberate indifference to Robair's rights. *See Porter*, 659 F.3d

---

[7] Likewise, to the extent Plaintiffs assert a claim against Cannatella under § 1983 for conspiring to violate civil rights, they have failed to adequately plead such a claim. To prove a conspiracy under § 1983, a plaintiff must show (1) an agreement between the defendants to commit an illegal act and (2) an actual deprivation of constitutional rights. *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994). "Plaintiffs who assert conspiracy claims under civil rights statutes must plead the operative facts upon which their claim is based. Bald allegations that a conspiracy existed are insufficient." *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987). The claims alleged against Cannatella in the Amended Complaint present conclusory statements and fail to allege facts sufficient to find liability for conspiracy.

at 446. Plaintiffs' allegations regarding Cannatella do not satisfy these elements. Plaintiffs fail to allege with specificity how Cannatella's training or supervision was defective. *See Goodman*, 571 F.3d at 395. In fact, Plaintiffs allege no facts about what training or supervision Cannatella provided or failed to provide. Further, Plaintiffs fail to assert sufficient factual allegations regarding Cannatella to meet the deliberate indifference standard. Therefore, their claims against Cannatella in his individual capacity must be dismissed.[8]

Similarly, Plaintiffs fail to state a claim against the unidentified NOPD supervisors, Sgt. J. Doe and Lt. R. Roe. Since this lawsuit was filed over nine years ago, Plaintiffs have taken no action to amend their complaint to name these NOPD supervisors. In fact, Plaintiffs appear to abandon any such claims against the unidentified defendants by failing to brief the issue in their memorandum in opposition to the instant motion.

On the other hand, Plaintiffs have sufficiently stated a claim against Compass in his individual capacity. As discussed above,

---

[8] In several places in their opposition, Plaintiffs request leave to amend their pleadings in the event that the Court grants dismissal of any claims under Rule 12(c). "These bare statements, however, unaccompanied by a proposed amendment, do not constitute a motion." *United Sates ex rel. Hebert v. Dizney*, 295 F. App'x 717, 725 n.3 (5th Cir. 2008); *accord United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) ("[A] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)." (citation omitted)). Accordingly, the Court will not consider Plaintiffs' requests for leave to amend at this time. Plaintiffs may file a proper motion for leave to amend. If Plaintiffs do so move, they must attach to their motion a proposed amended complaint.

Plaintiffs have alleged facts showing that Compass was responsible for promulgating and enforcing unconstitutional policies. In particular, Plaintiffs allege that Compass implemented a policy to promote aggressive street patrol activities where officers would essentially be relieved of the responsibility to comply with constitutional provisions and would be insulated from accountability for their illegal actions. Accordingly, Plaintiffs have stated a claim against Compass in his individual capacity because they have sufficiently alleged that "he implement[ed] unconstitutional policies that causally result[ed] in the constitutional injury." *Gates*, 537 F.3d at 435.

Moreover, Plaintiffs have pleaded sufficient allegations to avoid dismissal on the grounds that Compass is entitled to qualified immunity or immunity under state law. Officials sued in their individual capacities may assert the defense of qualified immunity. "The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Whitley*, 726 F.3d at 638 (quoting *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011)). The qualified immunity defense is intended to provide protection to "all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). For this reason, courts will not deny immunity unless "existing precedent . . . placed the statutory or constitutional question

25

beyond debate." *Id.* (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011)).

When a defendant invokes the defense of qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense. *Kitchen v. Dallas County*, 759 F.3d 468, 476 (5th Cir. 2014). A plaintiff seeking to overcome qualified immunity must plead sufficient facts to make it plausible "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Whitley*, 726 F.3d at 638 (quoting *al-Kidd*, 131 S. Ct. at 2080). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

To be "clearly established" for purposes of qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Kinney v. Weaver*, 367 F.3d 337, 349-50 (5th Cir. 2004) (alteration in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In practice, this generally turns on the "objective legal reasonableness" of the action, assessed in light of the legal rules that were "clearly established" at the time it was taken. *Anderson*, 483 U.S. at 639.

26

Here, the law is clearly established that a law enforcement officer's use of excessive force in the course of an arrest, investigatory stop, or other "seizure" of a free citizen violates that citizen's constitutional rights. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). Likewise, the law is clearly established that an official may be held liable under § 1983 for implementing a policy of allowing or tolerating the use of excessive police force. *Webster*, 735 F.2d at 842. Therefore, it is plausible from the facts alleged that Compass violated a clearly established constitutional right and his conduct was objectively unreasonable. Accordingly, on the face of the pleadings, Plaintiffs have negated Compass's qualified immunity defense for the purposes of this stage of the proceedings.

Plaintiffs also assert state law tort claims against the City Defendants pursuant to Louisiana law. Qualified immunity does not apply to Louisiana tort claims. Instead, Louisiana's discretionary immunity statute applies to those claims. The City Defendants argue that these claims should be dismissed pursuant Louisiana Revised Statute § 9:2798.1 because they are immune from liability.

Louisiana's discretionary immunity statute provides that "[l]iability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope

27

of their lawful powers and duties." La. Rev. Stat. § 9:2798.1(B). In determining whether immunity applies, Louisiana courts employ the two-step test set out by the United States Supreme Court in *Berkovitz v. United States*, 486 U.S. 531 (1988), for determining immunity under the Federal Tort Claims Act. *Commerce & Indus. Ins. Co. v. Grinnell Corp.*, 280 F.3d 566, 571 (5th Cir. 2002). The first step requires that the action at issue be discretionary. *Id.* Conduct cannot be discretionary unless it involves an element of judgment or choice. Thus, immunity does not apply "when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Id.* (quoting *Berkovitz*, 486 U.S. at 536).

If there is no statutory, regulatory, or procedural policy directive dictating the employees' course of conduct, then the court proceeds to the second step of the test. The second step requires a court to "determine whether that judgment is of the kind that the discretionary function exception was designed to shield." *Id.* at 572 (quoting *Berkovitz*, 486 U.S. at 536-37). The discretionary immunity statute was designed to protect governmental actions and decisions based on considerations of public policy. *See id.* Thus, the statute immunizes a public entity or employee from suit "[o]nly if the discretionary act was grounded in social, economic, or political policy." *Id.*

28

The immunity offered by Louisiana's discretionary immunity statute is in the nature of an affirmative defense which must be specifically pleaded in the defendant's answer. *White v. City of New Orleans*, 806 So. 2d 675, 677 (La. App. 4 Cir. 2001). As such, the defendant bears the burden of proving that this statutory immunity applies. *Johnson v. Orleans Par. Sch. Bd.*, 975 So. 2d 698, 710 (La. App. 4 Cir. 2008). Here, it is not apparent from the face of the pleadings that any discretion exercised by Compass was grounded in social, economic, or political policy. Accordingly, for purposes of the motion to dismiss, Plaintiffs have pleaded sufficient allegations to state a claim against Compass in his individual capacity.[9]

### 3.   Punitive Damages Against the City

Plaintiffs seek compensatory and punitive damages against all Defendants in this case. The City Defendants contend that Plaintiffs' claims for punitive damages from the City and Compass, Cannatella, Doe, and Roe in their official capacities should be dismissed because they are exempt from punitive damages in § 1983 cases. In *City of Newport v. Fact Concerts, Inc.*, the Supreme Court squarely held that municipalities are immune from punitive damages under § 1983. 453 U.S. 247, 271 (1981); *see also Webster*, 689 F.2d at 1228. As discussed above, an official capacity claim "is, in

---

[9] Defendants may raise their defenses of qualified immunity and discretionary immunity again in a summary judgment motion, after suitable discovery.

all respects other than name, to be treated as a suit against the [government] entity." *Graham*, 473 U.S. at 166. Therefore, although punitive damages can be assessed against an individual defendant sued in his individual capacity, punitive damages may not be levied against defendants in their official capacities. Thus, Plaintiffs' claims for punitive damages against the City and Compass, Cannatella, Doe, and Roe in their official capacities are dismissed with prejudice.

**B.   Motion for Summary Judgment**

In the alternative to dismissal under Rule 12(c), the City Defendants move for summary judgment. In response, relying on Rule 56(d) of the Federal Rules of Civil Procedure, Plaintiffs seek additional time to conduct limited discovery in order to respond to the City Defendants' motion.

Plaintiffs have provided an affidavit in which they describe the discovery that they seek to conduct. In particular, Plaintiffs wish to conduct limited discovery on the City's policies and practices related to the hiring, training, supervision, discipline, and investigation of its police officers and the policies and practices related to the street patrol units in which Officers Williams and Moore were engaged. According to Plaintiffs, this limited discovery would include the Rule 30(b)(6) deposition of the City on these topics and the depositions of NOPD officials with knowledge of the events alleged in the complaint. Plaintiffs

assert that they need this specific discovery in order to respond to the pending motion for summary judgment on their municipal liability and supervisory claims.

Generally, summary judgment is not appropriate before the opposing party has had a "full opportunity to conduct discovery." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). Indeed, "[s]ummary judgment assumes some discovery." *Brown v. Miss. Valley State Univ.*, 311 F.3d 328, 333 (5th Cir. 2002). Rule 56(d) permits a court to deny a motion for summary judgment, or to defer consideration of it, pending necessary discovery. Relief is available under Rule 56(d) when "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). The rule "allows for further discovery to safeguard non-moving parties from summary judgment motions that they cannot adequately oppose." *Culwell v. City of Fort Worth*, 468 F.3d 868, 871 (5th Cir. 2006).

Rule 56(d) motions are "broadly favored and should be liberally granted." *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010). The nonmovant, however, "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts." *Id.* Rather, a request to stay summary judgment under Rule 56(d) must "set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent

31

facts, if adduced, will influence the outcome of the pending summary judgment motion." *Id.* "If it appears that further discovery will not provide evidence creating a genuine issue of material fact, the district court may grant summary judgment." *Id.*

Here, Plaintiffs have sufficiently set forth a plausible basis for believing that additional discovery will provide evidence creating a genuine issue of material fact. Plaintiffs' claims involve allegations of informal policies and customs of the NOPD. It is exceedingly rare that a plaintiff will have access to or personal knowledge of specific details regarding the existence or absence of internal policies and training procedures prior to discovery. *See Thomas*, 800 F. Supp. 2d at 842 (collecting cases). Accordingly, the Court will deny the City Defendants' motion for summary judgment without prejudice.

<u>CONCLUSION</u>

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' *Joint Motion to Dismiss Pursuant to Fed. Rule Civ. Proc. 12(c) or in the Alternative Motion for Summary Judgment Pursuant to Fed. Rule Civ. Proc. 56* **(Rec. Doc. 67)** is **GRANTED IN PART** and **DENIED IN PART**. To the extent Defendants' motion seeks dismissal under Rule 12(c), it is **GRANTED** with respect to Plaintiffs' claims against Cannatella, Doe, and Roe in their individual capacities and Plaintiffs' claims for punitive damages against the Defendants in their official

capacities.  To  the  extent  Defendants'  motion  seeks  summary judgment  under  Rule  56,  it  is  **DENIED without prejudice** to being refiled following sufficient discovery.

   **IT IS FURTHER ORDERED** that Defendant Melvin Williams's *Motion to Continue the Submission Date of Defendants' Motion to Dismiss, Rec. Doc. 67* **(Rec. Doc. 87)** is **DENIED as moot**.

   **IT IS FURTHER ORDERED** that Plaintiffs' *Motion for Continuance of Submission Date on Defendants City, Compass and Cannatella's Joint Motion to Dismiss or in the Alternative Motion for Summary Judgment* **(Rec. Doc. 89)** is **DENIED as moot**.

   New Orleans, Louisiana, this 2nd day of May, 2016.


CARL J. BARBIER
UNITED STATES DISTRICT JUDGE