```
               UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF LOUISIANA


JUDONNA MITCHELL, ET AL.              CIVIL ACTION

VERSUS                                NO: 06-4021

CITY OF NEW ORLEANS, ET AL.           SECTION: "J"(4)
```

## ORDER & REASONS

Before the Court is a *Motion for Partial Summary Judgment Against the City of New Orleans on Application of State Law Provisions Regarding Caps on Damages* **(Rec. Doc. 100)** filed by Plaintiffs, Judonna Mitchell and LaShonda Saulsberry, and an opposition thereto (Rec. Doc. 108) filed by Defendant the City of New Orleans ("the City"). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED IN PART** and **DENIED IN PART**.

## FACTS AND PROCEDURAL BACKGROUND

This civil rights case arises from an incident involving two former New Orleans Police Department ("NOPD") officers that resulted in the death of Raymond Robair. On July 31, 2006, Plaintiffs, the adult daughters of Robair, filed this lawsuit against the City of New Orleans and various former employees of the NOPD. (Rec. Doc. 1.) Due to pending criminal proceedings that arose out of the same facts and circumstances, this matter was stayed on March 14, 2007. (Rec. Doc. 12.)

On July 29, 2010, the United States filed an indictment in the Eastern District of Louisiana against Melvin Williams and Matthew Dean Moore, the two NOPD officers involved in Robair's death. According to evidence presented at the criminal trial, Williams and Moore stopped Robair on a city street on the morning of July 30, 2005. While Moore restrained Robair, Williams kicked Robair in the side and struck him repeatedly with a metal baton. Robair suffered fractured ribs and a ruptured spleen, which triggered massive internal bleeding. Williams and Moore drove Robair to Charity Hospital, where they told medical personnel that they suspected Robair was suffering from a drug overdose. Neither officer mentioned that Robair's condition was a result of a trauma. Based on this information, the hospital staff initially treated Robair as an overdose patient. Robair was immediately taken to the operating room once doctors discovered that he had internal bleeding, but it was too late to save him. Robair was pronounced dead at Charity Hospital shortly after his arrival.

After Robair's death, Williams and Moore filled out an incident report describing their interactions with Robair and the staff at Charity Hospital. According to the report, the officers saw an unidentified man clutch his chest and fall to the ground, so they took the man to the hospital. The report did not mention Williams' use of force on Robair. Later, Moore falsely stated to the FBI that Williams never used force on Robair.

Following a jury trial, Williams was convicted of causing the death of Robair while depriving him of his civil rights, in violation of 18 U.S.C. § 242.[1] On appeal, the United States Court of Appeals for the Fifth Circuit affirmed the convictions and sentences. *See United States v. Moore*, 708 F.3d 639 (5th Cir. 2013). After all direct appeals in the criminal case concluded, the Court lifted the stay and reinstated this case to the Court's active docket. (Rec. Doc. 16.)

After the stay was lifted, Plaintiffs filed their First Amended Complaint. (Rec. Doc. 36.) Plaintiffs assert federal claims against the City under 42 U.S.C. §§ 1983 and 1988 for deprivation of civil rights. *Id.* at 11-14. In addition, Plaintiffs assert a survival action and wrongful death action under Louisiana law, seeking to recover damages suffered by Robair before death and damages suffered by the Plaintiffs as a result of the wrongful death of their father. *Id.* at 14.

Plaintiffs filed the instant *Motion for Partial Summary Judgment Against the City of New Orleans on Application of State Law Provisions Regarding Caps on Damages* **(Rec. Doc. 100)** on April 11, 2016. The City opposed the motion on April 26, 2016. The motion is now before the Court on the briefs.

---

[1] In addition, Williams and Moore were both convicted of aiding and abetting obstruction of justice by filing a false police report, and Moore was also convicted of making a false statement to the FBI.

**PARTIES' ARGUMENTS**

Plaintiffs move for a partial summary judgment ruling that Louisiana's $500,000 damages cap against a municipality for the wrongful death of any one person applies separately to Judonna Mitchell and to LaShonda Saulsberry, and another separate $500,000 cap applies to Plaintiffs' survival claim. (Rec. Doc. 100-1, at 1.) In short, Plaintiffs argue that the cap for wrongful death damages is applied "per plaintiff" rather than "per death victim," and a separate cap applies to their survival action damages. To be clear, Plaintiffs do not seek a ruling that they are entitled to damages on any of their claims. They seek only a ruling that, in the event they are awarded damages on their wrongful death claims and survival claim, three $500,000 caps are allowed: (1) a $500,000 cap on Mitchell's wrongful death claim; (2) a $500,000 cap on Saulsberry's wrongful death claim; and (3) a $500,000 cap on their survival action claim.

In response, the City stipulates that the $500,000 statutory cap is applicable. (Rec. Doc. 108, at 1.) However, the City argues that each Plaintiff is not entitled to a separate $500,000 statutory cap for wrongful death damages. *Id.* According to the City, the law is clear that the total liability of the City for wrongful death damages cannot exceed $500,000, regardless of the number of wrongful death claimants. *Id.* at 2-3. In addition, the City clarifies its position that is it not liable to Plaintiffs

4

for damages and asserts that the trier of fact must assess the percentage of fault attributable to the City, if any, if this matter goes to trial. *Id.* at 3-4.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed

verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g.*, *id.* at 325.

## DISCUSSION

Although both actions arise from a common tort, survival and wrongful death actions are separate and distinct. *Taylor v. Giddens*, 618 So. 2d 834, 840 (La. 1993) (citing *Guidry v. Theriot*, 377 So. 2d 319 (La. 1979)). "Each right arises at a different time and addresses itself to the recovery of damages for totally different injuries and losses." *Id.* The survival action comes into

6

existence simultaneously with the existence of the tort and is transmitted to certain designated beneficiaries upon the victim's death. *Id.; see also* La. Civ. Code art. 2315.1. Unlike the wrongful death action, the survival action permits recovery for the damages suffered by the victim from the time of injury to the moment of death. *Taylor*, 618 So. 2d at 840. On the other hand, the wrongful death action does not arise until the victim dies and it compensates the beneficiaries for their own injuries that they sustained as a result of the victim's wrongful death. *Id.; see also* La. Civ. Code art. 2315.2.

The amount of general damage awards for survival and wrongful death actions brought against a state agency or political subdivision are controlled by Louisiana Revised Statutes section 13:5106(B) ("R.S. 13:5106(B)"). The statutory cap on general damages assessed against a state agency or political subdivision was first enacted by Act 452 of 1985. *See* 1985 La. Acts 867. Act 452 was one of six separate statutory measures the legislature enacted in 1985 to relieve the State from some of the ordinary burdens of tort liability. *See Chamberlain v. State Through Dep't of Transp. & Dev.*, 624 So. 2d 874, 878 (La. 1993). In short, the legislative goal prompting the enactment of the statutory cap was to protect the public fisc. *Id.*

In *Chamberlain v. State Through Department of Transportation & Development*, the Louisiana Supreme Court declared the statutory

cap unconstitutional, reasoning that the provision contravened the proscription against sovereign immunity from substantive tort liability provided in article XII, section 10(A) of the Louisiana Constitution. 624 So. 2d at 881. In response to *Chamberlain*, the legislature passed Act 1328 of 1995, which proposed an amendment to the constitution to allow the statutory cap. *See* 1995 La. Acts 3973. In anticipation of approval, the legislature amended R.S. 13:5106(B) to limit the recovery of general damages to "the limit of liability in effect at the time of judicial demand," which was $750,000 as of the effective date of the amendment. *Castille v. State ex rel. Dep't of Transp. & Dev.*, 758 So. 2d 823, 825 (La. App. 3 Cir. 2000). Louisiana voters approved Act 1328, and the act became effective on November 23, 1995. Thereafter, the legislature amended R.S. 13:5106(B) again in 1996 to reinstitute a fixed limitation of $500,000 on general damages. *See* Acts 1996, No. 63, § 1, 1996 La. Acts 922, 924.

Plaintiffs first argue that the $500,000 statutory cap on general damages for wrongful death applies separately to Judonna Mitchell and LaShonda Saulsberry. Essentially, Plaintiffs assert that the cap for wrongful death damages provided in R.S. 13:5106(B)(2) is applied "per plaintiff" rather than "per death victim." Plaintiffs rely on *Lockett v. State, Department of Transportation & Development*, 869 So. 2d 87 (La. 2004) *overturned due to legislative action*, Acts 2005, No. 1, 2005 La. Acts 1. In

*Lockett*, the Louisiana Supreme Court analyzed the legislative history of the statutory cap to resolve a split among the circuit courts over whether the cap for wrongful death damages is applied "per death victim" or "per plaintiff." *Id.* at 89. Application of the rules of interpretation failed to illuminate definitively the legislature's intent, and the court reasoned that both constructions were equally plausible. *Id.* at 94. Ultimately, the court held that R.S. 13:5106(B)(2) allows for multiple $500,000 caps in wrongful death actions in accordance with a "per plaintiff" construction. *Id.* at 94-95.

Shortly after the court's decision, the legislature enacted Act 1 of 2005 to amend R.S. 13:5106 with the specific intent of reversing the outcome of *Lockett*. *See* 2005 La. Acts at 2 ("The provisions of this Act are intended to explain the original intent of the legislature, notwithstanding the contrary interpretation by the Louisiana Supreme Court in *Lockett v. the State of Louisiana, Department of Transportation and Development*, 2003-1767 (La. 2/25/04) 869 So.2d 87.").

As amended in 2005, R.S. 13:5106(B) provides as follows:

> (1) The total liability of the state and political subdivisions for all damages for personal injury to any one person, including all claims and derivative claims,[2] exclusive of property damages, medical care and related benefits and loss of earnings, and loss of future earnings, as provided in this Section, shall not exceed five hundred thousand dollars, regardless of the number

---

[2] A "derivative claim" includes a claim for survival. La. Rev. Stat. § 13:5106(D)(4).

>    of suits filed or claims made for the personal injury to
>    that person.
>
>    (2) The total liability of the state and political
>    subdivisions for all damages for wrongful death of any
>    one person, including all claims and derivative claims,
>    exclusive of property damages, medical care and related
>    benefits and loss of earnings or loss of support, and
>    loss of future support, as provided in this Section,
>    shall not exceed five hundred thousand dollars,
>    regardless of the number of suits filed or claims made
>    for the wrongful death of that person.

La. Rev. Stat. § 13:5106(B). Thus, contrary to Plaintiffs' argument, the legislature has made clear that R.S. 13:5106(B)(2) is applied "per death victim" and allows for a single $500,000 cap, "*regardless of the number of claims made for the wrongful death of any one person.*" *Id.* (emphasis added).

Next, Plaintiffs argue that a separate $500,000 cap applies to their survival action claim for personal injury damages. This issue does not appear to be in dispute. The City "agrees that there is the potential for two damage awards, one for survival damages and one for wrongful death." (Rec. Doc. 108, at 2.)

The Louisiana Supreme Court has not addressed or decided whether separate $500,000 caps apply to personal injury damages and wrongful death damages. "In the absence of such a decision, '[federal courts] must make an *Erie* guess and determine, in [their] best judgment, how [the supreme court of that state] would resolve the issue if presented with the same case.'" *Temple v. McCall*, 720 F.3d 301, 307 (5th Cir. 2013) (alterations in original) (quoting

10

*Six Flags, Inc. v. Westchester Surplus Lines Ins. Co.*, 565 F.3d 948, 954 (5th Cir. 2009)). "In making an *Erie* guess, [federal courts] defer to intermediate state appellate court decisions, unless convinced by other persuasive data that the highest court of the state would decide otherwise." *Id.* (alteration in original) (quoting *Mem'l Hermann Healthcare Sys. Inc. v. Eurocopter Deutschland*, 524 F.3d 676, 678 (5th Cir. 2008)); *see also Six Flags*, 565 F.3d at 954 ("In making an *Erie* guess, we must employ Louisiana's civilian methodology, whereby we first examine primary sources of law: the constitution, codes, and statutes.").

A majority of Louisiana courts have interpreted R.S. 13:5601 "to provide one $500,000.00 cap on personal injury damages (including survival actions for those personal injury damages) and one $500,000.00 cap for wrongful death damages." *Dakmak v. Baton Rouge City Police Dep't*, 153 So. 3d 498, 508-09 (La. App. 1 Cir. 2014); *see also Himel v. State ex rel. Dep't of Transp. & Dev.*, 887 So. 2d 131, 142-43 (La. App. 5 Cir. 2004); *Barrilleaux v. Barthelemy*, 844 So. 2d 1006, 1010 (La. App. 4 Cir. 2003). *But see Miller v. Thibeaux*, 184 So. 3d 856, 869 (La. App. 3 Cir.) (holding that both survival and wrongful death claims are subject to a single $500,000 statutory cap), *writ denied*, 2016 WL 1719358 (La. Apr. 15, 2016). Because the City has not convinced this Court otherwise, this Court's *Erie* guess is that a separate $500,000 cap applies to Plaintiffs' survival claim.

11

In conclusion, Louisiana law is clear that a single $500,000 statutory cap applies to damages for the wrongful death of any one person, regardless of the number of claims made for that wrongful death. Further, a majority of Louisiana courts have held that a separate $500,000 cap applies to damages for personal injury, including survival actions for those damages. As a result, in the event that Plaintiffs are awarded damages on their wrongful death claims, the City's total liability for general damages for Raymond Robair's wrongful death shall not exceed $500,000. Additionally, in the event that Plaintiffs are awarded damages for their survival claim, the City's total liability for general damages for Robair's personal injury shall not exceed $500,000.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' *Motion for Partial Summary Judgment Against the City of New Orleans on Application of State Law Provisions Regarding Caps on Damages* **(Rec. Doc. 100)** is **GRANTED IN PART** and **DENIED IN PART** as set forth above.

New Orleans, Louisiana, this 13th day of May, 2016.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE