UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JUDONNA MITCHELL ET AL.                 CIVIL ACTION

VERSUS                                  NO: 06-4021

CITY OF NEW ORLEANS ET AL.              SECTION: "J"(4)

## ORDER & REASONS

Before the Court is a *Motion for Partial Summary Judgment Against Defendants Melvin Williams and the City of New Orleans* **(Rec. Doc. 95)** filed by Plaintiffs, Judonna Mitchell and LaShonda Saulsberry; an opposition (Rec. Doc. 102) filed by Defendant the City of New Orleans; an opposition (Rec. Doc. 118) filed by Defendant Melvin Williams; and Plaintiffs' reply (Rec. Doc. 128). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED** for the reasons set forth more fully below.

## FACTS AND PROCEDURAL BACKGROUND

This civil rights case arises from an incident involving two former New Orleans Police Department ("NOPD") officers that resulted in the death of Raymond Robair. On July 31, 2006, Plaintiffs, the adult daughters of Robair, filed this lawsuit against the City of New Orleans ("City") and various former employees of the NOPD. (Rec. Doc. 1.) Due to pending criminal

proceedings that arose out of the same facts and circumstances, this matter was stayed on March 14, 2007. (Rec. Doc. 12.)

On July 29, 2010, the United States filed an indictment in the Eastern District of Louisiana against Melvin Williams and Matthew Dean Moore, the two NOPD officers involved in Robair's death. According to evidence presented at the criminal trial, Williams and Moore stopped Robair on a city street on the morning of July 30, 2005. While Moore restrained Robair, Williams kicked Robair in the side and struck him repeatedly with a metal baton. Robair suffered fractured ribs and a ruptured spleen, which triggered massive internal bleeding. Williams and Moore drove Robair to Charity Hospital, where they told medical personnel that they suspected Robair was suffering from a drug overdose. Neither officer mentioned that Robair's condition was a result of a trauma. Based on this information, the hospital staff initially treated Robair as an overdose patient. Robair was immediately taken to the operating room once doctors discovered that he had internal bleeding, but it was too late to save him. Robair was pronounced dead at Charity Hospital shortly after his arrival.

After Robair's death, Williams and Moore filled out an incident report describing their interactions with Robair and the staff at Charity Hospital. According to the report, the officers saw an unidentified man clutch his chest and fall to the ground, so they took the man to the hospital. The report did not mention

2

Williams' use of force on Robair. Later, Moore falsely stated to the FBI that Williams never used force on Robair.

Following a jury trial, Williams was convicted of causing the death of Robair while depriving him of his civil rights, in violation of 18 U.S.C. § 242.[1] On appeal, the United States Court of Appeals for the Fifth Circuit affirmed the convictions and sentences. *See United States v. Moore*, 708 F.3d 639 (5th Cir. 2013). After all direct appeals in the criminal case concluded, the Court lifted the stay and reinstated this case to the Court's active docket. (Rec. Doc. 16.)

After the stay was lifted, Plaintiffs filed their First Amended Complaint. (Rec. Doc. 36.) Plaintiffs assert federal claims against the City under 42 U.S.C. §§ 1983 and 1988 for deprivation of civil rights. *Id.* at 11-14. In addition, Plaintiffs assert a survival action and wrongful death action under Louisiana law, seeking to recover damages suffered by Robair before death and damages suffered by the Plaintiffs as a result of the wrongful death of their father. *Id.* at 14.

Plaintiffs filed the instant *Motion for Partial Summary Judgment Against Defendants Melvin Williams and the City of New Orleans* **(Rec. Doc. 95)** on April 5, 2016. The City opposed the motion on April 11, 2016. Upon an unopposed motion filed by

---

[1] In addition, Williams and Moore were both convicted of aiding and abetting obstruction of justice by filing a false police report, and Moore was also convicted of making a false statement to the FBI.

Williams, the Court continued the submission date to May 4, 2016. On May 5, 2016, the Court granted Williams leave to file his opposition after the deadline. Upon Plaintiffs' motion, the Court continued the submission date to June 1, 2016. The Court granted Plaintiffs leave to file their reply on May 25, 2016. The motion is now before the Court on the briefs.

## **LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g.*, *id.* at 325; *Little*, 37 F.3d at 1075.

## PARTIES' ARGUMENTS AND DISCUSSION

Plaintiffs move for partial summary judgment against Melvin Williams and the City of New Orleans on four categories of claims.

First, Plaintiffs seek summary judgment on their § 1983 claim against Williams for use of excessive force in violation of the Fourth Amendment of the United States Constitution. Second, Plaintiffs seek summary judgment on their state law wrongful death and survival claims against Williams for his actions resulting in the death of Raymond Robair. Third, Plaintiffs seek summary judgment on their state law vicarious liability claims against the City, as Williams's employer, for Williams's tortious misconduct. Fourth, Plaintiffs seek summary judgment on part of their § 1983 claim against the City for municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

Plaintiffs support their motion with three types of evidence: (1) the Defendants' responses to Plaintiffs' requests for admission; (2) facts established in the federal criminal conviction of Williams, which Plaintiffs argue are conclusively established for purposes of this motion under the doctrine of collateral estoppel; and (3) testimony of Williams and Matthew Dean Moore from their criminal trial.

**A.    Section 1983 Claim Against Williams**

As an initial matter, Plaintiffs contend that the factual issues essential to the federal criminal conviction of Williams under 18 U.S.C. § 242 are conclusively established for purposes of this motion under the doctrine of collateral estoppel. In opposition, Williams concedes that Plaintiffs' argument might have

6

some legal merit but argues that the Court should deny Plaintiffs' motion and allow for some discovery to be had to ensure that there is a sufficient factual basis for Plaintiffs' estoppel argument.

Williams fails to show that he cannot present facts essential to justify his opposition for specified reasons by affidavit or declaration, as required by Rule 56(d).[2] Williams asserts in his opposition that "it would be reasonable to allow [his recently-enrolled counsel] the opportunity to obtain and review the records of the criminal prosecution [and] the verdict" prior to answering Plaintiffs' motion. (Rec. Doc. 118, at 5 n.4.) However, the transcript of Williams's criminal trial is public record, and Plaintiffs have submitted evidence showing that Williams's former counsel and current counsel have received extensive discovery throughout the course of this suit. Moreover, the Court has twice continued the submission date of this motion and granted Williams leave to file his opposition after the deadline. It does not appear that further discovery, or further review of the documents produced, will provide evidence essential to justify Williams's opposition.

---

[2] The party seeking to obtain a continuance of a motion for summary judgment in order to obtain further discovery must indicate to the court (1) "why he needs additional discovery" and (2) "*how* the additional discovery will create a genuine issue of material fact." *Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435, 1442 (5th Cir. 1993). "If it appears that further discovery will not provide evidence creating a genuine issue of material fact, the district court may grant summary judgment." *Id.*

Collateral estoppel, also known as "issue preclusion," precludes litigating an issue if the identical question has been litigated in a prior suit which could not have been decided without its resolution. *See Bradberry v. Jefferson County*, 732 F.3d 540, 548-49 (5th Cir. 2013). Offensive use of collateral estoppel occurs when the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 356 n.4 (1979).

It is well established that a prior criminal conviction may work as an estoppel against the defendant in a subsequent civil proceeding. *Emich Motors Corp. v. Gen. Motors Corp.*, 340 U.S. 558, 568 (1951). "In the case of a criminal conviction based on a jury verdict of guilty, issues which were essential to the verdict must be regarded as having been determined by the judgment." *Id.* at 569. "Because of the existence of a higher standard of proof and greater procedural protection in a criminal prosecution, a conviction is conclusive as to an issue arising against the criminal defendant in a subsequent civil action." *United States v. Thomas*, 709 F.2d 968, 972 (5th Cir. 1983).

To apply collateral estoppel offensively, the plaintiff must show that four conditions are met: "(1) the issue under consideration is identical to that litigated in the prior action; (2) the issue was fully and vigorously litigated in the prior

action; (3) the issue was necessary to support the judgment in the prior case; and (4) there is no special circumstance that would make it unfair to apply the doctrine." *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 391 (5th Cir. 1998). Courts have broad discretion to determine whether the offensive collateral estoppel bar should apply. *Id.* at 92.

Here, the underlying issue is whether Williams is liable as a matter of law for Plaintiffs' § 1983 claim, on account of his criminal conviction under § 242. In order to prevail under § 1983, "a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013). Similarly, to prove a violation of § 242, "the government must prove beyond a reasonable doubt that the defendant: (1) willfully; (2) deprived another of a federal right; (3) under color of law." *United States v. Moore*, 708 F.3d 639, 645 (5th Cir. 2013).

Substantively, Plaintiffs allege that Williams used excessive force in violation of the Fourth Amendment right against unreasonable seizure. Likewise, the indictment upon which Williams was ultimately convicted charged him with willfully depriving Robair of the right to be free from the use of unreasonable force from a law enforcement officer, thereby causing bodily injury and death. "To prevail on an excessive force claim, a plaintiff must

establish: (1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Harris v. Serpas*, 745 F.3d 767, 772 (5th Cir. 2014). The Fourth Amendment analysis under § 242 is identical to that employed in § 1983 excessive force claims. *See United States v. Brugman*, 364 F.3d 613, 616 (5th Cir. 2004).

The predominant issue determined during Williams's criminal proceedings is identical to the issue now before the Court. In fact, § 1983 and § 242 are generally considered analogues. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 214 n.23 (1970) (explaining that the "linguistic differences" between § 1983 and § 242 "have not been thought to be substantive"); *Fundiller v. City of Cooper*, 777 F.2d 1436, 1439 (11th Cir. 1985) (describing § 242 as "the criminal counterpart to section 1983"); *United States v. Stokes*, 506 F.2d 771, 776 (5th Cir. 1975) (describing § 1983 as "the civil counterpart to § 242"). Moreover, this is not an issue of first impression in the Fifth Circuit. *See, e.g.*, *Page v. Starks*, No. 14-221, 2016 WL 347585, at *2-3 (N.D. Miss. Jan. 28, 2016) (holding that former police officer who pleaded guilty to depriving the plaintiff of his Fourth Amendment rights in violation of § 242 was liable as a matter of law for plaintiff's excessive force claim under § 1983); *Vela v. Alvarez*, 507 F. Supp. 887, 889 (S.D. Tex. 1981) (same).

The remaining conditions for application of collateral estoppel are also met in this case. Because Williams was convicted by a jury after a full trial, there can be no dispute that the issue presently under consideration was fully and vigorously litigated in the prior action. For the reasons discussed above, the Court also finds that the issue was necessary to support Williams's criminal conviction. Without establishing Williams had violated Robair's Fourth Amendment right to be free from the use of unreasonable force, an essential element under § 242, the deprivation of a federal constitutional right, would not have been satisfied.

Lastly, no special circumstances exist that would make it unfair to apply collateral estoppel. The Supreme Court has set out three special circumstances that would make issue preclusion unfair: (1) when the plaintiff easily could have joined the previous action but chose not to; (2) if the defendant had little incentive to defend vigorously; and (3) if the judgment upon which the plaintiff seeks to rely is itself inconsistent with a previous judgment in favor of the defendant. *Parklane Hosiery*, 439 U.S. at 330-31. None of those circumstances are applicable here. Therefore, precluding Williams from relitigating whether he violated Robair's Fourth Amendment right to be free from the use of unreasonable force would be neither inappropriate nor unfair.

Accordingly, the Court finds the doctrine of collateral estoppel applies in this instance and Plaintiffs may introduce the prior judgment to establish all matters of fact and law necessarily decided by the conviction and the verdict on which it was based. As a result, each of the elements for Plaintiffs' § 1983 claim against Williams is conclusively established. Because there is no genuine issue of material fact as to whether Williams, while acting under color of state law, used excessive force in violation of the Fourth Amendment, which resulted in bodily injury and death, Plaintiffs are entitled to summary judgment on their § 1983 claim against Williams.

**B.   State Law Wrongful Death and Survival Claims Against Williams**

Plaintiffs also move for summary judgment against Williams on their state law claims for wrongful death and survival. The foundation for Louisiana tort law is found in Louisiana Civil Code article 2315: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. Civ. Code art. 2315. Under this article, a person may recover damages for injuries caused by a wrongful act of another. *Landry v. Bellanger*, 851 So. 2d 943, 949 (La. 2003). Furthermore, Louisiana embraces a broad civilian concept of "fault" that encompasses liability based on negligence or intentional misconduct. *Id.*

12

Under Louisiana law, excessive force claims are analyzed under general negligence laws, which employ a duty-risk analysis. *Manis v. Zemlik*, 96 So. 3d 509, 513 (La. App. 5 Cir. 2012). Police officers owe a duty of reasonableness when effecting an arrest or approaching a subject. *Id.* (citing La. Code Crim. Proc. art. 220). The use of excessive force transforms an otherwise lawful arrest into an actionable battery, rendering the officer and his employer liable for any injuries which result. *Id.* (citing *Kyle v. City of New Orleans*, 353 So. 2d 969 (La. 1977)). If the arrest is unlawful then all force used to effectuate the arrest is excessive and constitutes a battery.[3] *See Ross v. Sheriff of Lafourche Par.*, 479 So. 2d 506, 510 (La. App. 1 Cir. 1985) ("[T]he physical attack of a private citizen by a police officer absent a valid arrest constitutes a battery.").

In Louisiana, excessive force claims are analyzed under a reasonableness standard similar to that used to evaluate § 1983 excessive force claims. *Kyle*, 353 So. 2d at 972-73. "Whether the force used is reasonable depends upon the totality of the facts and circumstances in each case," and the factors to consider are analogous to the factors under federal law. *Id.* at 973. In fact,

---

[3] Under Louisiana law, the intentional tort of battery is a harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact. *Landry*, 851 So. 2d at 949. "The defendant's intention need not be malicious nor need it be an intention to inflict actual damage. It is sufficient if the defendant intends to inflict either a harmful or offensive contact without the other's consent." *Id.* (citing *Caudle v. Betts*, 512 So. 2d 389, 391 (La. 1987)).

"Louisiana's excessive force tort mirrors its federal constitutional counterpart." *Deville v. Marcantel*, 567 F.3d 156, 172 (5th Cir. 2009). Therefore, the Fifth Circuit has explained that a court's decision on a plaintiff's Louisiana excessive force claim will mirror its decision on the plaintiff's § 1983 excessive force claim. *Id.* at 173.

Given the similarity between excessive force claims under § 1983 and Louisiana law, the doctrine of collateral estoppel is equally applicable to Plaintiffs' pendent state law claims. *See Vela*, 507 F. Supp. at 889-91 (holding that police officer's criminal conviction under § 242 worked as offensive collateral estoppel in plaintiff's subsequent civil case against the officer on pendent state law claim of assault and battery). As discussed above, a jury convicted Williams of willfully depriving Robair of his right to be free from excessive force. In affirming this conviction, the Fifth Circuit held that the evidence in the record, particularly testimony from witnesses who saw Williams kick Robair while he was on the ground, supported the jury's verdict. *Moore*, 108 F.3d at 646. Furthermore, the Fifth Circuit concluded that Williams's behavior in kicking and beating Robair was a "gross deviation from a reasonable standard of care" and that evidence in the record supported a finding that Williams acted with an intent to do bodily harm. *Id.* at 648. These are the elements to prove a

claim for excessive force and intentional battery under Louisiana law.

Because Robair died as a result of the injuries Williams inflicted on him, Williams's battery and use of excessive force against Robair gives rise to two distinct causes of action: a survival action under article 2315.1 and a wrongful death action under 2315.2. Although both actions arise from a common tort, survival and wrongful death actions are separate and distinct. *Taylor v. Giddens*, 618 So. 2d 834, 840 (La. 1993) (citing *Guidry v. Theriot*, 377 So. 2d 319 (La. 1979)). The survival action comes into existence simultaneously with the existence of the tort and is transmitted to certain designated beneficiaries upon the victim's death. *Id.; see also* La. Civ. Code art. 2315.1. Unlike the wrongful death action, the survival action permits recovery for the damages suffered by the victim from the time of injury to the moment of death. *Taylor*, 618 So. 2d at 840. On the other hand, the wrongful death action does not arise until the victim dies and it compensates the beneficiaries for their own injuries that they sustained as a result of the victim's wrongful death. *Id.; see also* La. Civ. Code art. 2315.2.

In the criminal conviction, the jury found that Williams's violation of Robair's civil rights resulted in Robair's death. (Rec. Doc. 95-6.) On appeal, the Fifth Circuit affirmed, finding that a jury could reasonably conclude from the evidence that

15

Robair's death was proximately caused by and the foreseeable result of being kicked in the chest by Williams. *Moore*, 708 F.3d at 647. Consequently, there is no genuine issue of material fact that Williams's fault caused Robair's death. Furthermore, in this case, Plaintiffs are Robair's adult daughters, as confirmed by a court order of filiation. (Rec. Doc. 95-13.) As such, Plaintiffs are the proper parties to recover Robair's damages through the survival action, *see* La. Civ. Code art. 2315.1(A)(1), and to recover damages for his wrongful death, *see* La. Civ. Code art. 2315.2(A)(1). Accordingly, Plaintiffs are entitled to summary judgment against Williams on their state law claims for wrongful death and survival.

## C.   State Law Vicarious Liability Against the City

Next, Plaintiffs move for summary judgment against the City on their state law wrongful death and survival claims, under the theory that the City is vicariously liable for Williams's conduct. In opposition, the City argues that Plaintiffs' motion should be denied in this regard because there are genuine issues in dispute as to whether Williams was acting in the course and scope of his employment at the time he committed the criminal acts against Robair.

Under Louisiana law, municipalities do not enjoy special protection from vicarious liability and are subject to respondeat superior like every other employer. *Deville*, 567 F.3d at 173-74. The principle of vicarious liability or respondeat superior is

codified in Louisiana Civil Code article 2320, which provides that an employer is liable for the tortious acts of its employees "in the exercise of the functions in which they are employed." La. Civ. Code art. 2320. Thus, the issue for the Court is whether Williams's tortious conduct against Robair was sufficiently employment-related that vicarious liability should attach.

The threshold question is whether the employee's conduct was in the course and scope of his employment. The "course of" employment refers to the time and place, while the "scope of" employment refers to being engaged in the functions for which employed. *See Russell v. Noullet*, 721 So. 2d 868, 871 (La. 1998). The inquiry requires the trier of fact to determine whether the employee's tortious conduct was "so closely connected in time, place and causation to his employment-duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interests." *Id.* (quoting *LeBrane v. Lewis*, 292 So. 2d 216, 218 (La. 1974)).

The question of whether an employee's tortious conduct was sufficiently employment-related that a court should impose vicarious liability upon the employer is a mixed question of fact and law. *Id.* In *LeBrane v. Lewis*, the Louisiana Supreme Court identified four factors to be considered in determining vicarious liability: (1) whether the tortious act was primarily employment

17

rooted; (2) whether the tortious act was reasonably incidental to the performance of the employee's duties; (3) whether the act occurred on the employer's premises; and (4) whether it occurred during the hours of employment. 292 So. 2d at 218. It is not necessary that all four factors be met in order to find liability; each case must be decided on its specific facts. *Bates v. Caruso*, 881 So. 2d 758, 762 (La. App. 4 Cir. 2004).

Generally, an employee's conduct is within the course and scope of his employment if "the conduct is of the kind that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer." *Orgeron v. McDonald*, 639 So. 2d 224, 226-27 (La. 1994). That the predominant motive of the employee is to benefit himself does not prevent the employee's conduct from falling within the scope of his employment. *Ermert v. Hartford Ins. Co.*, 559 So. 2d 467, 477 (La. 1990). If the purpose of serving the employer's business actuates the employee to any appreciable extent, the employer is subject to liability. *Richard v. Hall*, 874 So. 2d 131, 138 (La. 2004).

In contrast to negligence cases, in which the focus is on the employee's general activities at the time of the accident, in intentional tort cases the court must determine "whether the tortious act itself was within the scope of the servant's employment." *Ermert*, 559 So. 2d at 478. Importantly, however, "the

18

fact that an act is forbidden or is done in a forbidden manner does not remove that act from the scope of employment." *Price v. La. Dep't of Transp. & Dev.*, 608 So. 2d 203, 210 (La. App. 4 Cir. 1992). "The scope of risks attributable to an employer increases with the amount of authority and freedom of action granted to the servant in performing his assigned tasks." *Richard*, 874 So.2d at 138.

"In police cases, Louisiana courts give special weight to the authority wielded by on-duty police officers in performing the vicarious liability analysis." *Doe v. Morris*, No. 11-1532, 2013 WL 3933928, at *4 (E.D. La. July 30, 2013). For example, in *Applewhite v. City of Baton Rouge*, the court held the City of Baton Rouge vicariously liable for a police officer's rape of a woman while he was performing duties for the city. 390 So. 2d 119, 120-22 (La. App. 1 Cir. 1979). The plaintiff in that case was walking along the highway with companions when a uniformed on-duty officer ordered her into his police car to be taken to jail for vagrancy. *Id.* at 120. The officer then parked his car and forced the plaintiff to engage in sex. *Id.* Although the City of Baton Rouge maintained that the officer's actions were far removed from the course and scope of his employment, the court found otherwise. The court found it significant that the officer "was on duty in uniform and armed, and was operating a police unit at the time of this incident." *Id.* at 121.

The court in *Applewhite* also emphasized that a police officer is "a public servant given considerable public trust and authority." *Id.* After reviewing Louisiana jurisprudence in the context of police officers, the court concluded that "almost uniformly, where excesses are committed by such officers, their employers are held to be responsible for their actions even though those actions may be somewhat removed from their usual duties." *Id.; see also Cheatham v. Lee*, 277 So. 2d 513 (La. App. 1 Cir. 1973) (holding city vicariously liable for battery committed by officer who was in uniform and armed but was off duty and chaperoning private party outside of city limits); *Bourque v. Lohr*, 248 So. 2d 901 (La. App. 1 Cir. 1971) (holding city vicariously liable for torts committed by an off-duty officer, uniformed officer in his private vehicle).

On the other hand, the Louisiana Supreme Court's decisions finding no vicarious liability for torts committed by police officers are distinguishable from the instant case. For example, in *Russel v. Noullet*, the Louisiana Supreme Court held that an off-duty police officer's assault of a bystander and shooting into a crowd of people were outside the course and scope of his employment. 721 So. 2d at 870-73. In that case, the officer was off duty, not wearing his uniform, and drinking at a social gathering when one of his brothers got into a fight and a crowd gathered. *Id.* at 870-71. The officer assaulted a bystander who

20

informed him that she intended to report him to the police, and he then shot his gun into the crowd to protect himself from the pursuing mob. *Id.* at 872-73.

The City relies primarily on *Pendergast v. Leal*, No. 98-3730, 2001 WL 777032 (E.D. La. July 10, 2001). In *Pendergast*, an officer of the Gretna Police Department persuaded the plaintiff to quit her job and pursue employment as an Intelligence Analyst with the United States Customs Service. *Id.* at *1. At the time, the officer was assigned to the High Intensity Drug Trafficking Area ("HIDTA"), a task force comprised of federal and local agencies, and was supervised by a Customs Special Agent. *Id.* The officer presented the plaintiff with a letter purportedly "selecting" her for employment, and her purported "work" consisted of driving around with the officer to various locations and conducting surveillance. *Id.* However, the plaintiff was never a federal employee. The court held that the City of Gretna could not be held vicariously liable because the officer was assigned to the HIDTA task force and the only involvement the Gretna Police Department had with the officer at the time was paying his salary. *Id.* at *4. Moreover, the court reasoned that the officer's deception was not incidental to his employment because the officer did not have any administrative, personnel, or procurement duties; he had no authority to hire or fire anyone. *Id.* at *4, *8. The City's focus on *Pendergast* is unavailing. *Pendergast* is distinguishable on the facts, and the

court's decision was primarily based on the fact that the officer had been assigned to a special task force at the time when the incidents occurred and was not under the control of the Gretna Police Department.

The relevant facts in this case are undisputed. Williams was an employee of the City assigned to the NOPD. (Rec. Doc. 95-8, at 3.) On the day in question, Williams was working overtime conducting a proactive patrol in a specific area where he was assigned to work. *Id.* at 4. Williams conducted the patrol in a marked NOPD vehicle, which he was driving. *Id.* In the course of his patrol, Williams encountered Robair. *Id.* At the time of the encounter, Williams was wearing his NOPD uniform. (Rec. Doc. 95-10, at 3.) Williams admitted that he was carrying NOPD issued equipment, including handcuffs, a firearm, and an expandable baton. *Id.* Furthermore, Williams admitted that he was on duty when he encountered Robair.[4] *Id.* at 2.

Considering the undisputed facts and Louisiana precedent, the Court finds that Williams was acting within the court and scope of

---

[4] Although the City objected to Plaintiffs' request for admission regarding Williams's "on duty" status, claiming that it "calls for speculation and a legal conclusion," Williams admitted that he was on duty and the evidence supports this conclusion. Williams testified at his criminal trial that his shift started at 8:00 a.m. on July 30, 2005, and the encounter with Robair occurred at approximately 9:00 a.m. (Rec. Doc. 95-11, at 4.) Further, Williams admitted that the City paid him for working for the NOPD that day. (Rec. Doc. 95-10, at 2.) Moreover, the City failed to include a separate statement of material facts in opposition to Plaintiffs' motion, as required by Local Rule 56.2. Therefore, all material facts in Plaintiffs' statement are deemed admitted for purposes of this motion.

his employment at the time of the incident. Williams was carrying out his employment duties in an area where he was assigned to work. He testified that he went to patrol that particular area because it is a "known hot area where narcotics are being sold," and that Robair's block, specifically, is "a hot spot." (Rec. Doc. 95-11, at 5.) Like the officer in *Applewhite*, Williams was on the job, in uniform, armed with police approved equipment, and operating a police vehicle when he encountered Robair. Robair was handcuffed, beaten with an NOPD issued baton, and transported to the hospital in the NOPD vehicle. The fact that Williams's actions were criminal does not relieve the City of vicarious liability. Accordingly, the *LeBrane* factors support the conclusion that Williams was acting within the course and scope of his duties. Thus, his employer, the City, may be held vicariously liable for his conduct under state law.

**D.  Predicate Constitutional Violation for Plaintiffs' *Monell* Claim Against the City**

Lastly, Plaintiffs move for summary judgment on part of their § 1983 *Monell* claim against the City. Municipal liability under § 1983 requires proof of three elements: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010). At this time, Plaintiffs move

for partial summary judgment on the "constitutional violation" component of the third element of their *Monell* claim.

As discussed above, Plaintiffs have established that Williams violated Robair's Fourth Amendment right to be free from unreasonable seizure. Accordingly, Plaintiffs are entitled to partial summary judgment on the "constitutional violation" component of the third element of their *Monell* claim. However, the "constitutional violation" component is a narrow subpart of the third element of the claim. As discussed more fully in the Court's May 2, 2016 Order and Reasons (Rec. Doc. 112), to satisfy the third element, Plaintiffs must still establish that a policy was "promulgated with deliberate indifference" to the known or obvious consequences that the constitutional violation would result. *Piotrowski v. City of Houston*, 237 F.3d 567, 579(5th Cir. 2001).

**CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' *Motion for Partial Summary Judgment Against Defendants Melvin Williams and the City of New Orleans* **(Rec. Doc. 95)** is **GRANTED**.

New Orleans, Louisiana, this 3rd day of June, 2016.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE